TIM BYRON (SBN 277569)
tbyron@byronraphael.com
BYRON RAPHAEL LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 839-8500
Facsimile:   (213) 377-5771

JORDAN RAPHAEL (SBN 252344)
jraphael@byronraphael.com
BYRON RAPHAEL LLP
811 Wilshire Blvd.. 17th Floor
Los Angeles, CA  90017
Telephone:  (213) 291-9800
Facsimile:   (213) 377-5771

Attorneys for Plaintiff
BARON APP, INC. d/b/a CAMEO

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON APP, INC. d/b/a CAMEO,<br><br>Plaintiff,<br><br>v.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, OPENAI, L.L.C., OPENAI OPCO, LLC, and OPENAI GP, L.L.C.,<br><br>Defendants. | Case No. 3:25-cv-9268<br><br>**PLAINTIFF'S COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Baron App, Inc. d/b/a Cameo ("Cameo" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI, L.L.C., OpenAI OpCo, LLC, and OpenAI GP, L.L.C. (collectively, "OpenAI" or "Defendant") hereby alleges and avers as follows:

## NATURE OF THE ACTION

1.      Cameo is a pioneering digital marketplace that connects fans with celebrities through personalized videos.  Founded in 2017 with the mission "to create the most personalized and authentic fan experiences on Earth," Cameo has revolutionized fan engagement by offering direct and intimate access to public figures across entertainment, sports, and pop culture.  Thousands of celebrities, including Jake Paul, Snoop Dogg, Tony Hawk, Dennis Rodman, Ice T, Sarah Jessica Parker, Jon Bon Jovi, Chuck Norris, Keith Hernandez, Lance Bass, Donald Trump Jr., and Lindsay Lohan, have used Cameo to connect with their fans via short, personalized videos.

2.      Through years of offering its groundbreaking service, Cameo and its registered trademark CAMEO® have become a beloved and widely recognized brand.  Cameo's social media accounts have millions of followers, and its posts have generated more than 100 million views in the past year alone.  Cameo and its video service have also been featured in thousands of media articles and reports, and Cameo is frequently mentioned on TV shows like Saturday Night Live, The Tonight Show, and The Daily Show.  Cameo videos are regularly shared across social media platforms like Instagram, TikTok, and Twitter/X.com.

3.      Cameo customers worldwide have made over ten million magical moments, ranging from birthday greetings and marriage proposals to business endorsements to inside jokes and nonsensical "meme" content.  Millions of users have delighted in the ability to ask their favorite stars to generate custom video content especially for them.  Whether it's an introduction to a Dungeons and

COMPLAINT

Dragons campaign from Elijah Wood (Frodo of the *Lord of the Rings* movies), a baby reveal from longtime UFC announcer Bruce Buffer, behavioral advice from Santa Claus, or a personal tarot reading from one of the dozens of tarot readers on the service, Cameo videos range from the profound to the whimsical to the ridiculous.  Some videos are personal keepsakes for the purchaser, others are shared with friends and family, and many are circulated publicly on social media and on YouTube.  Through this continued and widespread use, the Cameo brand has become synonymous with joyful, humorous, heartfelt, and absurd celebrity interactions.

4.     Cameo is always looking into ways to grow its business while staying true to its core values of personal connection, authenticity, and joy.  In 2019, it launched Cameo for Business, giving companies both big and small the opportunity to create custom ads featuring celebrities on Cameo:



**Cameo for Business**

COMPLAINT

5.      In 2022, Cameo launched Cameo Kids, allowing customers to gift personalized, AI-generated videos from beloved animated children's characters of franchises like Sesame Street, PAW Patrol, Cocomelon, and Care Bears:



**Cameo Kids**

6.      Over the last few years, Cameo has also introduced generative AI in various aspects of its core business, from using AI to create review summaries and talent descriptions to deploying a chatbot with a generative AI search function for its site and help center to assist consumers in creating the ideal personalized video.

7.      On September 30, 2025, artificial intelligence juggernaut OpenAI announced an updated and invite-only version of Sora, a mobile app that allows users to use generative AI to make video clips from a prompt.  Unlike past versions, this version of Sora includes a new service that allows users to create a virtual likeness of themselves and "open" their likenesses to other users on the platform, enabling Sora's growing user base to use them in realistic, personalized AI-

generated videos.  To promote the service, OpenAI tapped several high-profile celebrities to create their virtual likenesses and "open" them to Sora's users, allowing those users to create personalized videos featuring celebrities.

8.    When naming its new service, OpenAI had a multitude of options to choose from.  It could have chosen a descriptive name like "virtual likeness" or "avatar."  But in blatant disregard for the obvious confusion it would create, OpenAI instead selected "Cameo"—the very name that Plaintiff has cultivated into a global brand for personalized videos through years of dedicated stewardship and substantial investment.




**Defendant's "Cameo" Service**

9.    Over the past few weeks, celebrities including Jake Paul (an early celebrity user of Plaintiff's Cameo service) and Mark Cuban have joined OpenAI's Sora platform and "opened their Cameos," allowing users to generate and share

COMPLAINT

short, personalized "Cameo" videos featuring these celebrities. Also among this group is Ricky Berwick, a longtime celebrity user of Plaintiff's Cameo service who has made more than 3,000 personalized videos for fans via Plaintiff's Cameo marketplace, and online streamer Amouranth, who has been active as a celebrity talent on Plaintiff's Cameo marketplace since 2021.

10.    OpenAI has also repositioned its Sora video app as a TikTok-style social network, encouraging users to connect with friends and to create and share videos using "Cameos" from celebrities and others. OpenAI, its users, and the media are using "Cameo" to refer to both Sora's "Cameo" feature and videos made using this feature. Sora-created "Cameo" videos have been widely shared across Sora and other social media platforms, including Instagram, TikTok, and Twitter/X.com.

11.    The result of OpenAI's recent changes to Sora is that ***OpenAI is now using Cameo's own mark, CAMEO, to compete directly with Cameo.*** Users seeking a personalized celebrity video now have a choice—use Plaintiff's CAMEO® service to book talent and receive an authentic, custom video prepared by that celebrity, or use Sora's "Cameo" service to create an extremely realistic AI-generated video featuring a celebrity's likeness. Thus, through its infringing use of Plaintiff's trademark, Defendant is misdirecting users from Plaintiff's CAMEO®-branded service for authentic, personalized Cameo videos to Defendant's AI-powered "Cameo" service. And users are sharing videos from both Plaintiff's and Defendant's respective services on the same social media platforms in massive numbers.

12.    OpenAI has made no secret of its ambition to dominate every profitable corner of the Internet with its AI-driven platforms. It recently launched a web browser (Atlas) to compete directly with Google and an Instant Checkout system aimed at cornering e-commerce. Indeed, in a few short years, OpenAI has built a massive empire on a mantra of "move fast and break things." In its rush to

dominate new markets, Defendant has once again trampled the intellectual property rights of others.

13.    OpenAI's Sora app and its "Cameo" service are in an early "invite-only" phase.  Defendant has not yet launched a Sora app for Android devices, and Sora is unavailable outside of the United States and Canada.  OpenAI's founder Sam Altman has stated that as Sora is rolled out, the public should "expect a very high rate of change from us."[1]  Mr. Altman also wrote: "We will make some good decisions and some missteps, but we will take feedback and try to fix the missteps very quickly."  *Id*.  Moreover, OpenAI has shown it can respond to intellectual property complaints quickly.  For example, Defendant quickly blocked Sora users from making videos of Martin Luther King Jr. after users began making hyper-realistic videos of Mr. King "speeding away from the police" and "stealing from a grocery store."[2]  Indeed, OpenAI has modified Sora multiple times to remove the ability to make videos featuring both living and deceased celebrities after complaints from them and their estates.[3]

14.    However, despite the invite-only early stage of Sora, the ease of updating it to address "missteps," OpenAI's knowledge of Plaintiff's senior rights, clear evidence of consumer confusion, and significant risk of damage to Plaintiff's CAMEO® brand, OpenAI has refused Cameo's requests to transition to a different name for its "Cameo" service.

15.    Via the conduct alleged in this Complaint, OpenAI has knowingly co-

---

[1] https://blog.samaltman.com/sora-update-number-1.

[2] *See* Bobby Allyn, OpenAI Blocks MLK Jr. Videos on Sora After "Disrespectful Depictions," NAT. PUB. RADIO, Oct. 17, 2025, at https://www.npr.org/2025/10/17/nx-s1-5577869/sora-block-videos-mlk.

[3] *See* Kyle Orland, Dead Celebrities Are Apparently Fair Game for Sora 2 Video Manipulation, ARS TECHNICA, Oct. 7, 2025, at https://arstechnica.com/ai/2025/10/dj-bruce-lee-and-jackass-mr-rogers-dead-celebrities-become-puppets-in-sora-2-videos/.

opted a well-established, federally registered trademark—ignoring legal precedent, the clear risk of consumer confusion, and the irreparable harm that will be inflicted on Plaintiff's CAMEO® trademark rights and brand.  Accordingly, to protect its valuable trademarks from infringement and dilution and hold OpenAI accountable for its calculated infringement and cavalier disregard for the rights of others, Cameo brings this action for trademark infringement, trademark dilution, and unfair competition under federal law and applicable state laws.

## PARTIES

16.    Plaintiff Baron App, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois, and which operates under the trade name "Cameo."

17.    Defendant OpenAI, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.[4]

18.    Defendant OpenAI Global, LLC is a Delaware limited liability company with its principal place of business in San Francisco, California.

19.    Defendant OpenAI, L.L.C. is a Delaware limited liability company with its principal place of business in San Francisco, California.

20.    Defendant OpenAI OpCo, LLC is a Delaware limited liability company with its principal place of business in San Francisco, California.

21.    Defendant OpenAI GP, L.L.C. is a Delaware limited liability company with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121, as this action arises under the Lanham Act.

---

[4] Earlier today, Defendant announced that it had updated the structure of various of its corporate entities. *See* https://openai.com/our-structure. As registration of these newly named entities does not yet appear to have been completed with the California Secretary of State, Plaintiff is proceeding against OpenAI entities that are currently registered to do business in California.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and/or a substantial part of the events giving rise to the claims occurred here.

## INTRADISTRICT ASSIGNMENT

25.     This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c) and General Order 44.

## FACTUAL ALLEGATIONS

### A.     Cameo and Its Groundbreaking Service

26.     Cameo is a digital marketplace that enables users to request personalized videos from celebrities, athletes, influencers, and other public figures. Through its website and mobile apps, Cameo offers a curated marketplace where talent can set their own prices, record custom videos, and interact directly with fans. The company has become a cultural touchstone, providing a novel and joyful way for people to create viral social media content and celebrate birthdays, anniversaries, graduations, and other milestones with celebrity shout-outs.

27.     Cameo users can begin the process by browsing Cameo's extensive catalog of talent, which includes thousands of well-known personalities from film, television, music, sports, and social media.  Once a user selects a celebrity, they can submit a request with specific instructions or personal details to be included in the video.  For example, a user can request that the celebrity wish a friend a happy birthday, deliver a marriage proposal, apologize on their behalf, answer a question, conduct a tarot reading, roast a loved one, or read from a prepared script.

28.     After the request is submitted, the celebrity makes a personalized video, and the user receives a notification when it is ready.  The videos, which are also commonly referred to as "Cameos" or "Cameo videos," are usually vertically formatted for seamless viewing on mobile devices and sharing on social media.

COMPLAINT

Cameo's service is designed to foster authentic, memorable interactions between fans and celebrities, often resulting in viral content that spreads across TikTok, Instagram, and Twitter/X.com.  The company's mission is "to create the most personalized and authentic fan experiences on Earth."

29.     For celebrities and other public figures, Cameo offers a streamlined and empowering way to connect with fans while building their personal brand. After signing up and creating a profile, talent can set their own price for personalized videos and customize how they engage with requests.  The service provides tools to manage incoming orders, record videos directly from a mobile device, and respond to fans in a way that feels authentic and manageable.  Many talent describe the experience as rewarding, fun, and creatively fulfilling—allowing them to surprise fans, support causes, or simply share a moment of joy.

30.     Celebrities including Jake Paul, Snoop Dogg, Tony Hawk, and Lindsay Lohan have used Cameo to connect with their fans.  These personalities have helped elevate the Cameo brand's visibility and cultural relevance.

31.     The company's success is driven by its distinctive business model and the emotional resonance of its product.  Users frequently describe Cameo videos as "unforgettable," "hilarious," or "heartwarming," and the brand has cultivated a loyal user base that returns again and again for new occasions and new talent. Indeed, the Cameo name has become synonymous with personalized celebrity videos and the joy they bring.

32.     Cameo has been featured in thousands of news and media articles since its founding.  In October 2018, Time magazine named Cameo one of the "50 Most Genius Companies."  Fast Company likewise named Cameo #1 among the "10 Most Innovative Social Media Companies of 2020."  LinkedIn listed the company among the 50 best startups to work for in 2020, and Forbes declared it one of America's Best Startup Employers in 2022.

33.     Cameo and Cameo videos are frequently featured in national media

outlets, late-night television, and online publications, further solidifying the brand's reputation as a leader in personalized entertainment.  For example, Cameo has been mentioned on multiple episodes of The Simpsons and Saturday Night Live:



**Cameo on The Simpsons**

 

**Cameo on Saturday Night Live**

COMPLAINT

34.     To protect its valuable rights in its CAMEO® trademark, Cameo has secured several U.S. Trademark Registrations.  These include U.S. Trademark Reg. Nos. 6,113,018 and Reg. No. 6,369,961 for the word mark CAMEO for, *inter alia*, "Downloadable software used to create personalized video messages for entertainment, instructional, inspirational or greeting purposes featuring celebrities, such as athletes, actors, characters, performers, public figures, entertainers, artists, talent, content creators, and influencers, by enabling users to use and access an online marketplace to request a personalized video message" and "Providing a website featuring technology for creating personalized video messages for entertainment, instructional, inspirational or greeting purposes featuring celebrities, such as athletes, actors, characters, performers, public figures, entertainers, artists, talent, content creators, and influencers, by enabling users to use and access an online marketplace to request a video message."  Cameo also obtained U.S. Trademark Registration Nos. 6,026,358 and 6,026,359 for design marks featuring the word CAMEO for similar goods and services.  These registrations are valid, subsisting, and in full force and effect.

35.     Three of Cameo's trademark registrations (U.S. Trademark Registration Nos. 6,113,018; 6,026,358; and 6,026,359) have achieved incontestable status under 15 U.S.C. § 1065 and are conclusive evidence of the validity of the marks, Cameo's ownership of them, and Cameo's exclusive right to use the marks in commerce in connection with the goods and services identified in the registrations.

36.     Cameo has also acquired significant common law rights in CAMEO® for a wide range of goods and services through consistent, substantial, and nationwide use in commerce.  These goods and services include (among others) a mobile application, online marketplace, and website for personalized videos featuring celebrities and other notable figures; personalized videos featuring celebrities and other notable figures; personalized videos featuring AI-generated

characters (via Cameo Kids); and customized advertisements and testimonials for businesses (via Cameo for Business).

37.    Cameo's marks are not only registered and legally protected, but also have significant goodwill and consumer recognition.  The user experience is inseparable from the brand identity: when consumers see the mark CAMEO® in connection with short videos, they expect one-of-a-kind, personalized, joyful, celebrity-driven interaction.

**B.    OpenAI Announces Its Own Competing "Cameo" Service**

38.    OpenAI is an artificial intelligence research and deployment company headquartered in San Francisco, California.  Founded in 2015 by Sam Altman, Elon Musk, and others, OpenAI develops and licenses advanced AI models and tools, including ChatGPT, a conversational platform, and Sora, a text-to-video model that generates realistic video clips from natural language prompts.

39.    Since its founding, OpenAI has operated under an ethos of "move fast and break things,"[5] prioritizing speed and disruption over caution and consideration of the rights of others.  OpenAI has faced numerous lawsuits from copyright holders who allege the company used their work to train its AI models without permission or compensation.  For example, on October 17, 2025, Business Insider wrote: "Let's spell it out:  OpenAI is building a track record of using stuff it may not have the rights to use — and only backtracking once it hears from rights owners and their lawyers."[6]

40.    On September 30, 2025, OpenAI launched a new, invite-only version of its Sora iOS app featuring a new service called "Cameo" which allows users to

---

[5] Megan Morrone, Sam Altman Is Starting to Look a Lot Like Mark Zuckerberg, AXIOS, May 29, 2024, at https://www.axios.com/2024/05/29/sam-altman-mark-zuckerberg-move-fast-break-things.

[6] "How Many Times Can OpenAI say, 'Oops?'", BUSINESS INSIDER, available online at https://www.yahoo.com/news/articles/many-times-openai-oops-163152908.html.

COMPLAINT

make digital likenesses of themselves, use them (and likenesses created by other users) in personalized, AI-generated videos, and share them with other users to be used in AI-generated videos.  Like Plaintiff's "Cameo" videos, these videos are short and vertically formatted for easy viewing on mobile devices and sharing on social media.

41.    From the outset, OpenAI touted "Cameo" as a service that allows users to create personalized videos featuring celebrities.  The ability to use Sora's "Cameo" feature to create personalized videos featuring celebrities has also generated significant press and become a major topic on social media sites.[7]

42.    A celebrity who makes a "Cameo" on Sora can give other Sora users the ability to make custom AI videos featuring his or her likeness by "opening" their "Cameo."  For example, on October 9, 2025, businessman and TV personality Mark Cuban posted on X.com: "For those of you on Sora, my Cameos are open. Have at it."  Hundreds of Sora users immediately began using OpenAI's "Cameo" service to make short, customized videos featuring a realistic-looking likeness of Mr. Cuban:

---

[7] *See, e.g.*, Travis Nicholson, Complete List of Allowed Celebrities on Sora 2 AI Video, MEDIUM.COM, Oct. 16, 2025, at https://travisnicholson.medium.com/complete-list-of-allowed-celebrities-on-sora-2-ai-video-d7299eeabc8a.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**Sora-Generated AI Video Featuring Mark Cuban's "Cameo"**

43.    Similarly, on October 9, 2025, boxer and YouTube celebrity Jake Paul, an early celebrity user of Plaintiff's Cameo service,[8] announced on X.com that he was "the first celebrity NIL [name, image, and likeness] cameo user" on Sora:



> **Jake Paul** ✔
> @jakepaul
>
> People have been asking me "Jake why are there all these AI videos of you on the internet?!"
>
> There's a method to the madness...
>
> I'm a proud OpenAI investor @antifundvc @geoffreywoo and have been advising Sora team @markchen90 @billpeeb this year and agreed to become the first celebrity NIL cameo user and from there things went crazy
>
> In 6 days my cameo has generated 1B+ views: thanks @app_archive for data
>
> Congrats to the Sora team on a great product and making the internet fun again @sama @OpenAI
>
> OpenAI · Sora
> **HOW JAKE PAUL & SORA BROKE THE INTERNET: 1 BILLION VIEWS IN 6 DAYS**

**Jake Paul Announces He Is "First Celebrity NIL Cameo User"**

---

[8] https://www.cameo.com/jakepaul111.

COMPLAINT

44.     Mr. Paul also announced that he was a "proud OpenAI investor."[9] On information and belief, OpenAI has been recruiting celebrities to Sora by giving them early access to the app and allowing them to embed promotional messages into videos made with their "Cameos."  For example, videos that Sora users create using Mr. Cuban's "Cameo" include the text "Brought to you by Cost Plus Drugs," a company founded by Mr. Cuban.

45.     Just as the public commonly refers to videos made on Plaintiff's services as "Cameos," OpenAI and its users refer to the videos made using Sora's "Cameo" service as "cameos."  *See* Bobby Allyn, OpenAI Blocks MLK Jr. Videos on Sora After "Disrespectful Depictions," NAT. PUBLIC RADIO, Oct. 17, 2025, at https://www.npr.org/2025/10/17/nx-s1-5577869/sora-block-videos-mlk ("Users can control whether others can make deepfake videos of them, which Sora calls a 'cameo.'"); Krystal Hu, Artificial Intelligencer-OpenAI and Meta bet on AI TikTok, REUTERS NEWS, Oct. 2, 2025 ("Sora lets friends—or anyone on the internet, if you choose—create 'cameos' by using your face and voice.").[10]  In one high-profile example, the October 11, 2025 broadcast of Saturday Night Live included a Weekend Update joke that began: "OpenAI has updated its video-

---

[9] https://x.com/jakepaul/status/1976411343025487977.

[10] *See also* Miles Klee, OpenAI's Sora 2 Can Generate Videos of Celebrities Appearing to Shout Racial Slurs, ROLLING STONE, Oct. 23, 2025, at https://www.rollingstone.com/culture/culture-features/openai-sora-2-celebrities-racial-slurs-1235452298 ("In the Sora Cameo videos, public figures including Altman, billionaire Mark Cuban, influencer-turned-boxer Jake Paul, and streamers xQc and Amouranth each appear as a plane passenger in a Burger King crown, reenacting the offensive meme."); Eric Hal Schwartz, Sora 2 Just Ran Into Hollywood's Legal Wall—Talent Agents Are Calling for Control Over AI-Generated Stars, TECHRADAR, Oct. 9, 2025, at https://www.techradar.com/ai-platforms-assistants/sora-2-just-ran-into-hollywoods-legal-wall-talent-agents-are-calling-for-control-over-ai-generated-stars ("OpenAI seems keen to reassure the industry that Sora 2 won't be turning Brad Pitt into a TikTok cameo without permission.").

generating app Sora to allow users to create cameos of themselves in video."

46.    Given OpenAI's use of "Cameo" (Plaintiff's exact trademark) for short, personalized, vertically formatted videos for sharing with friends and social media (Plaintiff's core business), it is unsurprising that consumers immediately became confused, mistakenly believing that Plaintiff was involved with Defendant and its Sora app or vice-versa.

47.    For example, in response to Mr. Cuban's post on X.com (above), one X.com user was misled into believing that Mr. Cuban was using ***Defendant's*** app to fulfill video requests on ***Plaintiff's*** Cameo marketplace: "Wait. @mcuban is automating his @Bookcameo with Sora 2? Oh word? What. Could. Go. Wrong?"[11] "@Bookcameo" is Plaintiff's official account on X.com.

48.    Similarly, on October 13, 2025, ***Plaintiff*** received a misdirected customer service inquiry from a user having an issue with ***Defendant's*** Sora app:

> 02:48 PM | Customer: Im just trying to make funny videos of myself. The videos im trying to make isnt harmful or bad in any way. But it says that im a teen when im not
>
> 02:50 PM | Maya from Cameo: Are you trying to become a talent on Cameo? Talent are able to be booked for personalized video requests! If this is what you are trying to do, let me know and I'm happy to help! :)
>
> 02:52 PM | Customer: No im just usong cameo for personal use. Ive made my own cameo with my face. ***But it sora thinks im a teen and there fore i cant make videos with my own cameo***

(Emphasis added.)    When Plaintiff informed this user that Sora was not Plaintiff's product, she responded: "Oh alright chat gpt [Defendant's AI chat app] told me to message this email lol"—evidencing that ***even Defendant's own AI tools are confused between Plaintiff's Cameo service and Defendant's Cameo servic***e.

49.    OpenAI's new "Cameo" service has also led social media users to mistakenly tag ***Plaintiff's*** social media accounts in posts about ***Defendant's*** product, as shown below (@cameo is Plaintiff's official account on Instagram):

---

[11] https://x.com/justinblase/status/1976466110724919631.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    50.    Not only is OpenAI using Plaintiff's valuable CAMEO® trademark, it

18  is doing so in a manner that directly competes with Plaintiff and threatens its very

19  existence.  Using Plaintiff's own trademark, Defendant is luring users away from

20  Plaintiff's authentic, custom celebrity CAMEO®-branded service to Defendant's

21  AI-driven "Cameo" service for creating fake yet highly realistic videos featuring

22  celebrity likenesses.

23    51.    Defendant is also attracting celebrities from the same pool of talent

24  that has long flocked to Plaintiff's marketplace—celebrities eager to use technology

25  and social media to grow their personal brand and engender fan connection.  As

26  discussed above, Jake Paul, an early celebrity user of Plaintiff's service, has

27  "opened his cameos" on Defendant's platform, allowing users to make personalized

28  videos featuring his likeness.  So too has comedian Ricky Berwick, one of the most

1    popular celebrities on Plaintiff's marketplace.  Online streamer Amouranth, who

2    has been active on Plaintiff's Cameo marketplace since 2021, has also opened her

3    "Cameo" on Sora.  And although entrepreneur Mark Cuban is not on Plaintiff's

4    Cameo marketplace, his Shark Tank costar Kevin "Mr. Wonderful" O'Leary has

5    made hundreds of personalized Cameo videos on Plaintiff's marketplace,

6    generating $1,500 or more for each video.

7        52.    A Sora user recently highlighted the similarities—and direct

8    competition—between Plaintiff's and Defendant's services with a Sora-generated

9    "Cameo" featuring Jake Paul's "Cameo" in which he says: "Now that we can use

10   Sora to make people say anything . . . Cameo is useless now."

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



53.     The video referenced above highlights the imminent, existential, and potentially lethal threat that OpenAI's platform and its use of "Cameo" poses to Plaintiff.  Plaintiff has dedicated nearly a decade to ensuring its CAMEO® brand is closely connected in the consumer's mind with ***authentic*** celebrity-fan interactions. Through this careful brand stewardship, Plaintiff has built a brand that is unquestionably famous the world over.  But fame can be fleeting, and Defendant's use of "Cameo" for the same product threatens to confuse customers and tarnish Plaintiff's mark by causing consumers to associate it with ersatz, hastily made AI slop and deepfakes featuring celebrities.

54.     OpenAI's new "Cameo" service has also spawned an ecosystem of third-party websites focused on the service with names that also use Plaintiff's CAMEO® trademark, including cameoAI.org, SoraCameos.app, and CameoSora.com.  The existence of these OpenAI-adjacent websites further erodes Cameo's ability to use its CAMEO® mark to identify its products and services:



**CameoAI.org**



SoraCameos.app



CameoSora.com

55.    Indeed, one of these third-party sites, SoraCameos.app, lists celebrity "Cameos" available via Sora in an interface that closely mimics the interface of Plaintiff's website:



| Plaintiff's Website | SoraCameos.app |

56.     OpenAI has entered into numerous high-profile partnerships and licensing deals with a wide array of companies, including The Washington Post, Walmart, AMD, Vox Media, and Reddit.  In fact, OpenAI appears to announce new collaborations with third-party companies and brands on a near-weekly basis.  This highly visible pattern of third-party brand affiliations significantly heightens the likelihood of consumer confusion—leading consumers to mistakenly believe that OpenAI's "Cameo" service is sponsored by, endorsed by, or otherwise affiliated with Plaintiff and its CAMEO® trademark and brand.

57.     On information and belief, OpenAI intentionally selected "Cameo" for the name of its new service to traffic on the goodwill Plaintiff has generated over the last eight years.  But as well-known and famous as Plaintiff's CAMEO® mark is, Cameo has only a fraction of the resources and reach of OpenAI, which reportedly has a valuation of $500 billion and is the world's most valuable privately held company.  As such, consumers discovering Plaintiff's CAMEO® services for the first time are likely to mistakenly believe that Plaintiff's services are sponsored, endorsed, or otherwise affiliated with OpenAI or its "Cameo" service.

58.     Due to this obvious imbalance, OpenAI's use of "Cameo" also threatens to overwhelm Plaintiff in the marketplace and dilute the distinctiveness of its trademarks, along with the reputation and goodwill that Plaintiff has spent years carefully cultivating.  Additionally, given OpenAI's close association with low-quality and mass-produced "AI slop," disregard for the intellectual property rights of others, and cutthroat business tactics, OpenAI's use of "Cameo" is highly likely to dilute and tarnish Plaintiff's CAMEO® mark.

59.     In September 2025, OpenAI reported that there were 700 million weekly users of ChatGPT, another OpenAI app.  Although the new updated version of Sora is currently available by invitation only, it is widely expected to grow rapidly once OpenAI opens the app to the general public—thus exacerbating the ongoing harms to Cameo and its valuable trademarks and brand.

1

2

### **FIRST CLAIM FOR RELIEF**

### **Federal Trademark Infringement (15 U.S.C. § 1114)**

3       60.    Plaintiff repeats, realleges, and incorporates herein by reference the

4   allegations in the foregoing paragraphs as if fully set forth herein.

5       61.    OpenAI's use of "Cameo" discussed above is likely to cause

6   confusion, mistake, or deception as to the source, origin, affiliation, association, or

7   sponsorship of Cameo's and/or OpenAI's products and/or services.  As a result of

8   OpenAI's unauthorized use of the CAMEO® trademark, the public is likely to

9   mistakenly believe that OpenAI's products and/or services have been endorsed,

10   offered, sponsored, or approved by, or are affiliated with or originate from Cameo

11   and/or that Cameo's products and/or services have been endorsed, offered,

12   sponsored, or approved by, or are affiliated with or originate from OpenAI.

13       62.    By these acts, Defendant has infringed Plaintiff's federally registered

14   CAMEO® trademarks in violation of 15 U.S.C. § 1051, *et seq.*

15       63.    Defendant's unlawful conduct as set forth herein has been and

16   continues to be willful, deliberate, and in bad faith with the intent to cause

17   confusion, mistake, and deception.

18       64.    These violations have irreparably damaged Plaintiff, and it has no

19   adequate remedy at law.  Unless enjoined, Defendant's unlawful conduct will

20   continue, further injuring Plaintiff and confusing the public.

21       65.    On information and belief, Defendant has received substantial

22   revenues and profits as a result of its unlawful conduct, to which Plaintiff is

23   entitled, and Plaintiff has also suffered damages as a result of such unlawful

24   conduct, for which Defendant is responsible.

25       66.    Plaintiff is therefore entitled to all of the remedies available under the

26   Lanham Act, including actual damages, an accounting of Defendant's profits, treble

27   damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

28

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CLAIM FOR RELIEF**

**False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))**

67.    Plaintiff repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

68.    Defendant's distribution, advertising, marketing, and promotion of its "Cameo" service constitutes false designation of origin and false description of representations that Defendant's goods and services originate from or are authorized by, or are otherwise associated with, Plaintiff, when in fact they are not.

69.    As a result of Defendant's unauthorized use of the CAMEO® trademark, the public is likely to be misled and confused as to the source, sponsorship, association, approval, or affiliation of Defendant's products and services, or vice-versa.

70.    By these acts, Defendant has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.    On information and belief, Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith with the intent to cause confusion, mistake, and deception.

72.    These violations have irreparably damaged Plaintiff, and it has no adequate remedy at law.  Unless enjoined, Defendant's unlawful conduct will continue, further injuring Plaintiff and confusing the public.

73.    On information and belief, Defendant has received substantial revenues and profits as a result of its unlawful conduct, to which Plaintiff is entitled, and Plaintiff has also suffered damages as a result of such unlawful conduct, for which Defendant is responsible.

74.    Plaintiff is therefore entitled to all of the remedies available under the Lanham Act, including actual damages, an accounting of Defendant's profits, treble damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

1

**THIRD CLAIM FOR RELIEF**

2

**Federal Trademark Dilution (15 U.S.C. § 1125(c))**

3    75.    Plaintiff repeats, realleges, and incorporates herein by reference the

4    allegations in the foregoing paragraphs as if fully set forth herein.

5    76.    Plaintiff's CAMEO® trademark is famous in the United States.

6    77.    Defendant's use of copies, variations, reproductions, simulations or

7    colorable imitations of Plaintiff's CAMEO® trademark in connection with the

8    OpenAI brand and its services will lessen the capacity of Plaintiff's famous and

9    distinctive trademark to designate Plaintiff's products and services.

10    78.    Defendant has diluted and will continue to dilute and tarnish the

11    distinctive quality of Plaintiff's famous and distinctive CAMEO® trademark by,

12    *inter alia*, causing consumers to associate it with OpenAI, OpenAI's questionable

13    business practices, and "AI slop."

14    79.    The aforesaid acts of Defendant constitute dilution by blurring by

15    whittling away the distinctiveness of Plaintiff's famous CAMEO® trademark in

16    violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

17    80.    The aforesaid acts of Defendant also constitute dilution by tarnishment

18    in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

19    81.    Upon information and belief, Defendant's dilution of the Plaintiff's

20    CAMEO® trademark has been deliberate, intentional, and willful.

21    82.    As a direct and proximate result of the foregoing acts of Defendant,

22    Plaintiff has been damaged and has suffered and will continue to suffer immediate

23    and irreparable injury.

24    83.    Plaintiff has no adequate remedy at law and is entitled to preliminary

25    and permanent injunctive relief.

26    84.    Due to Defendant's willful dilution of the Plaintiff's CAMEO®

27    trademark, Plaintiff is also entitled to recover from Defendant, *inter alia*: all

28    damages that Plaintiff has sustained and will sustain as a result of Defendant's

1  infringing acts; all gains, profits and advantages obtained by Defendant as a result

2  thereof, in an amount not yet known; and the costs of this action and attorneys' fees

3  pursuant to 15 U.S.C. § 1117(a).

4  **FOURTH CLAIM FOR RELIEF**

5  **Trademark Dilution Under State Law**

6      85.    Plaintiff hereby incorporates by reference the above allegations to this

7  complaint as if set forth fully herein.

8      86.    For many years, Plaintiff has exclusively and continuously promoted

9  and used its CAMEO® trademark in the United States, such that it has become a

10 well-known symbol of Plaintiff and its products and services among the general

11 public in the United States generally, and in California particularly, well before

12 Defendant began using its infringing "Cameo" mark.

13     87.    Defendant is making use in commerce of confusingly similar

14 imitations of Plaintiff's famous CAMEO® trademark that dilutes and is likely to

15 dilute the distinctiveness of that mark by eroding the public's exclusive

16 identification of it with Plaintiff, degrading the positive association and prestigious

17 connotations of the mark, and otherwise lessening the capacity of the mark to

18 identify and distinguish Plaintiff's goods and services.

19     88.    Defendant's actions demonstrate an intentional, willful, and malicious

20 intent to trade on the goodwill associated with Plaintiff's CAMEO® trademarks, or

21 to cause dilution of the mark, to the great and irreparable injury of Plaintiff.

22     89.    Defendant has caused and, unless enjoined by this Court, will continue

23 to cause irreparable injury to Plaintiff's goodwill and business reputation, as well as

24 dilution of the distinctiveness and value of Plaintiff's trademark, in violation of the

25 California antidilution act, Cal. Bus. & Prof. Code § 14247.

26     90.    Plaintiff, therefore, is entitled to injunctive and equitable relief,

27 damages, costs, disgorgement of Defendant's ill-gotten gains, as well as, if

28 appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**

**California Common Law Trademark Infringement and Unfair Competition**

91.     Plaintiff repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

92.     Defendant's acts as described herein constitute common law trademark infringement and unfair competition and have created and will continue to create, unless enjoined by the Court, a likelihood of confusion to the irreparable injury of Plaintiff.  Plaintiff has no adequate remedy at law for this injury

93.     Defendant acted with full knowledge of Plaintiff's use of, and statutory and common law rights to, the CAMEO® trademark and without regard to the likelihood of confusion to the public created by Defendant's activities.

94.     Defendant's acts of trademark infringement and unfair competition have caused damage and irreparable injury to Plaintiff in an amount to be determined at trial, and such acts will result in further damage and irreparable injury if Defendant is not enjoined by this Court.

95.     Defendant's acts have also been willful and constitute fraud, oppression, and/or malice.

96.     Accordingly, Plaintiff is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a) in addition to all other available remedies.

**SIXTH CLAIM FOR RELIEF**

**Violation of California Business & Professions Code § 17200 _et seq._**

97.     Plaintiff repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

98.     By reason of the foregoing acts, Defendant has intentionally caused a likelihood of confusion among the public and has engaged in unlawful, unfair, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200.

99.     As a direct result of Defendant's unfair competition, Defendant has unlawfully acquired, and continue to acquire on an ongoing basis, an unfair

competitive advantage and has engaged in, and continues to engage in, wrongful business conduct to Defendant's monetary advantage and to the detriment of Plaintiff.

100.   Plaintiff is entitled to all remedies available under Cal. Bus. & Prof. Code § 17200.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

1.     That Plaintiff's CAMEO® trademarks be deemed valid and infringed and diluted by Defendant in violation of 15 U.S.C. § 1114 *et seq.*, California law, and the common law.

2.     That Defendant's use of "Cameo" and "Cameos" in connection with the sale, offering for sale, distribution, promotion, marketing, and advertising of Defendant's goods and services be adjudged a violation of 15 U.S.C. § 1125(a) as a false designation of origin and false description of representation.

3.     That Defendant be adjudged to have unfairly competed with Plaintiff under the common law of the State of California and Cal. Bus. & Prof. Code § 17200.

4.     That Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be preliminarily and permanently enjoined from:

   a.   using the words "Cameo" or "Cameos," or any other copy, reproduction, colorable imitation, or simulation thereof, on or in connection with Defendant's goods and/or services;

   b.   falsely designating the origin of Defendant's goods and/or services;

   c.   causing a likelihood of confusion in the public as to the source or endorsement of Defendant's goods and/or services;

COMPLAINT

1          d.  otherwise infringing or diluting Plaintiff's trademark rights; and

2          e.  unfairly competing with Plaintiff in any manner whatsoever

3     5.     That Defendant be directed to file with this Court and serve on

4  Plaintiff, within thirty (30) days after the service of the injunction, a report, in

5  writing and under oath, setting forth in detail the manner and form in which

6  Defendant has complied with the injunction.

7     6.     That Defendant be required to account to Plaintiff for any and all

8  profits derived by them and all damages sustained by Plaintiff by reason of

9  Defendant's acts complained of herein.

10    7.     That Defendant be ordered to pay over to Plaintiff all damages which

11  Plaintiff has sustained as a consequence of the acts complained of herein, subject to

12  proof at trial, and that Plaintiff be awarded Defendant's profits derived by reason of

13  said acts, all as determined by said accounting.

14    8.     That Defendant's acts complained of herein be deemed willful, and

15  that this be deemed an exceptional case and that Plaintiff recover treble damages

16  pursuant to 15 U.S.C. § 1117(a).

17    9.     That Plaintiff recover exemplary damages pursuant to Cal. Civ. Code

18  § 3294.

19    10.    That Plaintiff be awarded costs, attorneys' fees, and expenses in this

20  suit pursuant to 15 U.S.C. § 1117, and the relevant state statutes and common law

21  cited herein.

22    11.    That Plaintiff be awarded prejudgment and post-judgment interest on

23  all monetary awards.

24    12.    That the Court award such other and further relief that it may deem

25  just or proper.

26

27

28

1

2

3    Dated: October 28, 2025            BYRON RAPHAEL LLP

4                                      By:    */s/ Tim Byron*

5                                             TIM BYRON

6                                      TIM BYRON (SBN 277569)
                                       tbyron@byronraphael.com
7                                      BYRON RAPHAEL LLP
                                       100 Pine Street, Suite 1250
8                                      San Francisco, CA 94111
                                       Telephone:   (415) 839-8500
9                                      Facsimile:    (213) 377-5771

10                                     JORDAN RAPHAEL (SBN 252344)
                                       jraphael@byronraphael.com
11                                     BYRON RAPHAEL LLP
                                       811 Wilshire Blvd.. 17th Floor
12                                     Los Angeles, CA  90017
                                       Telephone:   (213) 291-9800
13                                     Facsimile:    (213) 377-5771

14                                     *Attorneys for Plaintiff*
                                       BARON APP, INC. d/b/a CAMEO
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 31 -                                                    COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff Baron App, Inc. d/b/a Cameo hereby demands a jury trial pursuant

3   to Fed. R. Civ. P. 38 on all issues raised in the Complaint.

4

5   Dated: October 28, 2025                    BYRON RAPHAEL LLP

6
                                              By:      */s/ Tim Byron*
7                                                      Tim Byron

8                                             TIM BYRON (SBN 277569)
9                                             tbyron@byronraphael.com
                                              BYRON RAPHAEL LLP
10                                            100 Pine Street, Suite 1250
                                              San Francisco, CA 94111
11                                            Telephone:   (415) 839-8500
                                              Facsimile:    (213) 377-5771
12
                                              JORDAN RAPHAEL (SBN 252344)
13                                            jraphael@byronraphael.com
                                              811 Wilshire Blvd.. 17th Floor
14                                            Los Angeles, CA  90017
                                              Los Angeles, CA  90017
15                                            Telephone:   (213) 291-9800
                                              Facsimile:    (213) 377-5771
16
                                              Attorneys for Plaintiff
17                                            BARON APP, INC. d/b/a CAMEO

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT