TIM BYRON (SBN 277569)
tbyron@byronraphael.com
BYRON RAPHAEL LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:    (415) 839-8500
Facsimile:    (213) 377-5771

JORDAN RAPHAEL (SBN 252344)
jraphael@byronraphael.com
BYRON RAPHAEL LLP
811 Wilshire Blvd., 17th Floor
Los Angeles, CA  90017
Telephone:    (213) 291-9800
Facsimile:    (213) 377-5771

Attorneys for Plaintiff
BARON APP, INC. d/b/a CAMEO

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON APP, INC. d/b/a CAMEO,<br><br>Plaintiff,<br><br>v.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, OPENAI, L.L.C., OPENAI OPCO, LLC, and OPENAI GP, L.L.C.,<br><br>Defendants. | Case No. 3:25-cv-9268<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date:    As soon as may be heard<br>Time:    As soon as may be heard<br>Place:    To be determined<br><br>**DEMAND FOR JURY TRIAL** |

1

2

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................. 3

    A.    Cameo and Its Groundbreaking CAMEO Service ............................... 3

    B.    OpenAI Announces a Competing "Cameo" Service .......................... 6

III.  LEGAL STANDARD ......................................................................... 10

IV.   CAMEO IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS ............... 10

    A.    OpenAI Infringes Cameo's Trademark .............................................. 10

        1.    Cameo's Trademark Is Valid and Enforceable ......................... 10

    B.    There Is a Likelihood of Confusion .................................................... 11

        1.    OpenAI's Use of an Identical Mark Makes Confusion Likely ................. 11

        2.    OpenAI's Use of the "Cameo" Mark for Identical and Highly Related Products and Services Makes Confusion Likely ......................... 12

        3.    Highly Overlapping Marketing Channels Make Confusion Likely .......... 14

        4.    The Strength of Plaintiff's CAMEO Mark Makes Confusion Likely ....... 15

        5.    Evidence of Actual Confusion Shows Confusion Is Likely ................... 17

        6.    Degree of Consumer Care Makes Confusion Likely ............................ 18

        7.    The Intent Factor Favors Cameo ............................................... 19

        8.    Likelihood of Expansion Makes Confusion Likely ................................ 20

    C.    OpenAI's Conduct Will Dilute and Tarnish Cameo's Mark ................. 20

        1.    OpenAI Will Blur the Distinctiveness of Plaintiff's CAMEO® Mark ................................................................................................. 21

        2.    OpenAI Will Tarnish Plaintiff's Hard-Earned Reputation ...................... 22

V.    CAMEO WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION ................................................................................................. 22

VI.   THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION ...................... 24

VII.  THE BALANCE OF EQUITIES STRONGLY FAVORS AN INJUNCTION ............ 24

VIII. THE COURT SHOULD WAIVE ANY BOND REQUIREMENT UNDER RULE 65 ................................................................................................... 25

IX.   CONCLUSION ................................................................................. 25

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*adidas Am., Inc. v. Skechers USA, Inc.*,
    890 F.3d 747 (9th Cir. 2018) ........................................................................ 16

*AK Futures LLC v. Boyd St. Distro, LLC*,
    35 F.4th 682 (9th Cir. 2022) ........................................................................ 22

*Am. Rena Int'l Corp. v. SisJoyce Int'l Co.*,
    534 F. App'x 633 (9th Cir. 2013) ................................................................ 24

*Americana Trading Inc. v. Russ Berrie & Co.*,
    966 F.2d 1284 (9th Cir. 1992) ..................................................................... 12

*Boldface Licensing + Branding v. By Lee Tillett, Inc.*,
    940 F. Supp. 2d 1178 (C.D. Cal. 2013) .................................................. 2, 18

*Bridgestone Brands, LLC v. Dastgah*,
    2016 WL 1070670 (N.D. Cal. Mar. 18, 2016) ............................................ 10

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................... 12, 15

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
    142 F.3d 1127 (9th Cir. 1998) ..................................................................... 11

*Electropix v. Liberty Livewire Corp.*,
    178 F. Supp. 2d 1125 (C.D. Cal. 2001) ....................................................... 18

*FAZE Apparel, LLC v. Faze Clan, Inc.*,
    2018 WL 3830027 (C.D. Cal. May 22, 2018) ............................................. 24

*Feldenkrais Guild of N. Am. v. Wildman*,
    2018 WL 2331905 (N.D. Cal. May 23, 2018) ............................................. 11

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ..................................................................... 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ..................................................................... 16

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) ....................................................... 24

*Garden of Life, Inc. v. Letzer*,
    318 F. Supp. 2d 946 (C.D. Cal. 2004) ......................................................... 23

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199, 1206 (9th Cir. 2000)........................................................ 11, 15

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
   2 F.4th 1150 (9th Cir. 2021)..................................................... 16, 19, 20, 23

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002).......................................................................... 16

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
   828 F.3d 1098 (9th Cir. 2016)........................................................... 15, 16, 19

*Johnson & Johnson Consumer Cos. v. Aini*,
   540 F. Supp. 2d 374 (E.D.N.Y. 2008) ........................................................... 22

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005)........................................................................... 10

*Lindy Pen Co. v. Bic Pen Corp.*,
   796 F.2d 254 (9th Cir. 1986)........................................................................... 11

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
   230 F. Supp. 3d 1161 (C.D. Cal. 2017)......................................................... 16

*Mortg. Elec. Registration Sys., Inc. v. Brosnan*,
   2009 WL 3647125 (N.D. Cal. Sept. 4, 2009) ............................................... 23

*Nike, Inc. v. Nikepal Intil, Inc.*,
   2007 WL 2782030 (E.D. Cal. Sept. 18, 2007) ............................................. 21

*OpenAI, Inc. v. Open A.I., Inc.*,
   719 F. Supp. 3d 1033 (N.D. Cal. 2024) ........................................................ 17

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189 (1985)......................................................................................... 21

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
   766 F.2d 1319 (9th Cir. 1985)......................................................................... 25

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
   354 F.3d 1020 (9th Cir. 2004)......................................................................... 18

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014).................................................................. 10, 14

*Prolacta Bioscience, Inc. v. Prolact Ltd.*,
   2025 WL 2078270 (C.D. Cal. June 18, 2025) .............................................. 10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   846 F. Supp. 2d 1063 (N.D. Cal. 2012) .................................................. 18, 23

MEM. OF P&A ISO PL.'S APP. FOR
                                          TEMPORARY RESTRAINING ORDER

*Synoptek, LLC v. Synaptek Corp.*,
    309 F. Supp. 3d 825 (C.D. Cal. 2018)........................................................................ 11

*Talent Mobile Dev., Inc. v. Headios Grp.*,
    2017 WL 694054 (C.D. Cal. Oct. 3, 2017).............................................................. 15

*Tari Labs, LLC v. Lightning Labs, Inc.*,
    2023 WL 2480739 (N.D. Cal. Mar. 13, 2023)................................................... passim

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002)....................................................................................... 17

*Triad Sys. Corp. v. Se. Exp. Co.*,
    64 F.3d 1330 (9th Cir. 1995)....................................................................................... 25

*Waters v. Notorious Media, LLC*,
    2022 WL 3446110 (C.D. Cal. Aug. 17, 2022)........................................................ 15

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014)..................................................................................... 17

*Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*,
    2010 WL 11520159 (C.D. Cal. Sept. 20, 2010)..................................................... 17

### **Statutes**

15 U.S.C. § 1057 ................................................................................................................ 10

15 U.S.C. § 1116 ................................................................................................................ 22

15 U.S.C. § 1125 ................................................................................................ 20, 21, 22

1       Plaintiff Baron App, Inc. d/b/a Cameo ("Cameo" or "Plaintiff") respectfully submits this

2   memorandum of points and authorities in support of its *ex parte* application for a temporary

3   restraining order and order to show cause why preliminary injunction should not issue.

4   **I.      INTRODUCTION**

5       Immediate injunctive relief is crucial to halt Defendant OpenAI's blatant and unlawful

6   infringement and dilution, via its newly launched "Cameo" AI video service, of Plaintiff's hard-

7   earned trademark rights.  OpenAI's conduct must be stopped immediately to preserve the status

8   quo and avoid irreparable damage to Cameo's trademarks, brand equity, and business.

9       Cameo is a pioneering digital marketplace that connects fans with celebrities and other

10  creators through personalized videos.  Since its founding in 2017, Cameo and its registered

11  trademark CAMEO® have become a beloved and widely recognized brand closely associated

12  with short, personalized videos featuring celebrities and other personalized celebrity interactions.

13      OpenAI has earned a reputation for trampling the rights of others in its aggressive attempt

14  to dominate every corner of the Internet with its AI platforms.  This lawsuit provides the latest

15  example.  In a recent update to its Sora iOS app, OpenAI converted the app into a TikTok-style

16  social network and introduced a new service for creating videos featuring AI-generated likenesses

17  of other users.  To highlight the fact that its service can be used to create personalized celebrity

18  videos, OpenAI named it "Cameo"—Plaintiff's exact trademark.  OpenAI then promoted its

19  "Cameo" feature by attracting celebrities to Sora—including current and former talent from

20  Plaintiff's CAMEO® marketplace.  As a result, people seeking personalized celebrity videos are

21  given a choice that is unlawful from a trademark perspective: use Plaintiff's CAMEO® app to

22  purchase an authentic, personalized celebrity video, or use Sora's confusingly named "Cameo"

23  service to create a realistic AI-generated video featuring a celebrity's likeness.

24      Although the updated Sora app and its infringing "Cameo" feature are still in an early

25  rollout phase, the likelihood of consumer confusion and trademark dilution—and the resulting

26  harm to Plaintiff—are already evident.  The harm will escalate significantly if OpenAI is allowed

27  to continue with its launch using the infringing "Cameo" mark—particularly during the critical

28  November-December holiday gifting season, the highest-revenue period of the year for Plaintiff.

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

Cameo seeks a temporary restraining order (and preliminary injunction) to prevent OpenAI's infringement from irreparably harming Cameo and the brand and goodwill it has cultivated through nearly a decade of dedicated stewardship and substantial investment.

Cameo is likely to succeed on the merits of its trademark infringement claims. OpenAI is using an identical mark, "Cameo," for similar—and in some cases identical—services. Both parties use "Cameo" for personalized celebrity videos, as well as for AI-generated videos featuring fictional characters (a service Cameo has offered since 2022 via Cameo Kids). Both Plaintiff's and Defendant's videos are short and vertically formatted for seamless viewing on mobile devices and sharing on social media. Both parties also use the same promotional channels—social media and news media outlets—to promote and propagate their respective offerings. And although evidence of consumer confusion is not required at this early stage, numerous such instances have already occurred, further demonstrating that confusion is likely to continue absent immediate relief. *See Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1194 (C.D. Cal. 2013). Cameo is also likely to prevail on its dilution claims: Plaintiff's CAMEO® trademark is famous, and Defendant's use of "Cameo" with AI-generated videos is likely to dilute and tarnish the distinctiveness of Plaintiff's mark.

All other injunction factors likewise support granting Cameo's Application. Cameo's likelihood of success on the merits on its trademark claims creates a presumption of irreparable harm. Even without this presumption, OpenAI's continued use of "Cameo" to offer identical and similar services to the same target audience as Cameo's will deprive Cameo of its ability to control the integrity of its brand and reputation. This irreparable harm will only intensify as the term "Cameo" becomes associated with celebrity deepfakes, unsavory or misleading digital content, and OpenAI's "move fast and break things" business tactics. Given OpenAI's vast marketing resources, Cameo's CAMEO mark is also at grave risk of being swamped by OpenAI's infringing products and services. Indeed, Cameo is already suffering irreparable injury due to OpenAI's infringing activities through actual confusion and sharply declining clickthrough rates. The timing of Sora's launch is especially injurious, striking Cameo during the crucial holiday season when its brand and business are most vulnerable. Given the imminent and existential

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

threat that OpenAI and its unlawful use of "Cameo" pose to Plaintiff, immediate injunctive relief is essential to prevent further irreparable harm.

Finally, the public interest and balance of equities also favor granting relief. Whereas Cameo faces irreparable harm without injunctive relief, OpenAI has no legitimate interest in continuing to infringe Cameo's valuable trademark rights. Moreover, OpenAI has both publicly touted and demonstrated that it can easily remove or modify elements of its Sora app; its founder has stated that as Sora is rolled out, the public should "expect a very high rate of change from us." Thus, if ordered to stop using its infringing "Cameo" mark, OpenAI's burden would be minimal.

## II.    STATEMENT OF FACTS

### A.    Cameo and Its Groundbreaking CAMEO Service

1.    Cameo is a digital marketplace that enables users to purchase personalized videos from celebrities and other creators. Decl. of Mackenzie O'Connor ("O'Connor Decl.") ¶ 2. Through its website (cameo.com) and mobile apps, Cameo offers a curated marketplace where talent (celebrities, athletes, influencers, and anyone else interested in using the marketplace as a creator) can set their own prices, record custom videos, and interact directly with fans. *Id.*

2.    Cameo users can begin the process by browsing its extensive catalog of talent, which includes thousands of well-known personalities from film, television, music, sports, and social media. *Id.* ¶ 3. Users also find talent on Cameo via social media posts and web searches. *Id.* Once a user selects a creator, they submit a request with specific instructions to be included in the video. *Id.* For example, a user can request that the creator wish a friend a happy birthday, deliver a marriage proposal, answer questions, conduct a tarot reading, or read from a prepared script. *Id.*

3.    After the request is submitted, the talent records a personalized video, and the user receives a notification when it is ready. *Id.* ¶ 4. The videos are vertically formatted for seamless viewing on mobile devices and sharing on social media. *Id.* Cameo's service is designed to foster authentic, memorable interactions between fans and celebrities, often resulting in viral content that spreads across TikTok, Instagram, and Twitter/X.com. *Id.* ¶ 6. The company's mission is "to create the most personalized and authentic fan experiences on Earth." *Id.* ¶ 1.

4.    For talent, Cameo offers a streamlined and empowering way to connect with fans

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

while building their personal brand.  O'Connor Decl. ¶ 5.  The service provides tools to manage incoming orders, record videos directly from a mobile device, and respond to fans in a way that feels authentic and manageable.  *Id.*

5.    Thousands of celebrities, including Jake Paul, Snoop Dogg, Tony Hawk, Dennis Rodman, Ice T, Sarah Jessica Parker, Jon Bon Jovi, Chuck Norris, Keith Hernandez, Lance Bass, Donald Trump Jr., and Lindsay Lohan, have used Cameo to connect with their fans via short, personalized videos.  O'Connor Decl. ¶ 7.  These personalities have helped elevate the Cameo brand's visibility and cultural relevance.  *Id.*

6.    The company's success is driven by its distinctive business model and the emotional resonance of its product.  Cameo customers worldwide have made over 10 million magical moments, ranging from birthday greetings and marriage proposals to business endorsements and direct fan interactions.  O'Connor Decl. ¶ 8.  Users frequently describe Cameo videos as "unforgettable," "hilarious," or "heartwarming," and the brand has cultivated a loyal user base that returns again and again for new occasions and new talent.  *Id.*  Indeed, the Cameo name has become synonymous with personalized celebrity videos and the joy they bring.  *Id.*

7.    Cameo has been featured in thousands of media articles since its founding.  O'Connor Decl. ¶¶ 9-11 & Exs. 1-5.   In October 2018, Time magazine named Cameo one of the "50 Most Genius Companies."  *Id.* ¶ 9.  Fast Company named Cameo #1 among the "10 Most Innovative Social Media Companies of 2020."  *Id.*  Cameo and Cameo videos are frequently featured in national media outlets, late-night television, and online publications, further solidifying the brand's reputation as a leader in personalized entertainment.  O'Connor Decl. ¶¶ 9-11 & Exs. 1-5. For example, Cameo has been mentioned on Jeopardy, The Simpsons, Abbott Elementary, South Park, Jimmy Kimmel Live!, Family Guy, Entertainment Tonight, the Ellen DeGeneres Show, Last Week Tonight with John Oliver, Tosh.0, and Saturday Night Live.  *Id.*

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER



| Cameo on The Simpsons | Cameo on Saturday Night Live |
|---|---|

8.    In 2019, Cameo launched Cameo for Business, giving companies both big and small the opportunity to create custom ads on Cameo.  O'Connor Decl. ¶ 12.  In 2022, Cameo launched Cameo Kids, allowing customers to purchase personalized AI-generated videos featuring beloved animated characters via licenses with franchises like Sesame Street, PAW Patrol, Cocomelon, and Care Bears.  O'Connor Decl. ¶ 13.  In 2023, Cameo opened its talent enrollment process to allow nearly anyone to join the marketplace as talent, subject to basic eligibility criteria and identity verification.  O'Connor Decl. ¶ 14.  An explosion in the variety of talent on Cameo followed, as tarot readers, song composers, ASMR artists, puppeteers, and many others flocked to Cameo as creators.  *Id.*  Cameo also recently introduced generative AI in various aspects of its core business, from using AI to create review summaries and talent descriptions to deploying a chatbot with a generative AI search function for its site and help center to assist consumers in creating the ideal personalized video.  O'Connor Decl. ¶ 15.

9.    Cameo promotes its service via social media; its social media accounts on TikTok, Instagram, and X.com have millions of followers.  O'Connor Decl ¶ 16.  Cameo's social media posts have generated more than 100 million views in the past year alone.  *Id.*

10.   To protect its valuable rights in its CAMEO® trademark, Cameo has secured several U.S. Trademark Registrations.  These include: U.S. Trademark Reg. Nos. 6,113,018 and

6,369,961 for the word mark CAMEO for, *inter alia*, downloadable software and providing a website that enable users to create personalized video messages featuring celebrities; and Reg. Nos. 6,026,358 and 6,026,359 for design marks featuring the word CAMEO for similar goods and services.  Declaration of Tim Byron ("Byron Decl.") ¶ 2, Ex. 1.  These registrations are valid, subsisting, and in full force and effect, and three of them (Nos. 6,113,018; 6,026,358; and 6,026,359) have achieved incontestable status under 15 U.S.C. § 1065.  *See id*. ¶ 3, Ex. 2.  Cameo has also acquired significant common law rights in CAMEO® for a wide range of goods and services through consistent, substantial, and nationwide use in commerce.  O'Connor Decl. ¶¶ 2-18.  Indeed, users and the news media now use "Cameo" and "Cameo videos" as shorthand for the personalized videos from Plaintiff's marketplace.  O'Connor Decl. ¶ 18 & Ex. 5.

### B.    OpenAI Announces a Competing "Cameo" Service

11.  OpenAI is an artificial intelligence research and deployment company headquartered in San Francisco.  On September 30, 2025, OpenAI launched a new, invite-only version of its Sora iOS app featuring a new service called "Cameo."  Its "Cameo" service allows users to make digital likenesses of themselves, use them (and likenesses created by other users) in personalized, AI-generated videos, and share them with other users for use in AI-generated videos.  Byron Decl. ¶ 6, Ex. 5.  OpenAI also repositioned its Sora video app as a TikTok-style social network, encouraging users to connect with friends and to create and share videos using "Cameos" from celebrities and others.  *Id*.  Like Plaintiff's "Cameo" videos, these videos are short and vertically formatted for easy viewing on mobile devices and sharing on social media.  *Id*. ¶ 7; Statement of Facts ("SOF") ¶ 3.

12.  Shortly after Sora's relaunch, OpenAI and its promoters began touting "Cameo" as a way to create personalized videos featuring celebrities.  Byron Decl. ¶¶ 8, 9 & Ex. 6.  Indeed, the ability to make personalized videos featuring celebrities quickly became the key talking point about Sora in the news media and on social media.  *See* Byron Decl. ¶¶ 9-14, 16-19 & Exs. 6-11, 13-16.  A celebrity who makes a "Cameo" on Sora can give other Sora users the ability to make custom AI videos featuring his or her likeness by "opening" their "Cameo."  For example, on October 9, 2025, celebrity entrepreneur Mark Cuban posted on X.com: "For those of you on Sora,

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

my Cameos are open.  Have at it."  Byron Decl. ¶ 9, Ex. 6.  Hundreds of Sora users immediately began using OpenAI's "Cameo" service to make short, customized videos featuring a realistic-looking likeness of Mr. Cuban.  *Id*. ¶¶ 11-12 & Exs. 8-9.

13.  One of the ways OpenAI attracts celebrities to its Sora app and incentivizes them to open their "Cameos" to other users is by allowing them to embed promotional messages into videos made with their "Cameos."  For example, videos that Sora users create using Mr. Cuban's "Cameo" include the text "Brought to you by Cost Plus Drugs," a company he founded.  *Id*. ¶¶ 12-13 & Exs. 9-10.

14.  OpenAI is also attracting celebrities from the same pool of talent that has long flocked to Plaintiff's marketplace.  Jake Paul, one of the first high-profile celebrities to join Cameo's service, *see* O'Connor Decl. ¶ 19, recently announced that he was "the first celebrity NIL [name, image, and likeness] cameo user" on Sora.  Byron Decl. ¶ 10, Ex. 7.  Ricky Berwick, one of the most popular celebrities on Plaintiff's marketplace, has also joined Sora and opened his "Cameo."  O'Connor Decl. ¶ 19; Byron Decl. ¶ 23, Ex. 20.  So too has online streamer Amouranth, who has been active on Plaintiff's Cameo marketplace since 2021.  O'Connor Decl. ¶ 19; Byron Decl. ¶ 11, Ex. 8.  And although Mr. Cuban is not on Cameo's marketplace, his Shark Tank costar Kevin "Mr. Wonderful" O'Leary has made 1,307 personalized Cameo videos on Plaintiff's service.  O'Connor Decl. ¶ 19.

15.  In early October 2025, OpenAI announced plans to add the ability to use "Cameos" to create videos with fictional characters.  Byron Decl. ¶ 15, Ex. 12.

16.  Just as the public commonly refers to videos made on Plaintiff's services as "Cameos" or "Cameo videos," OpenAI, its users, and the media have begun referring to the videos made using Sora's "Cameo" service as "cameos" or "cameo videos."  *See* Byron Decl. ¶¶ 16-19, Exs. 13-16; *id*. ¶ 14, Ex. 11.

17.  OpenAI's use of "Cameo" has caused actual confusion in the marketplace, with consumers mistakenly believing that Plaintiff was involved with OpenAI and its Sora app or vice-versa.  For example, in response to Mr. Cuban's post on X.com (above), one X.com user was misled into believing that Mr. Cuban was using ***Defendant's*** app to fulfill video requests on

1    *Plaintiff's* Cameo marketplace: "Wait. @mcuban is automating his @Bookcameo with Sora 2?

2    Oh word? What. Could. Go. Wrong?"  Byron Decl. ¶ 20, Ex. 17.  "@Bookcameo" is Plaintiff's

3    official account on X.com.  O'Connor Decl. ¶ 16(c).

4        18.  Similarly, on October 13, 2025, *Plaintiff* received a misdirected customer service

5    inquiry from a user having an issue with *Defendant's* Sora app:

6        02:48 PM | Customer: Im just trying to make funny videos of myself. The
        videos im trying to make isnt harmful or bad in any way. But it says that im
7        a teen when im not

8        02:50 PM | Maya from Cameo: Are you trying to become a talent on Cameo?
        Talent are able to be booked for personalized video requests! If this is what
9        you are trying to do, let me know and I'm happy to help! :)

10       02:52 PM | Customer: No im just usong cameo for personal use. Ive made
        my own cameo with my face. *But it sora thinks im a teen and there fore i*
11       *cant make videos with my own cameo*

12   O'Connor Decl. ¶¶ 21-22 & Ex. 6 (Emphasis added.)   When Plaintiff informed this user that Sora

13   was not Plaintiff's product, she responded: "Oh alright chat gpt [Defendant's AI chat app] told

14   me to message this email lol"—evidencing that *even Defendant's own AI tools are confused*

15   *between Plaintiff's Cameo service and Defendant's Cameo service.*  *Id.*

16       19.  OpenAI's new "Cameo" service has also led social media users to mistakenly tag

17   *Plaintiff's* social media accounts in posts about *Defendant's* product.  Byron Decl. ¶ 21, Ex. 18.

18       20.  OpenAI's "Cameo" service has also spawned an ecosystem of third-party websites

19   focused on the service with names that also use Plaintiff's CAMEO® trademark, including

20   cameoAI.org, CameoSora.com, and SoraCameos.app.  The latter site lists celebrity "Cameos"

21   available via Sora in an interface that mimics the interface of Plaintiff's website:

22

23

24

25

26

27

28

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER




| Plaintiff's Website | SoraCameos.app |

O'Connor Decl. ¶ 12**;** Byron Decl. ¶¶ 22-24, Exs. 19-21.

21.  OpenAI's Sora app and its "Cameo" service are in an early phase; Defendant has not yet launched a Sora app for Android devices or added "Cameos" to the web version of Sora. Byron Decl. ¶ 6, Ex. 5; *id*. ¶ 29, Ex. 26.  OpenAI's founder Sam Altman has stated that as Sora is rolled out, the public should "expect a very high rate of change from us."  Byron Decl. ¶ 25, Ex. 22.  Mr. Altman also wrote: "We will make some good decisions and some missteps, but we will take feedback and try to fix the missteps very quickly."  *Id*.  OpenAI has also shown it can respond to intellectual property complaints quickly.  OpenAI has modified Sora multiple times to remove the ability to make videos featuring both living and deceased celebrities after complaints from them and their estates.  Byron Decl. ¶ 18, Ex. 15; *id*. ¶ 26, Ex. 23.

22.  On October 10, 2025, Cameo wrote OpenAI to raise its trademark concerns, providing details on how OpenAI's "Cameo" service was likely to cause confusion and harm and requesting that OpenAI transition to a different mark.  Byron Decl. ¶ 4, Ex. 3.  On October 22, 2025, OpenAI informed Cameo it would not cease its use of the designation "Cameo."  *Id*. ¶ 5, Ex. 4.

23.  On October 28, 2025, Cameo commenced this action.  ECF No.1.  The next day, OpenAI updated Sora to remove the "invite only" user limitation and add the ability to make and

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

use "Cameos" to make videos with fictional characters.  Byron Decl. ¶¶ 27-28, Exs. 24-25.

Sora's "Cameos" service is still not available on the web or on Android devices.  *Id.* ¶ 28, Ex. 26.

## III.    LEGAL STANDARD

The Lanham Act and Fed. R. Civ. Proc. 65(b) provide the Court with "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable." 15 U.S.C. § 1116(a).  A moving party is entitled to a temporary restraining order and/or preliminary injunction if it establishes that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable injury if the relief is denied, (3) the balance of equities tips in its favor, and (4) the relief is in the public interest.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  "The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *Bridgestone Brands, LLC v. Dastgah*, 2016 WL 1070670, at *1 (N.D. Cal. Mar. 18, 2016).  As discussed below, Cameo easily meets the test for preliminary relief.

## IV.    CAMEO IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.    OpenAI Infringes Cameo's Trademark

To prevail on a claim for trademark infringement, a plaintiff must demonstrate: (i) "a valid mark"; and (ii) that defendant's use of its infringing mark "is likely to cause confusion, or to cause mistake, or to deceive." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).  These elements are met here.

#### 1.    Cameo's Trademark Is Valid and Enforceable

Cameo owns numerous U.S. trademark registrations, including incontestable registrations for the word mark CAMEO for downloadable software and providing a website that enable users to create personalized video messages featuring celebrities, and for design marks featuring the word CAMEO for similar goods and services.  SOF ¶ 10.  These incontestable trademark registrations constitute conclusive evidence of the validity of the marks, Cameo's ownership of them, and Cameo's exclusive right to use them in commerce.  15 U.S.C. § 1115(b); *Prolacta Bioscience, Inc. v. Prolact Ltd.*, 2025 WL 2078270, at *15 (C.D. Cal. June 18, 2025) ("Registered marks that have been declared incontestable are afforded a conclusive presumption of validity.").

1    In addition, through consistent use in commerce, Cameo has acquired common law rights in the

2    CAMEO mark for, among other things, personalized videos featuring celebrities, creators, and

3    AI-generated children's characters.  *See* SOF ¶ 10.

4         **B.**    <u>There Is a Likelihood of Confusion</u>

5         In evaluating likelihood of confusion, courts in this Circuit are guided by the eight

6    *Sleekcraft* factors: (1) strength of the mark; (2) proximity or relatedness of the goods; (3)

7    similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of

8    goods and degree of purchaser care; (7) defendant's intent in selecting the mark; and (8)

9    likelihood of expansion of the product lines.  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142

10   F.3d 1127, 1129 (9th Cir. 1998); *AMF Inc. v. Sleekcraft*, 599 F.2d 341, 348-49 (9th Cir. 1979).

11   Here, each factor weighs heavily in Cameo's favor.

12          **1.**    **OpenAI's Use of an Identical Mark Makes Confusion Likely**

13        The "greater the similarity between the two marks at issue, the greater the likelihood of

14   confusion."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).  Marks are

15   confusingly similar when they have similar sound, sight, and meaning, and "similarities weigh

16   more heavily than differences."  <u>*Sleekcraft*</u>, 599 F.2d at 351.

17        Here, OpenAI's infringing mark is identical in sound, sight, and meaning to Plaintiff's

18   CAMEO® mark.  This fact alone strongly favors finding a likelihood of confusion.  *Feldenkrais*

19   *Guild of N. Am. v. Wildman*, 2018 WL 2331905, at *5 (N.D. Cal. May 23, 2018) (granting

20   preliminary injunction where marks were "identical"); *Synoptek, LLC v. Synaptek Corp.*, 309 F.

21   Supp. 3d 825, 838 (C.D. Cal. 2018) (Because the marks at issue were "virtually indistinguishable

22   in both sound and appearance, the similarity of the marks weighs heavily in favor of finding a

23   likelihood of consumer confusion."); *Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 257 (9th Cir.

24   1986) (holding that likelihood of confusion was "overwhelming" where both parties sold pens

25   with virtually identical marks).

26        In OpenAI's response to Cameo's demand letter, OpenAI contended that any "potential

27   for confusion" was dispelled because "the OPENAI and SORA brands are prominently displayed

28   throughout the user experience" on the Sora app.  Byron Decl. ¶ 5, Ex. 4.  This assertion is

meritless.  OpenAI's other marks have no bearing on the confusion caused by its identical

infringing "Cameo" mark in the numerous contexts where they do not appear, such as social

media posts and hashtags, and media articles.  *See Lindy Pen*, 796 F.2d at 256 (despite possibility

of eliminating confusion via post-sale inspection of branded products, confusion was likely

because marks were "virtually identical" when encountered in the "telephone order market").

Additionally, OpenAI has entered into numerous high-profile partnerships and licensing deals

with third-party companies and brands, including The Washington Post, Vox Media, and Reddit.

Byron Decl. ¶¶ 30-34, Exs. 27-31.  Thus, OpenAI's use of its other marks in connection with the

infringing "Cameo" mark is likely to lead consumers to mistakenly believe that its "Cameo"

service is licensed by or otherwise affiliated with Plaintiff and its CAMEO® trademark.  *See*

McCarthy on Trademarks and Unfair Competition (5th ed.) ("McCarthy") § 23:43 (Use of a

defendant's house mark with the infringing mark "may merely suggest to customers that plaintiff

has licensed defendant or that the parties are affiliated in some other way.").  Moreover, in the

reverse confusion context, OpenAI's other marks can be "an aggravation" because they

"reinforce[] the association between" the CAMEO mark and OpenAI.  *Ironhawk Techs., Inc. v.*

*Dropbox, Inc.*, 2 F.4th 1150, 1164-65 (9th Cir. 2021); *Americana Trading Inc. v. Russ Berrie &*

*Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992).

   OpenAI's argument is also illogical—in its view, it should be free to ape any existing

trademark by slapping its other marks next to it.  However, "a junior user cannot justify its

confusing use of another's mark simply by tacking on its own house mark or tradename."

McCarthy § 23:43.  Accordingly, this factor strongly favors Cameo.

### 2.    OpenAI's Use of the "Cameo" Mark for Identical and Highly Related Products and Services Makes Confusion Likely

   "Related goods are generally more likely than unrelated goods to confuse the public as to

the producers of the goods."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036,

1055-56 (9th Cir. 1999).  Cameo "need not establish that the parties are direct competitors to

satisfy the proximity or relatedness factor."  *Ironhawk*, 2 F.4th at 1163.  Instead, "related goods

(or services) are those which would be reasonably thought by the buying public to come from the

same source if sold under the same mark." *Id*. (internal quotations omitted). Goods and services are related when "similar in use and function" or "sold to the same class of purchasers." *Id*.

Here, there is no question that the parties' respective products and services are highly related. Using the identical CAMEO mark, both parties offer personalized celebrity video content. SOF ¶¶ 1-5, 11-14. Both parties also use the same mark for short videos that are vertically formatted for viewing on mobile devices and sharing on social media. SOF ¶¶ 3, 11. Indeed, users seeking a personalized celebrity video can now bypass Plaintiff's CAMEO® service and instead use Sora's infringing "Cameo" service to create an extremely realistic AI video featuring a celebrity's likeness (as many users have done). Moreover, OpenAI just yesterday added a "Cameo" service for AI-generated videos featuring fictional characters—a service Cameo has offered since 2022 with Cameo Kids. SOF ¶¶ 23, 8. Cameo has also introduced AI in other aspects of its business, further increasing the similarities between the parties' offerings. SOF ¶ 8. This "similarity in use and function" between the parties' products and services strongly supports a finding of relatedness in the marketplace. *Ironhawk*, 2 F.4th at 1163; *Tari Labs, LLC v. Lightning Labs, Inc.*, 2023 WL 2480739, at *5-6 (N.D. Cal. Mar. 13, 2023) (finding blockchain-based software protocols related and granting TRO).

The parties' goods are even more closely related because they are marketed to "the same class of purchasers" via the same celebrity talent and promotional channels, including social media and news media outlets. SOF ¶¶ 1-7, 9, 11-14, 16; *Ironhawk*, 2 F.4th at 1163. For example, comedian Ricky Berwick has made more than 3,000 personalized Cameo videos for Plaintiff's users and was also one of the first celebrities to "open" his Sora "Cameo" for Sora users. SOF ¶ 14. Jake Paul, one of the first high-profile celebrities to join Plaintiff's CAMEO® service, has also "opened his Cameos" on Sora, allowing users to make personalized videos featuring his likeness. SOF ¶ 14. And online streamer Amouranth, who has been active on Plaintiff's Cameo marketplace since 2021, has made her "Cameo" available on Sora. SOF ¶ 14.

Indeed, a Sora user recently made clear the direct competition that exists between the parties by using Sora to make a video in which Jake Paul's "Cameo" says: "Now that we can use Sora to make people say anything . . . Cameo is useless now." Byron Decl. ¶ 35, Ex. 32.

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    In sum, the relatedness factor overwhelmingly favors Plaintiff.

18    **3.    Highly Overlapping Marketing Channels Make Confusion Likely**

19    "Convergent marketing channels increase the likelihood of confusion." *Off. Airline*

20    *Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993) (quotations omitted). "In assessing

21    marketing channel convergence, courts consider whether the parties' customer bases overlap and

22    how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130.

23    "Marketing channels can converge even when different submarkets are involved so long as 'the

24    general class of ... purchasers exposed to the products overlap.'" *Id.* (quoting *Sleekcraft*, 599 F.2d

25    at 353).

26    Here, there is a near complete overlap in customer bases: Cameo's customers are seeking

27    short, personalized videos featuring celebrities, whereas OpenAI's customers are seeking short,

28    personalized, AI-generated videos which may feature celebrities. Moreover, both parties are in the

business of short, personalized videos *designed to be shared and discussed on social media*. SOF ¶¶ 3, 11; *see Tari Labs*, 2023 WL 2480739, at \*8 (marketing channels factor strongly favored Plaintiff where both companies targeted their products at software developers).

In addition, unlike cases where parties use the Internet as a mere marketing channel, here, the Internet is the *only* place where the parties are found. Thus, a convergence of marketing channels exists that makes confusion more likely. *See, e.g.*, *Waters v. Notorious Media, LLC*, 2022 WL 3446110, at \*7 (C.D. Cal. Aug. 17, 2022) (finding similarity of marketing channels because the parties both "use the Web as their primary marketing channel" and their products "are solely hosted on the Internet"); *Talent Mobile Dev., Inc. v. Headios Grp.*, 2017 WL 6940548, at \*7 (C.D. Cal. Oct. 3, 2017) (finding "both parties use virtually identical marketing channels" where they "both sell their apps on the iTunes store and the Play Store, and they both promote their apps through social media and through websites").

"In the context of the Internet, the Ninth Circuit has held that the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." *Waters*, 2022 WL 3446110, at \*7 (C.D. Cal. Aug. 17, 2022) (quoting *GoTo.com*, 202 F.3d at 1205). Because each of these "Web Factors" favors Plaintiff, the Court may find a likelihood of confusion without addressing the other *Sleekcraft* factors. *Id.* But as shown below, the other factors also strongly favor Plaintiff.

### 4. The Strength of Plaintiff's CAMEO Mark Makes Confusion Likely

The scope of protection for a mark increases with its strength. *Brookfield*, 174 F.3d at 1058. In evaluating mark strength, courts consider both the mark's commercial strength and conceptual strength. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016).

Plaintiff's CAMEO® mark warrants broad protection. Commercial strength "is based on actual marketplace recognition," *id.* at 1107, and the CAMEO® mark has achieved widespread recognition and an established presence in the marketplace. Cameo and its video service have been featured in thousands of media articles and reports, and it is frequently referenced on television. SOF ¶ 7. Additionally, Cameo's social media accounts have millions of followers,

and its posts have generated more than 100 million views in the past year alone.  SOF ¶ 9.

Customers have also booked more than 10 million Cameo moments (consumer videos, business

endorsements, and direct messages), which are regularly shared across social media platforms

like Instagram, TikTok, and Twitter/X.com.  SOF ¶ 6, O'Connor Decl. ¶¶ 6, 16- 17.  Thus, the

CAMEO® mark is indisputably commercially strong.  *See Tari Labs*, 2023 WL 2480739, at *4

(finding mark commercially strong based on "significant press attention" and "strong social

media presence"); *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1173 (C.D. Cal.

2017) (strength of mark factor favored plaintiff based on wide media coverage of its brand);

*adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754-56 (9th Cir. 2018) (finding

"tremendous commercial success and market recognition" based on "considerable amount of

unsolicited media coverage").

Plaintiff's CAMEO® mark is also conceptually strong.  A mark's conceptual strength is

determined by classifying it "along a spectrum of five categories ranging from strongest to

weakest: arbitrary, fanciful, suggestive, descriptive, and generic."  *JL Beverage*, 828 F.3d at 1107.

Descriptive marks "define a particular characteristic of the product in a way that does not require

any imagination"—*e.g.*, the mark "Japan Telecom" for a telecom business catering to the

Japanese community.  *Id.*; *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873

(9th Cir. 2002).  Suggestive marks are stronger than descriptive marks and, like fanciful and

arbitrary marks, are deemed inherently distinctive.  *See Ironhawk*, 2 F.4th at 1162.  Suggestive

marks "suggest a product's features and require consumers to exercise some imagination to

associate the suggestive mark with the product."  *JL Beverage*, 828 F.3d at 1107.

At a minimum, the CAMEO® mark is suggestive because it requires some imagination to

associate it with Plaintiff's products and services—a digital marketplace that enables users to

request personalized video messages from celebrities and other public figures.  *See Fortune

Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010)

(suggestive marks require a consumer to "use imagination or any type of multistage reasoning to

understand the mark's significance") (citations omitted).  And even if CAMEO® were descriptive

(which it is not), the strength of mark factor would still favor Plaintiff due to the identity of the

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

1    parties' marks and the CAMEO® mark's commercial strength.  *Westside Shepherd Rescue of Los*

2    *Angeles, Inc. v. Pollock*, 2010 WL 11520159, at *1, 7 (C.D. Cal. Sept. 20, 2010) (finding strength

3    factor favored plaintiff with descriptive mark—Westside German Shepherd Rescue of Los

4    Angeles—that "enjoys secondary meaning" where defendant's mark was identical).

5            Finally, despite the strength of the CAMEO® mark, Plaintiff faces a substantial risk that

6    OpenAI's use of the "Cameo" mark will become significantly more commercially dominant,

7    thereby "swamping the reputation" of Plaintiff's mark and adversely impacting its business and

8    reputation.  *Tari Labs,* 2023 WL 2480739, at *4.  As one court noted, OpenAI's products

9    ChatGPT and DALL E 2 "have made it a household name" and its website "is one of the most

10   visited on the planet."  *OpenAI, Inc. v. Open A.I., Inc.*, 719 F. Supp. 3d 1033, 1048 (N.D. Cal.

11   2024), *aff'd*, 2024 WL 4763687 (9th Cir. Nov. 13, 2024).  Given its massive reach and market

12   recognition compared to those of Plaintiff's, there is no legitimate dispute that OpenAI's

13   "Cameo" service has (or eventually will have) the commercial strength to "overtake" Plaintiff and

14   "swamp [its] reputation."  *Ironhawk*, 2 F.4th at 1162-63.  Under this doctrine of reverse

15   confusion—which protects smaller, established marks from being overwhelmed by larger, more

16   dominant newcomers—the strength of the mark factor also supports a finding of infringement.

17   *See Tari Labs,* 2023 WL 2480739, at *4.

18                    **5.      Evidence of Actual Confusion Shows Confusion Is Likely**

19           Evidence of actual confusion "constitutes persuasive proof that future confusion is likely."

20   *Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 902 (9th Cir. 2002) ("If enough people have

21   been *actually* confused, then a *likelihood* that people are confused is established.").  However,

22   given the "difficulty in garnering such evidence," trademark infringement does not require proof

23   of actual confusion, and its absence at this preliminary relief stage is of minimal importance.

24   *Sleekcraft*, 599 F.2d at 353; *Pom Wonderful*, 775 F.3d at 1131 (district court erred in weighing

25   absence of actual confusion evidence against plaintiff seeking preliminary injunction); *see also*

26   *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014), *as*

27   *amended* (Mar. 11, 2014) (actual confusion is "of diminished importance" at the preliminary

28   injunction stage because "a motion for preliminary injunction normally occurs early in litigation,"

MEM. OF P&A ISO PL.'S APP. FOR
                                                      TEMPORARY RESTRAINING ORDER

before the parties "have amassed significant evidence of actual confusion"); *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 846 F. Supp. 2d 1063, 1079 (N.D. Cal. 2012) ("the importance of this factor is diminished at the preliminary injunction stage") (quotations omitted).  Thus, because evidence of actual confusion "is hard to come by at this stage," even when it "is not overwhelming," it "favor[s] finding likely confusion." *Boldface Licensing*, 940 F. Supp. 2d at 1193-94.

Here, in the short amount of time OpenAI's infringing "Cameo" service has been available, consumer confusion has already occurred.  Third-party social media posts show that consumers have mistakenly associated Plaintiff's and Defendant's respective services due to their confusingly similar marks and functionality.  *See* SOF ¶¶ 17, 19.  Cameo also received a misdirected customer service inquiry from a user who was having an issue with Defendant's Sora app and "Cameo" feature, and who had been directed to Cameo based on instructions from OpenAI's own ChatGPT service.  *See* SOF ¶ 18.  While evidence of actual confusion is not necessary, its presence here strongly supports immediate injunctive relief.

### 6.      Degree of Consumer Care Makes Confusion Likely

For the consumer care factor, courts consider whether a typical consumer exercising ordinary care is likely to be confused.  *Fortune Dynamic*, 618 F.3d at 1038.  "Low consumer care … increases the likelihood of confusion." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).

Here, this factor supports a likelihood of confusion because the parties' respective platforms are used and accessed by lay consumers.  *See Brookfield*, 174 F.3d at 1060 (noting that "casual movie watchers" are likely to exercise "very little care").  But even if their consumers were sophisticated, this factor would still favor an injunction because where, as here, the two parties have the same name, "virtually no amount of consumer care can prevent confusion." *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1134 (C.D. Cal. 2001) ("It is irrational to expect that even the most sophisticated consumer will exercise the kind of scrupulous examination that would enable him or her to discern the difference between 'Livewire' and "Live Wire.'"); *see also* McCarthy § 23:103 ("When two companies have almost identical names, even

the most experienced person in that line of business may be likely to be confused.").

Moreover, the free availability of OpenAI's "Cameo" service significantly increases the likelihood of confusion because "[w]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Fortune Dynamic*, 618 F.3d at 1038.

### 7.    The Intent Factor Favors Cameo

Defendant's knowing and intentional infringement of the CAMEO® trademark makes confusion more likely.  This factor favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *JL Beverage*, 828 F.3d at 1111 (internal citation omitted).  For reverse confusion, courts "ask whether there is some evidence that the junior user, when it knew of the senior user, was at fault for not adequately respecting the rights of the senior user." *Ironhawk*, 2 F.4th at 1167-68 (quoting and citing McCarthy § 23:10).  In this context, intent can be shown by evidence that "the junior user deliberately intended to push the senior [user] out of the market by flooding the market," "knew" or "should have known" of the senior mark, "failed to conduct a reasonably adequate trademark search," or "otherwise culpably disregarded the risk of reverse confusion." *Ironhawk*, 2 F.4th at 1167-68 (internal citation omitted).

Given Cameo's longstanding market presence, widespread recognition, and federally registered trademarks, it would strain credulity for Defendant to claim it was unaware of the CAMEO® mark when it selected "Cameo" for its personalized video service.  Indeed, in its response to Plaintiff's letter requesting that Defendant change the name of its service, Defendant did not assert that it had selected "Cameo" without knowledge of Plaintiff's trademark.  Byron Decl. ¶ 5, Ex. 4.  Additionally, even though its "Cameo" service was still in an early rollout phase, Defendant refused to cease its infringement of Plaintiff's CAMEO® trademark.  *Id.* Defendant's "[u]se of [its] infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (internal citation omitted).

Evidence of Defendant's willful intent goes beyond its indisputable awareness of Plaintiff and the CAMEO® mark.  Out of a multitude of potential names, Defendant deliberately chose

Plaintiff's ***exact trademark*** as the name for its highly similar video service targeted at the same

consumer base. Defendant also promoted its "Cameo" as a service that allows users to create

personalized videos featuring celebrities—the very core of Plaintiff's business model. SOF ¶ 11-

14; Byron Decl. ¶¶ 8-13. At the very least, Defendant's actions demonstrate its clear intent "to

push [Plaintiff] out of the market by flooding the market" and that it "culpably disregarded the

risk of reverse confusion." *Ironhawk*, 2 F.4th at 1167-68. Thus, by any measure, the intent factor

unequivocally favors Plaintiff.

### 8.    Likelihood of Expansion Makes Confusion Likely

The expansion of business by either party to compete with the other weighs in favor of

finding trademark infringement. *Sleekcraft*, 599 F.2d at 354. "[A] 'strong possibility' that either

party may expand his business to compete with the other will weigh in favor of finding that the

present use is infringing." *Id*.

Here, such expansion is already occurring. Indeed, just yesterday, OpenAI added

"character cameos" to Sora—the ability to make videos with fictional and animated characters—

thus directly expanding to compete with Plaintiff's established Cameo Kids service. SOF ¶ 8, 23.

Additionally, OpenAI's "Cameo" service has been used to create personalized videos featuring

celebrities and other public figures, the same types of goods for which Plaintiff is known. SOF ¶

11-14; Byron Decl. ¶¶ 8-13. Indeed, OpenAI actively promotes its "Cameo" as a service that

allows users to create personalized videos featuring celebrities, which suggests that it is likely to

continue expanding its offerings in a manner that will create further confusion. *Id*.

### C.    OpenAI's Conduct Will Dilute and Tarnish Cameo's Mark

To establish federal trademark dilution, a plaintiff must prove: (1) its senior mark is

famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's use of

the junior mark began after the senior mark became famous; and (4) a likelihood of dilution.

15 U.S.C. § 1125(c); *adidas*, 890 F.3d at 758. As shown below, Cameo satisfies each element.

The first element—the fame of the CAMEO® trademark—is clearly established, given

Plaintiff's numerous federal trademark registrations, its extensive advertising and promotion, its

enormous social media following, and the significant unsolicited media coverage. SOF ¶¶ 5, 7, 9,

10; 15 U.S.C. § 1125(c)(2)(A).  The second and third elements are also met:  OpenAI used its infringing "Cameo" mark in commerce, including on its Sora app, and began doing so long after the CAMEO® trademark became famous.

As for the final element, likelihood of dilution may be established by blurring or tarnishment.  *See* 15 U.S.C. § 1125(c)(1).  Both are present here.

### 1.     OpenAI Will Blur the Distinctiveness of Plaintiff's CAMEO® Mark

Dilution by blurring is "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."  15 U.S.C. § 1125(c)(2)(B).  Each of its statutory factors weighs in favor of Cameo:

**Similarity.**  As discussed above, the name of OpenAI's "Cameo" service is nearly identical to Plaintiff's trademark.  This factor thus favors Plaintiff.  *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030, at *6 (E.D. Cal. Sept. 18, 2007).

**Distinctiveness.**  As also discussed above, the CAMEO® trademark is inherently distinctive.  *Nike*, 2007 WL 2782030, at *7.  Plaintiff's incontestable registered trademarks are also presumptively distinctive.  *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985).

**Substantially Exclusive Use.**  Plaintiff has had substantially exclusive use of CAMEO® for personalized videos featuring celebrities since at least 2017.  SOF ¶ 10; *Nike,* 2007 WL 2782030, at *7.  Cameo's Google search data shows Cameo.com is usually the first result for Google searches for "cameo" or search queries that include "cameo," and Cameo's high clickthrough rates show that Google users closely associate the word "Cameo" with Cameo and its brand.  *See* O'Connor Decl. ¶¶ 22-24.

**Degree of Recognition.**  The CAMEO® trademark enjoys widespread recognition among actual consumers, who have purchased more than 10 million Cameo moments.  *See* SOF ¶ 6.  Cameo has also garnered significant media attention and has millions of followers for its social media and other online offerings.  *See* SOF ¶¶ 7, 9; *Nike,* 2007 WL 2782030, at *7.

**Intent to Create Association.**  As discussed above, Defendant clearly selected the name of its "Cameo" service to create an association with Plaintiff's trademark.  *See Nike,* 2007 WL

2782030, at *7.

Actual Association.  Consumers have already associated the parties' marks—and continue to do so.  SOF ¶¶ 17-19.

Thus, Plaintiff is likely to succeed on its dilution-by-blurring claim.

## 2. OpenAI Will Tarnish Plaintiff's Hard-Earned Reputation

Dilution by tarnishment is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."  15 U.S.C. § 1125(c)(2)(C).  Plaintiff has a hard-earned reputation with its customers for offering personalized videos featuring celebrities.  Defendant's use of an identical mark to offer highly similar goods and services threatens to harm Plaintiff's carefully cultivated reputation.  If consumers associate Defendant's AI-driven "Cameo" service with "AI slop" and deepfakes—or with OpenAI and its reputation for disregarding the IP rights and interests of others—they are likely to carry that association over to Plaintiff and its CAMEO® trademark and think less of the Cameo brand. O'Connor Decl. ¶¶ 25-28; *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 395 (E.D.N.Y. 2008) (holding that inferior quality of defendants' goods tarnished plaintiff's marks).

## V. CAMEO WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION

Under the Lanham Act, a finding of likelihood of success on a plaintiff's trademark claim at the temporary restraining order or preliminary injunction stage creates a presumption of irreparable injury.  *See* 15 U.S.C. § 1116(a); *Tari Labs*, 2023 WL 2480739, at *11; *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022).

Since Cameo has established likelihood of success on the merits of its trademark claims, irreparable injury may be presumed.  Even without this presumption, however, it is evident Cameo will suffer irreparable harm absent an injunction.  As discussed above, Cameo has made significant investments since 2017 to develop its trademarks and reputation for high-quality, authentic products and services.  SOF ¶ 6-10.  As a result, Cameo has achieved nationwide popularity and substantial consumer goodwill for its offerings.  "The Ninth Circuit has recognized that the potential loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief."  *SunEarth*, 846 F. Supp.

2d at 1083 (internal citation omitted) (granting preliminary injunction enjoining use of infringing mark).  That is precisely the case here—by using an identical mark for a service offering strikingly similar celebrity video products to the same target audience, OpenAI has deprived Cameo of its ability to control the integrity of its brand and reputation.  Indeed, OpenAI is already damaging the association between Plaintiff and its CAMEO mark.  O'Connor Decl. ¶¶ 22-25.

Moreover, as discussed above, consumers have already been confused into mistakenly believing that OpenAI's "Cameo" service is related to or otherwise affiliated with Plaintiff.  And there are likely many other confused consumers who will make the same "misidentification," posing "a serious threat to [Plaintiff's] goodwill and reputation."  *Sun Earth*, 846 F. Supp. 2d at 1083.  Such "loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss."  *Mortg. Elec. Registration Sys., Inc. v. Brosnan*, 2009 WL 3647125, at *8 (N.D. Cal. Sept. 4, 2009).

Plaintiff's loss of reputational control is especially problematic because of OpenAI's "move fast, break stuff" approach to product and community development.  Like other areas of AI videos, Sora will inevitably lead to a torrent of "AI slop" of videos featuring celebrities, with no discernible boundaries, all under a mark identical to Plaintiff's CAMEO® trademark. O'Connor Decl. ¶¶ 25-28; *see Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d 946, 967 (C.D. Cal. 2004) (irreparable harm where defendants' website promotion of products "antithetical to Plaintiff's brand" were "destroying Plaintiff's good will").

Equally damaging is the irreparable harm to Cameo from reverse confusion.  If OpenAI is allowed to proceed with a full-scale launch of its infringing "Cameo" service, backed by its vast marketing power, it will swamp Plaintiff's CAMEO® mark in the marketplace and stifle Plaintiff's ability to develop further goodwill in its mark.  "Reverse confusion can foreclose the senior user from expanding into related fields and could place the senior company's goodwill in the hands of the junior user."  *Ironhawk*, 2 F.4th at 1160.  As a result of such reverse confusion, Cameo would lose "the value of [its] trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets."  *Id*. (internal citation omitted); O'Connor Decl. ¶ 27.  Accordingly, Cameo will suffer irreparable harm absent the

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

1    requested relief.

2    **VI.    THE PUBLIC INTEREST STRONGLY FAVORS AN INJUNCTION**

3            In trademark cases, "the public interest is the right of the public not to be deceived or

4    confused as to the source of the parties' goods." *FAZE Apparel, LLC v. Faze Clan, Inc.*, 2018

5    WL 3830027, at *8 (C.D. Cal. May 22, 2018) (finding the public interest weighed in favor of a

6    preliminary injunction where the defendant's products were likely to cause consumer confusion);

7    *Tari Labs*, 2023 WL 2480739, at *12 (same for TRO).  OpenAI's continued use of its infringing

8    mark will mislead the public into mistakenly believing that its AI video service is related to or

9    associated with Cameo (or vice-versa).  An injunction that prevents such consumer confusion

10   "serves the public interest." *Am. Rena Int'l Corp. v. SisJoyce Int'l Co.*, 534 F. App'x 633, 636

11   (9th Cir. 2013) (affirming preliminary injunction).  Trademark law exists to protect the substantial

12   rights and goodwill that Cameo has built through years of use in commerce, trademark

13   registrations, and significant brand investment in the CAMEO® mark.  Allowing OpenAI to flout

14   these rights with impunity would not serve the public interest.

15   **VII.    THE BALANCE OF EQUITIES STRONGLY FAVORS AN INJUNCTION**

16           The balance of hardships also tips overwhelmingly in Cameo's favor.  As discussed

17   above, Cameo faces irreparable harm—including loss of goodwill and control over its

18   reputation—without injunctive relief.  In contrast, the only conceivable harm to OpenAI is the

19   modest cost associated with removing the infringing "Cameo" name from its Sora app and related

20   materials, and replacing it with a different, non-infringing name.  Notably, access to OpenAI's

21   Sora app was limited to invitation only until yesterday, and it has not yet launched at scale.

22   SOF ¶ 23.  OpenAI has also demonstrated that it can swiftly modify its Sora app in response to

23   intellectual property complaints and other user issues, undercutting any claim that injunctive

24   relief would impose undue hardship or be technically unfeasible.  *See* SOF ¶ 21.

25           Moreover, any such harm is entirely attributable to OpenAI's deliberate decision to

26   infringe Plaintiff's CAMEO® trademark—and OpenAI has "no equitable interest in continuing

27   an infringing activity." *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F.

28   Supp. 2d 1138, 1147 (C.D. Cal. 2012); *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th

Cir. 1995), *superseded by statute on other grounds* ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration [on an appeal from a preliminary injunction]") (internal quotation marks and citation omitted).  Rather, since OpenAI's "purported harms stem solely from its allegedly infringing use of" Cameo's mark, and it can "continue all activities and communications if it changed the name" of its service, the equities favor Cameo. *Tari Labs*, 2023 WL 2480739, at *12.[1]

In sum, an injunction would prevent immediate irreparable harm to Cameo and pose little, if any, imposition on OpenAI.

**VIII.    THE COURT SHOULD WAIVE ANY BOND REQUIREMENT UNDER RULE 65**

Cameo should not be required to post security under Fed. R. Civ. P. 65(c) in light of OpenAI's knowing and intentional infringement, its opportunities to cease its infringing activities, and because its "Cameo" service is still in an early rollout stage.  *Tari Labs*, 2023 WL 2480739, at *12 (granting TRO and waiving a bond requirement where plaintiff established likelihood of success on the merits); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985), *amended*, 775 F.2d 998 (9th Cir. 1985) ("[T]he likelihood of success on the merits ... tips in favor of a minimal bond or no bond at all.") (citation omitted).

**IX.    CONCLUSION**

For all of the foregoing reasons, Cameo respectfully requests that the Court grant its application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue.

---

[1] This is also not a situation where identifying an alternative name for OpenAI's "Cameo" service places any sort of burden on OpenAI.  In its response to Cameo's demand letter, OpenAI claimed it was using "cameo" "in its ordinary, descriptive sense."  Byron Decl. ¶ 5 Ex. 4.  This is false; the word "cameo" means "a small but noticeable part in a movie, TV show, or play, performed by a famous actor."  *See* https://dictionary.cambridge.org/us/dictionary/english/cameo.  In no sense does "cameo" **describe** OpenAI's service, which allows users to create a virtual likeness of themselves for use in AI-generated videos.  There are many other terms available to OpenAI that actually describe this feature, like "likeness," "avatar," and "clone."  OpenAI has no need to use "Cameo"—Plaintiff's incontestable trademark—as the name of this service.

MEM. OF P&A ISO PL.'S APP. FOR
TEMPORARY RESTRAINING ORDER

1

2    Dated: October 30, 2025                    BYRON RAPHAEL LLP

3                                               By:    /s/ Tim Byron
4                                                      TIM BYRON

5                                               TIM BYRON (SBN 277569)
                                                tbyron@byronraphael.com
6                                               BYRON RAPHAEL LLP
                                                100 Pine Street, Suite 1250
7                                               San Francisco, CA 94111
                                                Telephone: (415) 839-8500
8                                               Facsimile:   (213) 377-5771

9                                               JORDAN RAPHAEL (SBN 252344)
                                                jraphael@byronraphael.com
10                                              BYRON RAPHAEL LLP
                                                811 Wilshire Blvd., 17th Floor
11                                              Los Angeles, CA  90017
                                                Telephone: (213) 291-9800
12                                              Facsimile:   (213) 377-5771

13                                              *Attorneys for Plaintiff*
                                                BARON APP, INC. d/b/a CAMEO
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. OF P&A ISO PL.'S APP. FOR
                                               TEMPORARY RESTRAINING ORDER