UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON APP, INC. D/B/A/ CAMEO, | Case No. 25-cv-09268-EKL |
| Plaintiff, | |
| v. | **ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| OPENAI, INC., et al., | |
| Defendants. | Re: Dkt. No. 16 |

This trademark infringement and dilution action arises out of OpenAI's allegedly infringing use of Plaintiff's federally registered CAMEO® mark in connection with OpenAI's Sora application.[1]  Now before the Court is Plaintiff's application for a temporary restraining order ("TRO").  ECF No. 16 ("TRO App.").  The Court reviewed the parties' briefs and heard argument on November 18, 2025.  Based on the current record, the Court finds that Plaintiff has demonstrated a likelihood of success on its trademark infringement claim, that it is likely to suffer irreparable harm absent temporary relief, and that the balance of the hardships and the public interest favor a restraining order at this time.  Accordingly, the Court GRANTS Plaintiff's request for a TRO.

## I.     BACKGROUND[2]

Plaintiff Baron App, Inc. d/b/a Cameo offers a "digital marketplace that connects fans with

---

[1] Defendants in this action are OpenAI, Inc.; OpenAI Global, LLC; OPENAI, L.L.C.; OpenAI OpCo, LLC; and OpenAI GP, L.L.C. (collectively, "Defendants" or "OpenAI").

[2] The facts are taken from the complaint and declarations filed in support of Plaintiff's application for a TRO.  At the TRO hearing, the Court sustained Defendants' objection, ECF No. 35, to new evidence submitted by Plaintiff in its reply brief.  Therefore, for purposes of this Order, the Court does not consider any *new* evidence submitted in Plaintiff's reply brief.

United States District Court
Northern District of California

United States District Court
Northern District of California

celebrities through personalized videos." Compl. ¶ 1, ECF No. 1. Plaintiff has offered this service since 2017, with a mission to "create the most personalized and authentic experiences on Earth." *Id.* ¶¶ 1 (cleaned up), 28. To utilize Plaintiff's service, consumers access the Cameo marketplace and request a personalized video from Cameo's "extensive catalog of talent, which includes thousands of well-known personalities from film, television, music, sports, and social media." *Id.* ¶ 27. Users then provide specific instructions or details to be included in the recorded video. *Id.* For example, "a user can request that the celebrity wish a friend a happy birthday, deliver a marriage proposal, apologize on their behalf, answer a question, conduct a tarot reading, roast a loved one, or read from a prepared script." *Id.* Once the request is submitted, the celebrity records the personalized video and the user receives a notification that the video is available. *Id.* ¶ 28. The resulting videos are commonly referred to as "Cameos" or "Cameo Videos" and are "usually vertically formatted for seamless viewing on mobile devices and sharing on social media." *Id.* "To protect its valuable rights in its CAMEO® trademark," Cameo has secured several U.S. Trademark Registrations, including U.S. Trademark Reg. Nos. 6,113,018; 6,369,961; 6,026,358; and 6,026,359. *Id.* ¶ 34-35.

Plaintiff alleges that "Cameo and its registered trademark CAMEO® have become a beloved and widely recognized brand." *Id.* ¶ 2. Indeed, "Cameo's social media accounts have millions of followers," its video service has been featured in "thousands of media articles and reports," and "Cameo is frequently mentioned on TV shows like Saturday Night Live, The Tonight Show, and The Daily Show." *Id.* In 2019, Plaintiff launched "Cameo for Business," which allowed companies to create custom ads featuring celebrities on Cameo. *Id.* ¶ 4. In 2022, Plaintiff launched "Cameo Kids," which allows customers to gift personalized, artificial intelligence ("AI") generated videos from "beloved animated children's characters." *Id.* ¶ 5.

On September 30, 2025, OpenAI announced "an updated and invite-only" version of its Sora application, which allows users to create AI-generated videos from a prompt.[3] *Id.* ¶ 7. "Unlike past versions, this version of Sora includes a new service that allows users to create a

---

[3] The "invite only" user limitation was removed from Sora on October 29, 2025. *Id.* ¶ 23.

1  virtual likeness of themselves and 'open' their likenesses to other users on the platform, enabling

2  Sora's growing user base to use them in realistic, personalized AI-generated videos." *Id.* Plaintiff

3  alleges that "OpenAI tapped several high-profile celebrities" to promote its new service. *Id.*

4  Celebrities that join Sora are able to "create their virtual likenesses and 'open' them to Sora's

5  users, allowing those users to create personalized videos featuring celebrities." *Id.* OpenAI

6  selected the name "Cameo" for this new feature that can create "fake yet highly realistic videos

7  featuring celebrity likenesses." *Id.* ¶¶ 8, 50.

  

20  *Id.* ¶ 9 (red outlines added for emphasis).

21      On October 10, 2025, Plaintiff sent a cease-and-desist letter to OpenAI requesting OpenAI

22  rename its new feature. Byron Decl., Ex. 3, ECF No. 18. On October 22, 2025, OpenAI informed

23  Plaintiff it would not rename its new Sora feature. Byron Decl., Ex. 4. On October 28, Plaintiff

24  filed this action against Defendants. Compl. ¶¶ 16-21. On October 30, 2025, Plaintiff filed an

25  application for a TRO. ECF No. 16. The case was assigned to this Court on October 31, 2025.

26  Pursuant to the parties' stipulation, briefing on the TRO closed on November 10, 2025.

27  **II.    LEGAL STANDARD**

28      "[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially

3

1    identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (quoting *Stuhlbarg*

2    *Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  "A preliminary

3    injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def.*

4    *Council, Inc.,* 555 U.S. 7, 24 (2008).  "In each case, courts 'must balance the competing claims of

5    injury and must consider the effect on each party of the granting or withholding of the requested

6    relief.'"  *Id.* (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  "A plaintiff

7    seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is

8    likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

9    tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.

10        Under the Ninth Circuit's "sliding scale approach," a preliminary injunction may issue

11   where "serious questions going to the merits were raised and the balance of hardships tips sharply

12   in [the movant's] favor."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

13   2011).  To raise serious questions, the movant's claim must be more than just "plausible."  *Where*

14   *Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022).  Rather, the

15   movant must show that it has a "fair chance of success on the merits."  *Flathead-Lolo-Bitterroot*

16   *Citizen Task Force v. Montana*, 98 F.4th 1180, 1192-93 (9th Cir. 2024) (quoting *Republic of the*

17   *Philippines v. Marcos*, 862 F.3d 1355, 1362 (9th Cir. 1988) (en banc)).  Under the sliding scale

18   approach, the movant still must show "a likelihood of irreparable injury and that the injunction is

19   in the public interest."  *Cottrell*, 632 F.3d at 1135.

**III.    DISCUSSION**

21        Plaintiff seeks to enjoin Defendants from using the term "cameo" in connection with a

22   feature on its newly revamped Sora application.  TRO App. at 1.  For the reasons discussed below,

23   the Court finds that Plaintiff has satisfied the *Winter* elements, and that it is entitled to a temporary

24   injunction pending further briefing and a hearing on whether a preliminary injunction should

25   issue.

26        **A.    Likelihood of Success on the Merits**

27   The Court finds that Plaintiff is likely to succeed on the merits of its trademark

infringement claim.[4]  To prevail on a claim for trademark infringement under the Lanham Act, Plaintiff must establish three elements:  (1) Plaintiff has a protectible ownership interest in the mark; (2) Defendants used the mark in connection with goods or services; and (3) Defendants' use is likely to cause confusion.  *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024) (citing 15 U.S.C. §§ 1114(1)(a), 1125(a)).

### 1.    Plaintiff has a protectable interest in the "Cameo" mark

Plaintiff has a protectable interest in its federally registered CAMEO® trademarks (Reg. Nos. 6,113,018; 6,369,961; 6,026,358; 6,026,359).  *See* ECF No. 18-1.  These registrations are "prima facie evidence of the validity of the mark[s], the registrant's ownership of the mark[s], and the registrant's exclusive right to use the mark[s] in connection with the goods specified in the registration."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).  Plaintiff's exclusive right to use the CAMEO® marks includes "all variations of the word" because it was registered as a standard character mark.  *Id.* at 1125 ("Standard character registrations 'are federal mark registrations that make no claim to any particular font style, color, or size of display.' . . . Therefore, [the plaintiff's] exclusive right to use its . . . standard character mark is extremely broad, covering the word in all types of depictions." (citations omitted)); *see also* ECF No. 18-1 at 2-4 (stating Registration Nos. 6,113,018 and 6,369,961 are standard character marks).

### 2.    Defendants are using the mark in connection with goods and services

Defendants do not dispute that they are using an identical, non-stylized version of the CAMEO® mark on and in connection with their Sora application.  *See* Defs.' Opp'n to Ex Parte Appl. for TRO at 13, ECF No. 30 ("Opp.") (acknowledging "OpenAI's use of the term 'cameo'").  Thus, Defendants are using the mark in connection with goods and services.

### 3.    Defendants' use is likely to cause confusion

To determine whether a defendant's use of a mark is likely to cause consumer confusion,

---

[4] Because the Court finds that a TRO is warranted based on irreparable harm resulting from Defendants' likely trademark infringement, the Court does not address the likelihood of success of Plaintiff's additional causes of action in this Order.

United States District Court
Northern District of California

1   courts in the Ninth Circuit consider the eight *Sleekcraft* factors:  "(1) the strength of the mark;

2   (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual

3   confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be

4   exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood

5   of expansion of the product lines."  *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th

6   1101, 1110 (9th Cir. 2025) (quoting *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d

7   1098, 1106 (9th Cir. 2016)).  "The *Sleekcraft* factors are intended as an adaptable proxy for

8   consumer confusion, not a rote checklist."  *Network Automation, Inc. v. Advanced Sys. Concepts,*

9   *Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).  Thus, plaintiffs "need not satisfy every factor, provided

10  that strong showings are made with respect to some of them."  *Pom Wonderful*, 775 F.3d at 1125

11  (citation omitted).

12          To situate the Court's analysis of the *Sleekcraft* factors, it is important to understand

13  Plaintiff's theories of confusion.  Plaintiff alleges that both forward and reverse confusion are

14  likely based on Defendants' use of Plaintiff's mark.  The Court focuses on Plaintiff's "forward"

15  confusion theory in this Order.  In the trademark context, "[f]orward confusion occurs when

16  consumers believe that goods bearing the [allegedly infringing mark] came from, or were

17  sponsored by, the [original] mark holder."  *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1162 (9th

18  Cir. 2025) (citation omitted).  Here, Plaintiff is concerned that consumers will "mistakenly believe

19  that OpenAI's 'Cameo' service is sponsored by, endorsed by, or otherwise affiliated with Plaintiff

20  and its CAMEO® trademark and brand."  Compl. ¶ 56.  Plaintiff is particularly concerned about

21  this mistaken association because "OpenAI has entered into numerous high-profile partnerships

22  and licensing deals with a wide array of companies, including The Washington Post, Walmart,

23  AMD, Vox Media, and Reddit."  *Id.*  "This highly visible pattern of third-party brand affiliations

24  significantly heightens the likelihood" of consumers mistakenly believing that Plaintiff has

25  partnered with OpenAI on its new "cameo" feature.  *Id.*  From Plaintiff's perspective, its

26  "CAMEO® brand is closely connected in the consumer's mind with ***authentic*** celebrity-fan

27  interactions," and Defendants' use of its CAMEO® mark threatens Plaintiff's reputation by

28

6

United States District Court
Northern District of California

associating Plaintiff's brand and mark with "AI slop and deepfakes featuring celebrities."[5]  *Id.*

¶ 53.  With this framing in mind, the Court turns to the *Sleekcraft* factors – four of which are of

particular importance.

**a.    Strength of Plaintiff's mark**

"The strength of a mark determines the level of protection the Lanham Act affords."  *Yuga*,

144 F.4th at 1168.  "As the uniqueness of the mark increases, so too does the degree of

protection."  *JL Beverage Co.*, 828 F.3d at 1106 (citation omitted).  "A mark's strength

encompasses both conceptual and commercial strength."  *Yuga*, 144 F.4th at 1168.  "Conceptual

strength depends largely on the obviousness of its connection to the good or service to which it

refers, and it is classified along an imperfect spectrum of distinctiveness [from weakest to

strongest]:  generic, descriptive, suggestive, arbitrary, and fanciful."[6]  *Id.* (cleaned up) (citation

omitted).  "Commercial strength considers actual marketplace recognition."  *Id.* (cleaned up).

Plaintiff has made a prima facie showing that its standard character CAMEO® mark,

Registration No. 6,369,961, is at least conceptually "suggestive," meaning that it is "inherently

distinctive."  *Ironhawk*, 2 F.4th at 1162.  Where "the Patent and Trademark Office issued a

registration without requiring proof of secondary meaning, the federal registration provides *prima*

---

[5] Plaintiff is separately concerned about reverse confusion, which can occur when "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user."  *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021); *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 445 (3d Cir. 2000) ("[T]he doctrine of reverse confusion is designed to prevent the calamitous situation [where] a larger, more powerful company usurp[s] the business identity of a smaller senior user.").  Given OpenAI's "massive reach and market recognition," Plaintiff is concerned that "OpenAI's 'Cameo' service has (or eventually will have) the commercial strength to 'overtake' Plaintiff and 'swamp [its] reputation.'"  TRO App. at 17.

[6] "Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and trigger the highest degree of trademark protection.  In the middle of the spectrum are suggestive marks, which suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product.  Descriptive and generic marks, at the other end of the spectrum, are the two weakest categories.  Descriptive marks define a particular characteristic of the product in a way that does not require any imagination, while generic marks describe the product in its entirety and are not entitled to trademark protection."  *JL Beverage Co.*, 828 F.3d at 1107 (cleaned up) (citations omitted).

7

*facie* evidence that the . . . mark is inherently distinctive (*i.e.*, at least suggestive)." *Id.* (citation omitted).  Here, "the USPTO did not require evidence of acquired distinctiveness" (*i.e.*, secondary meaning) for Registration No. 6,369,961, *see* Opp. at 16 n.1, thus the registration itself is evidence of the mark's distinctiveness.  The Court finds that Defendants have not rebutted this evidence at this stage.

Although not required at the TRO stage, Plaintiff has also made a prima facie showing that its mark is commercially strong.  *See Network Automation*, 638 F.3d at 1150 (explaining that evidence of "commercial strength . . . as an evidence-intensive inquiry, is unnecessary at the preliminary injunction stage").  Here, Plaintiff alleges that "Cameo and its video service have been featured in thousands of media articles and reports," including being named as one of the "50 Most Genius Companies" by Time magazine in 2018.  Compl. ¶¶ 2, 32.  In addition, Cameo's social media accounts have "millions of followers and its posts have generated more than 100 million views in the past year alone."  *Id.* ¶ 2.  Finally, Plaintiff alleges that Cameo "is frequently mentioned on TV shows like Saturday Night Live, The Tonight Show, and The Daily Show."  *Id.*  Thus, Plaintiff has made a prima facie showing that its CAMEO® mark is commercially strong.  This *Sleekcraft* factor favors Plaintiff.

### b.    Relatedness of the goods

Defendants are using the allegedly infringing mark in connection with related goods and services.  For purposes of the *Sleekcraft* relatedness factor, "[g]oods and services are related when they are complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk*, 2 F.4th at 1163 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979)).  Plaintiff "need not establish that the parties are direct competitors."  *Id.* (citation omitted).

The Court finds that Plaintiff is likely to succeed in establishing that Defendants' "cameo" feature on the Sora app is "similar in use and function," at least in part, to Plaintiff's Cameo service.  Although Defendants' Sora application may be used to generate a wider variety of "cameo" videos, such as unrealistic videos of a person "flying on a dragon" or a pet on the moon, a portion of Defendants' "cameo" videos are virtually indistinguishable from Plaintiff's Cameo

1   Videos.[7]  On either platform, consumers are able to obtain personalized celebrity videos, such as a

2   "happy birthday" message from Jake Paul or Mark Cuban.  *See* Compl. ¶¶ 1, 9, 27 (explaining that

3   both celebrities have offered Cameos through Plaintiff's platform and have both likewise

4   "opened" their "cameos" on Sora).  Because Defendants' "cameo" feature creates "hyperreal

5   videos," Opp. at 10, a celebrity "happy birthday" video from Defendants' Sora application may be

6   indistinguishable from an authentic celebrity video from Plaintiff's Cameo marketplace.

7          The fact that videos of "actual humans" created using Defendants' feature are

8   "watermarked with the 'Sora' name and logo" does not necessarily distinguish the relatedness of

9   the parties' respective "cameo" videos.  Opp. at 10.  This is particularly true here given Plaintiff's

10  concern that others may mistakenly assume that Plaintiff has entered into a partnership or

11  licensing agreement with Defendants as to the use of its CAMEO® mark.  Moreover, although the

12  Sora-generated videos are not watermarked as "cameo" videos, Sora's video-generation feature

13  and the videos themselves are referred to as "Cameos" – both in the Sora application and on social

14  media.  *See* Compl. ¶¶ 8, 42-43, 45, 54-55.  Thus, Defendants' celebrity "cameo" videos are

15  related to Plaintiff's Cameo Videos and in fact may be indistinguishable amongst consumers.

16  Under these circumstances, the Court finds that this factor weighs heavily in favor of finding a

17  likelihood of confusion.

18                          c.      **Similarity of the marks**

19         Defendants do not dispute that the mark used in connection with its Sora "cameo" feature

20  is visually and phonetically identical to Plaintiff's standard character CAMEO® mark.  Even still,

21  similarity of marks "must be considered in their entirety and as they appear in the marketplace."

22  *Ironhawk*, 2 F.4th at 1164 (citation omitted).  Here, as discussed, Defendants are using the

23  identical mark in connection with related goods or services and the mark is being used both in-app

24  and on social media platforms.  *See* Compl. ¶ 8; Bryon Decl. ¶¶ 8-10.  Thus, the Court finds that

25  the marks are highly similar and that this factor weighs in Plaintiff's favor.  *See Ironhawk*, 2 F.4th

26

27  _____

28  [7] In addition, Plaintiff further alleges that Defendants' "cameo" feature also allows users to create
    "AI-generated videos featuring fictional characters," which is "a service Cameo has offered since
    2022 via Cameo Kids."  TRO App. at 2.

United States District Court
Northern District of California

1    at 1164 ("Obviously, the greater the similarity between the two marks at issue, the greater the

2    likelihood of confusion." (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th

3    Cir. 2000))).

### d.    Degree of consumer care

5        The Court finds that Plaintiff is likely to demonstrate that a "reasonably prudent consumer"

6    is likely to be misled.  *Id.* at 1167 (citation omitted) (explaining that the relevant inquiry is

7    "whether a 'reasonably prudent consumer' would take the time to distinguish between the two

8    product lines").  First, both parties offer short videos for entertainment and sharing.  Compl. ¶¶ 1,

9    9, 33 ("[Plaintiff's Cameo has a] reputation as a leader in personalized entertainment."), 37, 40

10   ("Like Plaintiff's 'Cameo' videos, [Sora's 'cameo'] videos are short and vertically formatted for

11   easy viewing on mobile devices and sharing on social media."), 46; *see also* Opp. at 8 (explaining

12   that the Sora app is "an innovative social media platform" that allows users to generate and share

13   videos); 10 ("[Sora] also allows users to upload their pets or original cartoon characters and cast

14   their cameo appearances in short AI videos.").  Relevant consumers are therefore members of the

15   general public without any particular sophistication.  In addition, because Defendants are using an

16   identical mark to generate and refer to related, and at times virtually indistinguishable videos, the

17   general public has no meaningful way of distinguishing between the two product lines or

18   confirming whether Defendants' "cameo" feature is in fact in partnership with the original Cameo.

19   Thus, the Court finds that a reasonably prudent consumer is likely to be misled under these

20   circumstances.

### e.    Evidence of actual confusion

22       Although not required to establish a likelihood of confusion, Plaintiff has provided some

23   evidence of actual confusion.  *Yuga*, 144 F.4th at 1170-71 (citation omitted) ("[A]ctual confusion

24   is not necessary to a finding of likelihood of confusion under the Lanham Act.").  For example,

25   Plaintiff alleges that its social media accounts have been mistakenly tagged in relation to Sora's

26   "cameo" videos and that it has received at least one misdirected customer service inquiry about

27   Sora's "cameo" feature.  Compl. ¶¶ 47-49.  Because of the limited scope of this evidence, the

28   Court does not weigh it heavily in Plaintiff's favor.  Nevertheless, it is some indication of actual

United States District Court
Northern District of California

confusion at this early stage in the litigation. *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072-73 (9th Cir. 2014) (explaining that actual confusion is "of diminished importance" at the preliminary injunction stage because "a motion for preliminary injunction normally occurs early in litigation," before the parties "have amassed significant evidence of actual confusion"). This factor marginally weighs in Plaintiff's favor.

### f.    The remaining *Sleekcraft* factors

The Court finds the remaining *Sleekcraft* factors – marketing channel convergence, Defendants' intent, and product-line expansion – are neutral.

*Marketing channel convergence*: The Court finds that the marketing channel convergence factor is neutral based on the record at this stage of the litigation. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130 (citation omitted). At present, there is no evidence in the record as to whether the customer base for a genuine celebrity recorded video overlaps with the customer base for a visually identical, AI-generated video. In addition, there is insufficient evidence before the Court regarding Plaintiff's marketing strategy to make a determination as to this factor.[8] Thus, the Court finds that this factor favors neither party.

*Defendants' intent*: The Court affords no weight to Defendants' intent in selecting the mark because Defendants' intent is ultimately a fact-intensive inquiry, and because evidence of intent to confuse customers "is not required for a finding of likelihood of confusion." *Id.* at 1131.

*Product-line expansion*: "In the context of non-competing goods, 'a strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Ironhawk*, 2 F.4th at 1168 (cleaned up). The Court finds this factor neutral because this case already arguably involves competing goods and there is no evidence before the Court of a likelihood of further expansion. *See Pom Wonderful*, 775 F.3d at 1131 ("[E]vidence of . . . product expansion is not required for a finding of likelihood of confusion.");

---

[8] The Court does not consider evidence Plaintiff presented for the first time in its reply brief regarding marketing channels, but will consider such evidence in connection with Plaintiff's request for a preliminary injunction.

United States District Court
Northern District of California

1    *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (finding the product expansion factor

2    to be "neutral" because neither party presented evidence regarding the likelihood of expansion).

3                        **4.    Fair Use Defense**

4              Because Plaintiff has established a likelihood of success on the merits of its trademark

5    infringement claim, the burden shifts to Defendants to "show a likelihood that [their] affirmative

6    defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007);

7    *see also 2Die4Kourt v. Hillair Cap. Mgmt., LLC*, 692 F. App'x 366, 368 (9th Cir. 2017).  OpenAI

8    argues that its use of the term "cameo" in relation to its Sora feature is "classic fair use that does

9    not constitute trademark infringement or dilution."  Opp. at 13.  To prevail on a classic fair use

10   defense, Defendants use of "cameo" must be "otherwise than as a mark," "only to describe [its]

11   goods or services," and "in good faith." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

12   *Mgmt., Inc.*, 618 F.3d 1025, 1039-40 (9th Cir. 2010) (quoting 15 U.S.C. § 1115(b)(4)).

13   Defendants must satisfy all three elements for this defense.

14             OpenAI has not demonstrated a likelihood of proving the second fair use element – that it

15   is using "cameo" only to describe its goods or services, otherwise known as "descriptive use."[9]  *Id.*

16   at 1041 (explaining that a defendant "must establish that it used the word in [its] primary,

17   descriptive sense or primary descriptive meaning" (cleaned up) (citations omitted)).  A merely

18   descriptive use "describes the qualities or characteristics of a good or service" and "requires no

19   exercise of the imagination to be understood." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602

20   F.3d 1108, 1114 (9th Cir. 2010) (citations omitted) (distinguishing between merely descriptive and

21   suggestive marks).  The scope of the fair use defense varies based on the "descriptive purity of the

22   defendant's use and whether there are other words available" to describe the defendant's goods or

23   services. *Id.* at 1041.  "Thus, as a defendant's use of a term becomes less and less purely

24   descriptive, its chances of prevailing on the fair use defense become less and less likely." *Id.* at

25

26   _____

27   [9] Because this determination is dispositive, the Court does not address the other two fair use
     elements. *See Fortune* Dynamic, F.3d 1025, 1042 (9th Cir. 2010) (explaining that to qualify for
     the fair use defense, the defendant "must be using the challenged designation in a descriptive, not
28   merely suggestive, sense").

United States District Court
Northern District of California

1042.

OpenAI argues that it uses the word "cameo" to describe its feature that enables users to create "short video appearances of people" and asserts that this is the "dictionary meaning" of cameo.  *See* Opp. at 13.  OpenAI contends that its proffered definition is consistent with two dictionary definitions quoted in U.S. Patent and Trademark Office (USPTO) denial letters from 2017 and 2018.  *See* Caruso Decl. ¶¶ 4-5, Exs. A-D, ECF No. 30-1.  As explained below, OpenAI's overly broad definition of cameo is not reflected in the definitions relied on by the USPTO, and these definitions cannot be said to "merely" or "purely" describe Sora's feature or the resulting videos.

The first definition of cameo – "a brief appearance of a prominent actor or celebrity, as in a single scene of a motion picture"[10] – does not describe Defendants' "cameo" feature because this feature generates a variety of short videos, including those that do not feature "a prominent actor or celebrity."  *See* Opp. at 8 (explaining that Sora's "cameo" feature "allows users to add themselves and their friends (or pets) into any Sora scene if they upload a short one-time video-and-audio recording in the app to verify identity and capture the user's likeness").  As to the second definition of cameo – "a usually brief literary or filmic piece that brings into delicate or sharp relief the character of a person, place, or event"[11] – Defendants offer no explanation as to how their "cameo" feature fits this definition or how it "brings into delicate or sharp relief the character of a person, place, or event."  Contrary to OpenAI's argument, these definitions indicate that "cameo" means something more than just a "short video appearance of a person."[12] Moreover, to the extent that "cameo" is associated more broadly with the ability to "create short video appearances of people," particularly in the online context as opposed to in film or television,

---

[10] Caruso Decl. ¶ 4 (citing Exs. A, B).

[11] Caruso Decl. ¶ 5 (citing Exs. C, D).

[12] OpenAI also cites a third definition of cameo – to "make a brief appearance, as in a film," – and asserts that the "USPTO relied on this exact definition of 'cameo'" in its prior denial letters.  Opp. at 15.  This argument is not persuasive.  OpenAI does not provide a citation in the record for this definition, but even if it did, it appears that this definition would not render Defendants' use of the mark descriptive.  Defendants' video feature is not limited to celebrities or characters who are making a brief appearance in a film.

this association may have derived from Plaintiff's own CAMEO® mark, given the lack of a dictionary definition that reflects this particular meaning. Based on this record, the Court finds that Defendants have not carried their burden of establishing a likelihood of success as to an affirmative fair use defense.

### B.    Irreparable Harm

Because Plaintiff has shown a likelihood of success on the merits of its trademark infringement claim, it is "entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a); *see also AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (same). Even without this presumption, Plaintiff has established a likelihood of irreparable harm absent a temporary injunction because Defendants' continued use of the mark threatens Plaintiff's "control over [its] business reputation and damage to goodwill[.]" *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Specifically, Plaintiff alleges that it has "dedicated nearly a decade to ensuring its CAMEO® brand is closely connected in the consumer's mind with ***authentic*** celebrity-fan interactions." Compl. ¶ 53. Defendants' continued use of the mark for AI-generated videos will irreparably shift consumer associations of CAMEO® from authentic celebrity videos to mass-produced AI-generated content. This type of reputational harm is irreparable.

Defendants make two arguments against a finding of a likelihood of irreparable harm. Neither is persuasive. First, Defendants argue that Plaintiff cannot demonstrate "an emergency exists here" because "it waited 'a full month' after OpenAI's debut of the Sora App before filing its motion." Opp. at 29. The Court does not find unnecessary delay on Plaintiff's part. On October 28, 2025, just six days after OpenAI informed Plaintiff that it would not rename its "cameo" feature, Plaintiff initiated this action. ECF No. 1. Two days later, on October 30, 2025, Plaintiff filed its emergency TRO application. ECF No. 16. The Court does not find that this constitutes unnecessary delay counseling against the issuance of a TRO. Defendants' second argument – that Plaintiff faces only "economic harm" – is likewise unpersuasive because, as discussed, harm to reputation and goodwill can constitute irreparable harm. Therefore, the Court finds that this *Winter* factor weighs in Plaintiff's favor.

United States District Court
Northern District of California

### C.    Balance of Equities

The Court finds that the balance of equities tips in Plaintiff's favor.  Defendants' only argument to the contrary is that the requested injunction would "harm OpenAI's ability to successfully launch its Sora app and other Sora 2 functionality."  Opp. at 32.  However, Defendants' harm arises from its own likely infringing use of a federally registered mark.  *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration [on an appeal from a preliminary injunction]." (cleaned up)) *superseded by statute on other grounds*; *see also 2Die4Kourt*, 692 F. App'x at 369 ("[W]hen the harm complained of results from a defendant's allegedly infringing conduct, we have nonetheless approved the entry of a preliminary injunction."); *Tari Labs, LLC v. Lightning Labs, Inc.*, No. 3:22-CV-07789-WHO, 2023 WL 2480739, at *12 (N.D. Cal. Mar. 13, 2023) (same).  Under these circumstances, the Court finds that this *Winter* factor weighs in favor of Plaintiff.

### D.    Public Interest

"An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."  *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013) (citing *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)).  Defendants' competing public interest of "not eliminating dictionary meanings" relies on Defendants' position that "cameo" is a merely descriptive mark, Opp. at 31, which the Court has rejected for purposes of the TRO application.  Thus, the public interest also weighs in favor of a TRO.

### E.    Rule 65(c) Bond

The Court will not order Plaintiff to provide a bond or security pursuant to Federal Rule of Civil Procedure 65(c) for purposes of the TRO.  "[T]he party affected by the injunction [bears the] obligation of presenting evidence that a bond is needed[.]"  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).  "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no

evidence the party [affected by the injunction] will suffer damages from the injunction." *Id.* at 882 (first citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999); and then citing *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000)). Here, Defendants argue that "a significant bond should be required given the harm and cost that will result." Opp. at 32. However, Defendants did not provide a proposed bond range or any evidence supporting a particular amount of bond. Instead, Defendants requested leave to submit briefing on the proper amount of bond, which the Court denied at the hearing based on the emergency nature of the TRO application. Based on the record currently before the Court, the Court exercises its discretion and does not set a bond at this time. As noted at the hearing, this is done without prejudice, and the Court will revisit the bond issue as it relates to the issuance of a preliminary injunction, if any.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's application for a TRO is GRANTED.

**IT IS SO ORDERED.**

Dated: November 21, 2025

_____
Eumi K. Lee
United States District Judge