QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI, LLC, OpenAI OpCo. LLC, and OpenAI GP, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BARON APP, INC. d/b/a CAMEO, | Case No. 5:25-cv-09268- EKL |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** |
| vs. | |
| OPENAI, INC., OPENAI GLOBAL, LLC, OPENAI, LLC, OPENAI OPCO, LLC, and OPENAI GP, LLC, | Judge:    Hon. Eumi K. Lee<br>Hearing:    April 29, 2026 at 10:00 AM<br>Location:    Courtroom 7, 4th Floor |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

STATEMENT OF RELIEF SOUGHT .......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................2

LEGAL STANDARD ...............................................................................................................4

ARGUMENT .............................................................................................................................4

I.      BARON'S DILUTION CLAIMS SHOULD BE DISMISSED...........................................4

     A.     Marks Far More Prominent Than CAMEO Have Been Found Not Famous.............5

     B.     Baron's Complaint Fails the Four-Factor Test for Fame ...........................................7

          1.     Allegations Relating To The Duration, Extent, and Geographic Reach of Advertising and Publicity Do Not Support Fame. .........................8

          2.     No Allegations Relate To The Amount, Volume, and Geographic Extent of Sales of Goods or Services In The U.S. ......................................10

          3.     No Allegations Show The Extent of Actual Recognition Of The Mark. ...............................................................................................................11

II.     BARON LACKS STANDING TO BRING A SECTION 17200 CLAIM .........................12

CONCLUSION ........................................................................................................................13

DEFENDANT OPENAI'S MOTION TO DISMISS

## **TABLE OF AUTHORITIES**

**Page**

### <u>Cases</u>

*Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*,
255 F. Supp. 3d 1005 (S.D. Cal. 2017) ............................................................... 9, 11

*ANT v. McPartlin*,
2012 WL 13012472 (C.D. Cal. May 30, 2012).................................................... 6, 7

*Arcsoft, Inc. v. Cyberlink Corp.*,
153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...................................... 4, 5, 6, 7, 8, 9, 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 4

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 868 (9th Cir. 1999)....................................................................... 5, 6, 7

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859 (9th Cir. 2020)............................................................................. 5

*Californians for Disability Rts. v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006)................................................................................... 12

*Campari America LLC v. Skyyguard, Corp.*,
2023 WL 5950076 (T.T.A.B. 2023)................................................................... 11

*Coach Servs., Inc. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012)......................................................................... 5

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*,
2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) ................................................ 5, 8, 10, 11, 12

*Falkenberg v. Alere Home Monitoring, Inc.*,
2014 WL 5020431 (N.D. Cal. Oct. 7, 2014) ........................................................ 12

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011)........................................................................... 4

*Fitbug Ltd. v. Fitbit, Inc.*,
78 F. Supp. 3d 1180 (N.D. Cal. 2015) ............................................................. 12, 13

*Fruit of the Loom, Inc. v. Girouard*,
994 F.2d 1359 (9th Cir. 1993)........................................................................ 5, 7

*KEMA, Inc. Koperwhats*,
2010 WL 11417911 (N.D. Cal. Sept. 1, 2010)................................................. 12, 13

DEFENDANT OPENAI'S MOTION TO DISMISS

*MGA Entertainment, Inc. v. Dynacraft BSC, Inc.*,
    2018 WL 2448123 (C.D. Cal. May 30, 2018)..................................................... 6, 7, 10

*Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*,
    2022 WL 17224542 (C.D. Cal. Aug. 16, 2022) .............................................................. 9

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013) ............................................... 5, 8, 10, 11, 12

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ..................................................... 6, 7, 10, 11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.)............................................................................................. 4

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002)........................................................................... 5, 6, 7

*Toro Co. v. ToroHead Inc.*,
    61 U.S.P.Q.2d 1164 (T.T.A.B. 2001)....................................................................... 5

*UCAR Tech. (USA) Inc. v. Yan Li*,
    2018 WL 2555429 (N.D. Cal. June 4, 2018) .......................................................... 12

*Upper Deck Co. v. Flores*,
    569 F. Supp. 3d 1050 (S.D. Cal. 2021) ................................................................. 6, 7

*Urban Home, Inc. v. Cordillera Inv. Co., LLC*,
    2014 WL 3704031 (C.D. Cal. June 19, 2014)......................................................... 11

*Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*,
    416 F. Supp. 3d 948 (N.D. Cal. 2019) ..................................................................... 5

*Zero Motorcycles, Inc. v. Nikola Motor Co.*,
    2018 WL 3009126 (N.D. Cal. June 14, 2018) ........................................................ 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 1

**Statutes**

15 U.S.C. § 1125(c)..................................................................................... 4, 5, 7, 8

Cal. Bus. & Prof. Code § 14247................................................................................ 5, 8

Cal. Bus. & Prof. Code § 17200........................................................................... 12, 13

Trademark Dilution Revision Act of 2006........................................................................ 5

DEFENDANT OPENAI'S MOTION TO DISMISS

**<u>Other Authorities</u>**

4 McCarthy on Trademarks and Unfair Competition
§ 24:106 (4th ed.) ................................................................................................................ 11

Case No. 5:25-cv-09268- EKL

DEFENDANT OPENAI'S MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 29, 2026, at 10:00 a.m., or as soon as counsel may be heard, before the Honorable Eumi K. Lee, in Courtroom 7 located on the 4th Floor at 280 South 1st Street, San Jose, CA 95113, Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI OpCo, LLC, and OpenAI GP, LLC (collectively "OpenAI") will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Third, Fourth, and Sixth claims alleged in the complaint filed by Baron App, Inc. d/b/a Cameo ("Baron") at Docket Entry 1 (the "Complaint").  OpenAI's Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities, the materials on file in this action, and such other written or oral argument as may be presented or taken under submission by the Court.

**STATEMENT OF RELIEF SOUGHT**

OpenAI seeks an order dismissing the Third, Fourth, and Sixth claims from the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

OpenAI seeks dismissal of three claims that would otherwise groundlessly expand and confuse the issues in this lawsuit.

*First*, OpenAI seeks dismissal of Baron's federal and California state dilution claims because Baron had not alleged that its marks are sufficiently famous—a predicate element for dilution claims.  After OpenAI identified this issue during the temporary restraining order proceedings, Baron dropped its dilution arguments, even though it had multiple chances to provide additional evidence of fame.  Baron's abandonment of its dilution argument confirms that the allegations in its complaint are incapable of supporting causes of action for dilution.  Dismissing the dilution claim now will prevent the parties from taking unnecessary discovery and devoting any more judicial resources to unfounded dilution issues.

*Second*, OpenAI seeks dismissal of Baron's claim brought under California's unfair competition law, Section 17200.  Because Baron has not alleged any actual loss of money or property it has failed to meet Section 17200's statutory standing requirement.  Section 17200's heightened standing requirement was imposed specifically to reduce Section 17200 lawsuits, and

it favors dismissal early in the case.

The inadequacy of Baron's pleading is plain from the face of its complaint, and it compels dismissal of its dilution and Section 17200 claims.

## FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the complaint, Plaintiff founded its "digital marketplace," referred to as CAMEO, in 2017.  Compl. ¶¶ 1, 26.  Baron's CAMEO marketplace is accessible through its website or app.  *Id.* ¶¶ 26, 29.  It allows Baron's users to pay various "celebrities" to create short, custom videos.  *Id.* ¶¶ 1, 26, 29.  The celebrities set a price for the creation of the video and complete the transaction after the request.  *Id*. ¶¶ 26-29.  Baron does not directly employ the celebrities, does not create the videos, and does not allege that it owns any of the videos sold through the CAMEO marketplace.  *Id*.

Baron alleges that, during the time it has been in business, its customers have "made over ten million magical moments"—presumably referring to video-related transactions.  *Id*. ¶ 3.  Baron does not allege who its customers are, where they are located geographically (e.g., whether solely in the United States or also elsewhere), or the volume of U.S. sales taking place within the CAMEO marketplace.  *Id*.

Baron does not allege that it has conducted any traditional advertising or marketing campaigns related to CAMEO.  Instead, Baron states that it maintains an unidentified number of "social media accounts" related to CAMEO, which have at least two million followers—without specifying a number of U.S. followers.  Compl. ¶ 2.  Baron does not state what its social media budget is, how often it posts to its social media accounts, or whether its social media "followers" actually purchase videos available through its marketplace.  *Id*.

Baron alleges that over the course of its existence, CAMEO has been mentioned in episodes of three television shows (The Simpsons, The Daily Show, and Saturday Night Live), Compl. ¶ 2, 33, but Baron does not provide context for how CAMEO was mentioned or the duration of its relevance to any particular episode.  *Id*.  Baron also states that CAMEO has been recognized by *Time* Magazine, *Fast Company*, LinkedIn, and *Forbes*—but many of the mentions alleged recognize its employment practices.  *See id*. ¶ 32 (alleging "LinkedIn listed the company

among the 50 best startups to work for in 2020, and Forbes declared it one of America's Best Startup Employers in 2022.").

Defendant OpenAI was founded over a decade ago (*id.* ¶ 38) and has developed multiple products over the years, including the Sora app, which allows consumers to generate short, custom videos using artificial intelligence ("AI").  *Id*.  OpenAI's products have been successful, leading other high-profile and established companies—such as *The Washington Post*, Walmart, AMD, Vox Media, and Reddit—to seek cross-licensing deals with OpenAI.  *Id.* ¶ 56.  OpenAI and its Sora app have been mentioned on Saturday Night Live (*id.* ¶ 45), and prominent media companies and publications have reported on both OpenAI and the Sora app.  *See id.* ¶¶ 45 & n.10 (OpenAI and Sora has been mentioned by National Public Radio, Reuters, Rolling Stone, and Tech Radar).

On September 30, 2025, OpenAI added a new feature to Sora that allows users to create "cameos"—short appearances in videos—of themselves, their friends, and/or celebrities.  *Id.* ¶ 10, 40.  Celebrities have since used Sora's cameo feature to allow their fans to create realistic, custom-generated AI videos.  Compl. ¶¶ 42-44.  By its own admission, Baron believes OpenAI's use of "cameo" will "overwhelm" it in the marketplace.  Compl. ¶ 58.  Baron filed the instant lawsuit on October 28, 2025, and moved for a temporary restraining order.  *See* Dkt. 1, Dkt. 16.  In its moving papers, Baron argued that it could, and would, show a "likelihood of success on the merits" on its claims for trademark infringement *and* trademark dilution.  *See* Dkt. 16-1 at 10-22.

OpenAI filed its opposition to Baron's motion on November 6, 2025.  Dkt. 30.  Among other arguments, OpenAI explained that Baron could not succeed on its trademark dilution claims because its CAMEO mark is not sufficiently famous.  Dkt. 30 at 26-29.  Baron has used CAMEO for less than ten years, has not alleged that it conducted any formal advertising promotions of campaigns, has provided no details regarding its sales, and the CAMEO mark is generally younger and less established than other marks ruled insufficiently famous to support dilution claims.  *Id.*, *see also* Compl. ¶¶ 1-3, 30-33.

Baron filed a reply in support of its motion (Dkt. 31) but did not meaningfully respond to OpenAI's arguments that CAMEO was not famous.  Baron's entire dilution argument was limited to a single sentence stating "[w]hile the standard for fame is high, Cameo's 'household name'

status meets this standard," followed by a string cite to various court decisions, but without any citations to evidence, much less comparison of evidence to the facts in the cited authority. Dkt. 31 at 14 n.9.

In subsequent briefing filed on December 7, 2025, OpenAI pointed out that Baron had dropped its dilution arguments by failing to support them in its reply papers. Dkt. 46 at 1 & n.1. Baron responded on December 12, 2025, did not deny that it had dropped its dilution arguments, and made no attempt to argue dilution at the preliminary injunction hearing. *See* Dkt. 51 (no mention of "dilution").

### LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "Although factual allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation omitted). Additionally, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit . . . . [n]or is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

### ARGUMENT

I.    **BARON'S DILUTION CLAIMS SHOULD BE DISMISSED**

The Court should dismiss Baron's claims for federal and California state trademark dilution because Baron has failed to allege facts supporting a foundational element of those claims: that Baron's CAMEO mark is "famous"—*i.e.*, that "it is widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c); *see also Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1064-65 (N.D. Cal. 2015) ("the analysis is the same for a trademark dilution claim whether under federal or California law"). Marks only meet that standard if they

are sufficiently "mature and well-known," *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1363 (9th Cir. 1993), to the point that they have become "a household name." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911-12 (9th Cir. 2002), *superseded on other grounds by statute*, Trademark Dilution Revision Act of 2006, *as recognized in Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870-71 (9th Cir. 2020).  Where a mark's fame is challenged on a motion to dismiss, courts weigh four factors set out in both the Lanham Act and California law. *See* 15 U.S.C. § 1125(c)(2)(A); Cal. Bus. & Prof. Code § 14247 (setting out same factors); *see also Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, 2020 WL 6875178, at *8-9 (C.D. Cal. Oct. 23, 2020) (assessing factors on motion to dismiss); *Arcsoft*, 153 F. Supp. 3d at 1066-67 (same); *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 940-41 (S.D. Cal. 2013) (same).  The allegations in Baron's complaint fall below those rejected as insufficient.

### A.    Marks Far More Prominent Than CAMEO Have Been Found Not Famous

At best, Baron has alleged that CAMEO is less than ten years old, has been mentioned in episodes of three television shows, advertises on social media, and has made approximately ten million sales.  *See* Compl. ¶¶ 1, 2, 3, 30, 31, 32, and 33.  That falls well below the level of fame required for dilution; the Ninth Circuit and its district courts have repeatedly ruled that decades-old brands, with multi-million dollar advertising budgets and *billions* in sales are not sufficiently famous to support dilution claims.  *E.g. Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873-75 (9th Cir. 1999) (that brands were in use since 1908 and the 1960s, by company that "spends more than $5 million per year advertising its products" and makes "$3 billion in sales of all of its trademarks annually," was not sufficient to establish the fame needed for a dilution claim).  As this Court has recognized, "[t]he bar for famousness is high, and the Ninth Circuit has routinely found commercially successful marks insufficiently famous to satisfy the standard." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 969 (N.D. Cal. 2019) (collecting cases); *see also, e.g. Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("Fame for dilution purposes is difficult to prove.") (quoting *Toro Co. v. ToroHead Inc.*, 61 U.S.P.Q.2d 1164, 1180 (T.T.A.B. 2001)).

Examples of insufficient fame allegations are instructive here.  The UPPER DECK mark

was insufficiently famous, compelling dismissal at the pleading stage, despite the plaintiff having sold branded sports trading cards for over thirty years, including cards for celebrity athletes such as Michael Jordan. *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1065-67 (S.D. Cal. 2021). MGA's COZY COUPE mark was insufficiently famous, even though it had been used for thirty-nine years, made over ten million sales, and the plaintiff "spent millions of dollars to develop, build, and promote" its product. *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at \*6 (C.D. Cal. May 30, 2018). And in *Arcsoft, Inc. v. Cyberlink Corp.*, the plaintiff failed to show its PERFECT365 mark was famous despite allegations that (i) "over 60 million consumers have downloaded the [the plaintiff's a]pp," (ii) the app "count[ed] many of the United States' and world's most famous celebrities among its dedicated users," and (iii) the "app has been featured, and its virtues extolled, in such publications as The New York Times, The Washington Post, The Huffington Post, The Daily Mail, Allure magazine, TechCrunch, PCWorld, and VentureBeat." 153 F. Supp. 3d at 1061, 1065-67 (N.D. Cal. 2015); *see also, e.g. Thane*, 305 F.3d at 899 (twenty-year-old mark was not famous despite website that "attracts 4.5 million visitors annually," widespread media reports about athlete Lance Armstrong presenting a bicycle bearing plaintiff's mark to President Clinton, and the mark "appear[ing] in The New York Times and on Wheaties boxes."); *ANT v. McPartlin*, 2012 WL 13012472, at \*7 (C.D. Cal. May 30, 2012) (mark was not famous despite plaintiff "plead[ing] a laundry list of" "reality television, talk show and radio appearances" and continuous use in the California entertainment industry where plaintiff was "based for twenty years"); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034-35 (N.D. Cal. 2015) (the Pinterest mark was not sufficiently famous to be diluted, despite a "website [that] drew 25 million monthly active users," and mentions of Pinterest "published by prominent newspapers and media outlets, including *The New York Times*, *The Wall Street Journal*, *The Los Angeles Times* and *Fortune*").

As abundant precedent demonstrates, Baron's CAMEO mark is simply not famous enough to support a dilution claim. Baron admits its mark is less than ten years old (Compl. ¶ 1), making CAMEO younger than the marks rejected in *Avery Dennison,* 189 F.3d at 873-75, *MGA Ent.*, 2018 WL 2448123, at \*6, *Upper Deck*, 569 F. Supp. 3d at 1065-67, *Thane*, 305 F.3d at 899, and *ANT*,

2012 WL 13012472, at *7.  *See also, Fruit of the Loom*, 994 F.2d at 1363 (rejecting mark as insufficiently famous because it was not "mature").  Similarly, while Baron points to its social media accounts' "millions of followers," (Compl. ¶ 2), that allegation falls short of the 4.5 million website visitors found insufficient in *Thane*, 305 F.3d at 899, the 25 million *monthly active users* found inadequate in *Pinterest*, 140 F. Supp. 3d at 1034, and the 60 million app *downloads* alleged in *Arcsoft*.  153 F. Supp. 3d at 1061.  Nor is Baron's allegation that CAMEO has been mentioned in three television shows and a handful of websites (Compl. ¶¶ 2, 32-33) any greater than the allegations of national-media mentions in *Thane*, 305 F.3d at 899, *ANT*, 2012 WL 13012472, at *7, or *Arcsoft*.  153 F. Supp. 3d at 1061.  As for Baron's allegation of "ten million" sales, that is the same number found deficient in *MGA Ent.*, 2018 WL 2448123, at *6, and well below the billions in *annual* sales examined in *Avery Dennison*–more than 25 years ago.  189 F.3d at 873-75.

Baron's allegations of celebrities "using" its CAMEO marketplace (*e.g.* Compl. ¶ 1) does not salvage its dilution claims.  Baron's service (Compl. ¶ 26) is little different from the sale of trading cards featuring celebrity athletes discussed in *Upper Deck*, 569 F. Supp. 3d at 1056-67.  As in *Upper Deck,* Baron cannot not rely on the fame of a celebrity (there Michael Jordan) to support its own dilution claim.  *Id*. at 1065-66.  Even if celebrities' "use" of the CAMEO marketplace to sell their likeness could be construed as endorsements, that is insufficient to establish that CAMEO "is widely recognized by the general consuming public of the United States," as the Lanham Act requires, 15 U.S.C. § 1125(c).  *E.g., Thane*, 305 F.3d at 899 (THANE not famous despite Lance Armstrong endorsement on Wheaties), *Arcsoft*, 153 F. Supp. 3d at 1061, and *ANT*, 2012 WL 13012472, at *7.

In sum, Baron's complaint admits that CAMEO is younger and less established than other marks whose dilution claims were rejected for lack of fame at the pleading stage.  Baron's dilution claims should be dismissed.

**B.    Baron's Complaint Fails the Four-Factor Test for Fame**

Baron's failure to allege facts supporting three of the four statutory factors considered when assessing whether a mark is famous confirms that its dilution claims should be dismissed.  Those four factors are:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark [and]

(iv) Whether the mark was registered[.]

15 U.S.C. § 1125(c)(2)(A); Cal. Bus. & Prof. Code § 14247; *see also Deus ex Machina Motorcycles*, 2020 WL 6875178, at *8-9; *Arcsoft*, 153 F. Supp. 3d at 1066-67; *Parts.com*, 996 F. Supp. 2d at 940-41.  Aside from the mere allegation of registration with respect to some of its alleged rights (*compare* Compl. ¶ 34 *with* id. ¶ 36), Baron has failed to allege facts demonstrating these factors support fame, warranting dismissal of its dilution claims.  *E.g. Arcsoft*, 153 F. Supp. 3d at 1066.

> 1.    Allegations Relating To The Duration, Extent, and Geographic Reach of Advertising and Publicity Do Not Support Fame.

Baron's complaint does not discuss or identify any specific advertising campaigns or promotions for CAMEO, nor does Baron allege how much it spends on marketing or the geographic extent of its marketing.  Baron's complaint fails this factor at the outset.  *Arcsoft*, 153 F. Supp. 3d at 1066 (granting motion to dismiss where plaintiff did not "allege any details regarding its advertising or promoting of the" mark); *Parts.com*, 996 F. Supp. 2d at 940-41 (granting motion to dismiss where "[t]here are no specific allegations of online promotions [or] advertising campaigns"); *Deus ex Machina Motorcycles*, 2020 WL 6875178, at *9 (granting motion to dismiss where plaintiff alleged it "devoted substantial time, effort, and resources to the development and extensive promotion of its mark" but provided no details) (quotation omitted).

Read generously, just six paragraphs in Baron's complaint relate to publicity and marketing.  *See* Compl. ¶¶ 1, 2, 30, 31, 32, and 33.  Those paragraphs allege Baron has "social media accounts" with "millions of followers," that Baron's mark has been featured on three television shows, has appeared on a handful of websites, and that Baron's marketplace is "used" by celebrities.  *Id*.  None of those allegations say anything about the actual extent (geographic or

otherwise) of Baron's advertising and publicity.

These allegations are insufficient to demonstrate fame under this factor. Allegations that celebrities "use" a product, without any discussion of duration of use, frequency of use, or other details, is insufficient to show fame. *E.g., Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*, 2022 WL 17224542, at *5 (C.D. Cal. Aug. 16, 2022) ("alleg[ing] that their distinctive designs are worn by celebrities like Jennifer Lopez and the Kardashians" did not demonstrate mark was famous); *Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F. Supp. 3d 1005, 1010 (S.D. Cal. 2017) (alleging product "enjoyed the support of celebrities including Cheech Marin, and reputable industry professional judges Ed Meek and Andrew Faulkner" was insufficient to show mark was famous); *Arcsoft*, 153 F. Supp. 3d at 1066-67 (alleging product "counts many of the United States' and world's most famous celebrities among its dedicated users" did not demonstrate mark was famous).

Similarly, Baron's allegations that its mark has appeared in the media do not support this factor, because Baron fails to provide *context* for how (and how often) the mark was used. *Arcsoft*, 153 F. Supp. 3d at 1066 (alleging product was "recognized" in "*The New York Times*, *The Washington Post*, *The Huffington Post*, *The Daily Mail*, *Allure* magazine, *TechCrunch*, *PCWorld*, and *VentureBeat*" did not demonstrate fame without "the particular contexts in which the [plaintiff's mark] appeared in the various publications."). The few instances where Baron does provide additional details demonstrate why courts require this context. At Paragraph 32, Baron alleges:

> Fast Company . . . named Cameo #1 among the "10 Most Innovative Social Media Companies of 2020." LinkedIn listed the company among the 50 best startups to work for in 2020, and Forbes declared it one of America's Best Startup Employers in 2022.

None of those allegations say anything about *consumer recognition* of Baron's product, as opposed to its employment benefits or business model. In other words, while these articles may be of interest to particular job hunters, there is no indication that they reflect household name status among general U.S. consumers.

Lastly, Baron's allegations about social media "followers" and "views" (*see* Compl. ¶ 2)

are less compelling than those rejected by other courts.  *See Arcsoft*, 153 F. Supp. 3d at 1065-67 (allegations that "over 60 million consumers have downloaded the [plaintiff's app] globally, [and] that 20 million have done so nationally" is insufficient to demonstrate fame); *Pinterest*, 140 F. Supp. 3d at 1034-35 (N.D. Cal. 2015) (plaintiff failed to demonstrate that its mark was famous, despite showing "its website drew 25 million monthly active users").

In sum, Baron has not alleged facts demonstrating that its product is "famous" as a result of a duration, extent, or geographic reach of any particular advertising or publicity.  This factor favors dismissal.

2.    No Allegations Relate To The Amount, Volume, and Geographic Extent of Sales of Goods or Services In The U.S.

Baron pleaded no facts reflecting its annual U.S. sales volume, annual U.S. sales revenue, or the geographic location(s) of its sales.  Baron's failure means this factor also favors dismissal. *E.g. Deus ex Machina Motorcycles*, 2020 WL 6875178, at *9 (plaintiff failed to allege facts supporting this factor where it "does not allege how much of its [merchandise] it sells (either worldwide or in the United States) in any given fiscal year, what its annual sales revenue is, or where those sales occur"); *Parts.com*, 996 F. Supp. 2d at 941 (plaintiff failed to allege facts supporting this factor where "[p]laintiff does not say how many parts it sells in any given fiscal year, what its annual sales revenue is, or where those sales are made").

Instead, the only allegation Baron offers relating to this factor is: "Cameo customers *worldwide* have made over ten million magical moments, ranging from birthday greetings and marriage proposals to business endorsements to inside jokes and nonsensical 'meme' content." Compl. ¶ 3 (emphasis added).  Tellingly, Baron avoids alleging whether each "magical moment" is an actual sale, or something else altogether, e.g., views of videos purchased through its marketplace.  *Id*.  Even assuming Baron is referring to ten million sales, Baron provides no information about the time period over which the sales took place, and expressly makes clear this volume is not limited to the United States.  *Id*.  Baron's lone allegation relating to this factor does not favor fame.  Courts have found "more than 10 million" sales "worldwide" insufficient to demonstrate fame.  *MGA Ent.*, 2018 WL 2448123, at *6-7.  Nor has Baron alleged whether its

consumers represent a true cross section of the public or are just a niche market.  That failure dooms Baron's dilution claim, because "[t]he trademark dilution statute was revised in 2006 to deny protections to marks whose fame extends only to niche markets."  *Aegis*, 255 F. Supp. 3d at 1011 (quoting *Urban Home, Inc. v. Cordillera Inv. Co., LLC*, 2014 WL 3704031, at *6 (C.D. Cal. June 19, 2014)).

　　　　　　　　　　3.　　　No Allegations Show The Extent of Actual Recognition Of The Mark.

　　　　Baron alleged no facts showing that the vast majority of the public recognizes its CAMEO mark.  For a mark to qualify as famous, approximately 75% of the consuming public must recognize the mark.  *E.g., Pinterest*, 140 F. Supp. 3d at 1035 (citing 4 McCarthy on Trademarks and Unfair Competition § 24:106 (4th ed.) as "recommending a high standard for fame, such as at least 75% consumer recognition in a survey response"); *Campari America LLC v. Skyyguard, Corp.*, 2023 WL 5950076, *11 (T.T.A.B. 2023) (non-precedential, "Professor McCarthy posits, and our precedent is consistent with the proposition, that a threshold response in the range of 75% of the general consuming public is necessary to prove fame for purposes of dilution.") (citing, *inter alia*, 3 McCarthy on Trademarks and Unfair Competition § 24:106 (5th ed.)).  There are no allegations in Baron's complaint from which the Court can infer that 75% of the consuming public recognizes Baron's mark.

　　　　Without allegations showing that the vast majority of consumers recognize its mark, this factor also weighs against finding fame sufficiently pleaded.  *Arcsoft*, 153 F. Supp. 3d at 1067 (factor favored defendant where plaintiff "does not offer any nonconclusory allegations about the extent to which consumers actually recognize" the asserted mark); *Parts.com*, 996 F. Supp. 2d at 941 (factor favored defendant where "Plaintiff has alleged nothing in its Complaint suggesting that the general consuming public recognizes" the asserted mark); *see also Deus ex Machina Motorcycles*, 2020 WL 6875178, at *8 (granting motion to dismiss where "plaintiff alleges that its mark is widely recognized only among a discrete group," "males aged 18 to 30 who are drawn to custom motorcycle and vintage surf culture.").

　　　　Because all of the "fame" factors weigh against Baron aside from registration, Baron Baron's dilution claim should be dismissed.  *Arcsoft*, 153 F. Supp. 3d at 1066-67 (dilution claim

dismissed where three out of four "fame" factors favored the defendant); *Deus ex Machina Motorcycles*, 2020 WL 6875178, at *8-9 (same); *Parts.com*, 996 F. Supp. 2d at 940-41 (same).

## II.    BARON LACKS STANDING TO BRING A SECTION 17200 CLAIM

In 2004, California voters passed Proposition 64, which raised the standing requirements for Section 17200 claims to require that plaintiffs allege they had *both* (i) "suffered injury in fact" *and* (ii) "lost money or property as a result of unfair competition." *Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006). Baron's complaint does not satisfy the "lost money or property" requirement, which is "more stringent than" "federal Article III standing." *Falkenberg v. Alere Home Monitoring, Inc.*, 2014 WL 5020431, at *4 (N.D. Cal. Oct. 7, 2014). Since Baron has not satisfied the heightened standing requirement, Baron's section 17200 claim must be dismissed. *Id*. (granting motion to dismiss section 17200 claim for lack of standing); *see also UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018) (dismissing section 17200 claim for lack of standing).

This court's decision in *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015), is instructive. *Fitbug* examined a trademark lawsuit between two manufacturers of electronic fitness devices, Fitbug and Fitbit, in which Fitbit asserted a counterclaim under section 17200 claim. *Id*. at 1184-85. To resolve a discovery dispute, Fitbit stipulated that it "did not have evidence of particular instances where individuals who otherwise would have purchased Fitbit products instead purchased Fitbug products in reliance on or as a result of Fitbug's conduct." *Id*. at 1196-97 (quotations omitted). Relying on that stipulation alone, Fitbug moved for summary judgment on Fitbit's section 17200 claim, and the court granted it because Fitbit admitted it had not "lost money or property" by virtue of stipulating that it could not identify any lost sales. *Id*.

While *Fitbug* was resolved at summary judgment, courts will dismiss section 17200 claims at the pleading stage where, as here, the complaint alleges trademark infringement but fails to allege lost sales. *See, e.g. KEMA, Inc. Koperwhats*, 2010 WL 11417911, at *5 (N.D. Cal. Sept. 1, 2010) (granting motion to dismiss and rejecting "[p]laintiffs' argument that trademark infringement and interference with customer relationships is sufficient to confer standing" under section 17200 without allegations of lost money or property). Moreover, Baron cannot

manufacture standing under section 17200 by merely pointing to its own attorneys' fees or the costs of bringing suit. *Zero Motorcycles, Inc. v. Nikola Motor Co.*, 2018 WL 3009126, at *8-9 (N.D. Cal. June 14, 2018) (granting motion to dismiss section 17200 claim brought by trademark plaintiff, where "the only allegations regarding the money or property Plaintiff alleges losing are the attorneys' fees and costs of suit.").

As in *KEMA* and *Zero Motorcycles*, Baron's complaint does not allege any lost sales—nor any other form of lost money or property. Baron thus lacks standing to assert a section 17200 claim, warranting dismissal. *Fitbug*, 78 F. Supp. 3d at 1196-97; *KEMA,* 2010 WL 11417911 at *5; *Zero Motorcycles*, 2018 WL 3009126 at *8-9.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Third, Fourth, and Sixth claims from Baron's Complaint.

Dated:   January 5, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:   */s/ Margret M. Caruso*
Margret M. Caruso

*Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI OpCo, LLC, and OpenAI GP, LLC*