QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI, LLC, OpenAI OpCo. LLC, and OpenAI GP, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BARON APP, INC. d/b/a CAMEO,<br><br>              Plaintiff,<br><br>       vs.<br><br>OPENAI, INC., OPENAI GLOBAL, LLC, OPENAI, LLC, OPENAI OPCO, LLC, and OPENAI GP, LLC,<br><br>              Defendants. | Case No. 5:25-cv-09268- EKL<br><br>**OPENAI'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Judge:       Hon. Eumi K. Lee<br>Hearing:    April 29, 2026 at 10:00 AM<br>Location:    Courtroom 7, 4th Floor |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT .............................................................................................................................1

I.      BARON'S DILUTION CLAIMS SHOULD BE DISMISSED.............................................1

        A.      Baron Fails to Identify Allegations Supporting the Four-Factor Test for
                Fame ..............................................................................................................1

        B.      Baron's Cited Authorities Do Not Save Its Dilution Claims .....................................4

        C.      Baron's Strawman Arguments .........................................................................7

II.     BARON LACKS STANDING TO ASSERT A SECTION 17200 CLAIM ........................9

III.    BARON SHOULD NOT BE GRANTED LEAVE TO AMEND ......................................12

CONCLUSION .........................................................................................................................13

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n,*
  255 F. Supp. 3d 1005 (S.D. Cal. 2017) ................................................................ 2, 5, 8, 9, 13

*Ahussain v. GNC Franchising, LLC,*
  2009 WL 10672353 (C.D. Cal. Mar. 18, 2009) .................................................................. 12

*Amare v. Safeway Corp.,*
  2024 WL 6840044 (N.D. Cal. Mar. 22, 2024) ................................................................... 12

*American Society of Anesthesiologists v. BevMD, LLC,*
  2016 WL 4257448 (S.D. Cal. Mar. 31, 2016) .................................................................... 11

*Arcsoft, Inc. v. Cyberlink Corp.,*
  153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...................................................................... 2, 3, 4, 8

*Avery Dennison Corp. v. Sumpton,*
  189 F.3d 868 (9th Cir. 1999) .............................................................................................. 9

*BizCloud, Inc. v. Computer Sciences Corp.,*
  2014 WL 1724762 (N.D. Cal. Apr. 29, 2014) ................................................................... 11

*Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co.,*
  2022 WL 3574423 (C.D. Cal. July 22, 2022) .................................................................... 10

*Brown v. Option One Mortg. Corp.,*
  2010 WL 1267774 (N.D. Cal. Apr. 1, 2010) ..................................................................... 12

*Campari America LLC v. Skyyguard, Corp.,*
  2023 WL 5950076 (T.T.A.B. 2023) .................................................................................... 9

*Celebrity Chefs Tour, LLC v. Macy's, Inc,*
  2014 WL 12160745 (S.D. Cal. Sept. 19, 2014) .................................................................. 6

*Coast Law Group v. Panagiotou,*
  2013 WL 12114633 (S.D. Cal. Mar. 28, 2013) ................................................................... 7

*Craigslist, Inc. v. DealerCMO, Inc.,*
  2017 WL 6334142 (N.D. Cal. Apr. 11, 2017) ..................................................................... 5

*Craigslist, Inc. v. Kerbel,*
  2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ...................................................................... 5

*Dahon N. Am., Inc. v. Hon,*
  2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ..................................................................... 2

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
   626 F. Supp. 3d 635 (S.D.N.Y. 2022) ...................................................................................... 5

*Emeco Indus., Inc. v. Restoration Hardware, Inc.*,
   2012 WL 6087329 (N.D. Cal. Dec. 6, 2012) ........................................................................... 6

*Fitbug Ltd. v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) .............................................................................. 10, 11

*Fruit of the Loom, Inc. v. Girouard*,
   994 F.2d 1359 (9th Cir. 1993) ................................................................................................. 9

*George Nelson Found. v. Modernica, Inc.*,
   12 F. Supp. 3d 635 (S.D.N.Y. 2014) ....................................................................................... 4

*Halloween Town, Inc. v. Pignatello, LLC*,
   2011 WL 13217755 (C.D. Cal. Mar. 3, 2011) ......................................................................... 6

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
   2017 WL 10402610 (C.D. Cal. Dec. 21, 2017) ....................................................................... 4

*ITG Brands, LLC v. Capna Intell.*,
   2021 WL 2258307 (C.D. Cal. June 3, 2021) ........................................................................... 4

*Jackson Fam. Wines, Inc. v. Enovation Brands, Inc.*,
   2018 WL 6981813 (C.D. Cal. Aug. 10, 2018) ......................................................................... 6

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2008) ................................................................................................... 5

*JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*,
   2017 WL 2535864 (N.D. Cal. June 12, 2017) ....................................................................... 11

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................................. 1, 9, 10

*LiveRamp, Inc. v. Kochava, Inc.*,
   2020 WL 2065696 (N.D. Cal. Apr. 29, 2020) ....................................................................... 11

*Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*,
   2020 WL 6875178 (C.D. Cal. Oct. 23, 2020) .............................................................. 2, 3, 4, 8

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
   2018 WL 2448123 (C.D. Cal. May 30, 2018) .......................................................... 3, 5, 8, 13

*New York Times Co. v. Microsoft Corp.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025) ..................................................................................... 6

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ................................................................................................ 11

-iii-                                     Case No. 5:25-cv-09268- EKL

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
   69 F. Supp. 3d 175 (D.D.C. 2014) ...................................................................................... 9

*Parts.com, LLC v. Yahoo! Inc.*,
   996 F. Supp. 2d 933 (S.D. Cal. 2013) ........................................................................ 2, 3, 4, 8

*Pete v. Facebook Data Breach*,
   2026 WL 32635 (N.D. Cal. Jan. 6, 2026) ........................................................................ 2

*Pinterest, Inc. v. Pintrips, Inc.*,
   140 F. Supp. 3d 997 (N.D. Cal. 2015) ........................................................................ 4, 9

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
   2015 WL 4484219 (C.D. Cal. July 19, 2015) ........................................................................ 5

*Rise Basketball Skill Development, LLC v. K Mart Corp.*,
   2017 WL 2775030 (N.D. Cal. June 27, 2017) ...................................................................... 11

*Rivera v. Corrections Corp. of America*,
   999 F.3d 647 (9th Cir. 2021)........................................................................................ 7

*Roadget Bus. PTE. Ltd. v. PDD Holdings Inc.*,
   2026 WL 44864 (D.D.C. Jan. 7, 2026) ........................................................................ 6

*Robinson v. U-Haul Co. of California,*
   4 Cal. App. 5th 304, 318 (2016)........................................................................................ 11

*Rogozinski v. Reddit, Inc.*,
   2023 WL 4475581 (N.D. Cal. July 11, 2023) ........................................................................ 12

*ROTFL Prods., LLC v. Gzebb*,
   2013 WL 12181763 (N.D. Cal. Aug. 5, 2013)........................................................................ 10

*Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC*,
   2024 WL 661199 (C.D. Cal. Jan. 5, 2024)........................................................................ 6

*Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC*,
   Case No. 23-cv-08005 (C.D. Cal. 2023), Dkt. 1 ........................................................... 7

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002)........................................................................................ 4, 9

*United Artists Corp. v. United Artist Studios LLC*,
   2019 WL 3293650 (C.D. Cal. June 3, 2019)........................................................................ 4

*Voellger v. Dignity Health*,
   2020 WL 13505419 (N.D. Cal. Dec. 21, 2020) ........................................................... 12

*Yelp, Inc. v. ReviewVio, Inc.*,
   2024 WL 2883668 (N.D. Cal. June 6, 2024) ........................................................... 5

*Zero Motorcycles, Inc. v. Nikola Motor Co.*,
   2018 WL 3009126 (N.D. Cal. June 14, 2018) .......................................................................... 10

## Statutes

15 U.S.C.A. § 1125 .................................................................................................................... 1, 2, 3

Cal. Bus. & Prof. Code § 17200........................................................................... 1, 9, 10, 11, 12, 13

Cal. Bus. & Prof. Code § 14247........................................................................................................ 2

Cal. Bus. & Prof. Code § 17203................................................................................................... 10

Cal. Bus. & Prof. Code § 17204................................................................................................... 10

**PRELIMINARY STATEMENT**

Plaintiff Baron App, Inc.'s ("Baron's") opposition confirms why the Court should dismiss its state and federal claims for trademark dilution, as well as its California state claim for unfair competition asserted under Business & Professions Code Section 17200.

Baron's opposition fails to identify any allegations in the complaint that could satisfy any of the four factors state and federal law use to determine whether a mark is sufficiently famous to support a dilution claim.  Instead, Baron *assumes* that its mark is sufficiently famous and then cites cases that it contends demonstrate that "several marks considerably less famous than" Baron's mark "have been found to be famous."  Baron's subjective belief is not a substitute for factual allegations.  Moreover, the decisions Baron cited involved allegations starkly different from Baron's, particularly regarding the maturity of the marks, sales volumes, and advertising spend.

Baron's sole defense for its Section 17200 claim is arguing that merely alleging trademark infringement is enough to state a Section 17200 claim according to its reading of the California Supreme Court's *Kwikset Corp. v. Superior Court* decision.  But Baron overreads *Kwikset.* Multiple courts following *Kwikset* have dismissed Section 17200 claims premised on trademark infringement in the absence of allegations of lost sales, lost money, or lost property.  Baron's remaining cases are irrelevant because they included allegations of lost sales, lost royalties, or loss of present value; Baron's complaint does not.

Because Baron's complaint lacks the factual allegation necessary to sustain the challenged claims, OpenAI's motion to dismiss should be granted.

**ARGUMENT**

**I.    BARON'S DILUTION CLAIMS SHOULD BE DISMISSED**

**A.    Baron Fails to Identify Allegations Supporting the Four-Factor Test for Fame**

Baron's opposition fails to point to any allegations that if true would establish any of the four factors identified in the Lanham Act to assess whether a mark is "famous" enough to be diluted, other than the registration of its trademarks.  *See* 15 U.S.C. § 1125(c)(2)(A) (identifying

four factors); Cal. Bus. & Prof. Code § 14247 (listing similar four factors).[1]  Obviously, that sole factor is insufficient; otherwise, dilution would not be a protection limited to "truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls."  *Dahon N. Am., Inc. v. Hon*, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012).  Baron concedes the identity of the four factors (Opp. at 6-7), but its failure even to discuss the factual application of the test is reason alone to grant OpenAI's motion to dismiss.  *See, e.g. Pete v. Facebook Data Breach*, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026) (where a plaintiff's "opposition briefs fail to respond to [an] argument," the plaintiff "concedes that his claims should be dismissed on that ground") (collecting cases).

Baron's failure to identify alleged facts supporting any of the other three factors compels dismissal of its dilution claims.  *See, e.g., Arcsoft, Inc. v. Cyberlink Corp*., 153 F. Supp. 3d 1057, 1066 (N.D. Cal. 2015) (granting motion to dismiss where plaintiff failed to allege facts supporting three out of the four fame factors): *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc*., 2020 WL 6875178, at *9 (C.D. Cal. Oct. 23, 2020) (same); *Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F. Supp. 3d 1005, 1009-10 (S.D. Cal. 2017) (same); *Parts.com, LLC v. Yahoo! Inc*., 996 F. Supp. 2d 933, 941 (S.D. Cal. 2013) (same).

*First,* Baron fails to identify any allegations detailing its advertising or promoting of the mark, much less "[t]he duration, extent, and geographic reach of advertising and publicity of the mark," (15 U.S.C. § 1125(c)(2)(A)).  *See Arcsoft*, 153 F. Supp. 3d at 1066 (granting motion to dismiss where plaintiff did not "allege any details regarding its advertising or promoting of the" mark); *Parts.com*, 996 F. Supp. 2d at 940-41 (granting motion to dismiss where "[t]here are no specific allegations of online promotions [or] advertising campaigns"); *Deus ex Machina Motorcycles*, 2020 WL 6875178, at *9 (granting motion to dismiss where plaintiff alleged it

---

[1] The four factors are: "(i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; [and] (iv) [w]hether the mark was registered."  15 U.S.C.A. § 1125.

"devoted substantial time, effort, and resources to the development and extensive promotion of its mark" but provided no details).

*Second*, Baron fails to identify any allegations of "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark." 15 U.S.C. § 1125(c)(2)(A). Nor could it. Baron's complaint contains no details about the extent of its sales, much less whether they take place within the United States. *See Deus ex Machina Motorcycles*, 2020 WL 6875178, at *9 (plaintiff failed to allege facts supporting this factor where it "does not allege how much of its [merchandise] it sells (either worldwide or in the United States) in any given fiscal year, what its annual sales revenue is, or where those sales occur"); *Parts.com*, 996 F. Supp. 2d at 941 (plaintiff failed to allege facts supporting this factor where "[p]laintiff does not say how many parts it sells in any given fiscal year, what its annual sales revenue is, or where those sales are made"). Even assuming Baron's reference to "over 10 million magical moments" (Compl. ¶ 3; Opp. 8) refers to sales, that remains deficient because Baron does not allege how many were to United States customers, and it ignores the authority finding such vague allegations insufficient. *See* Mot. 7 (citing 15 U.S.C. § 1125 (c)(2)(A) (in order to be famous, a mark must be "recognized by the general consuming public of the United States"); *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at *6 (C.D. Cal. May 30, 2018) (find fame insufficiently pled despite allegation of "more than 10 million" sales "worldwide"); *Arcsoft*, 153 F. Supp. 3d at 1066 ("20 million United States downloads" was insufficient to demonstrate fame at the pleading stage)).

*Third*, Baron fails to identify "any nonconclusory allegations" concerning the "[t]he extent of actual recognition of the mark." *Arcsoft*, 153 F. Supp. 3d at 1067 (granting motion to dismiss); 15 U.S.C. § 1125 (c)(2)(A)); *see also Parts.com*, 996 F. Supp. 2d at 941 (granting motion to dismiss where "Plaintiff has alleged nothing in its Complaint suggesting that the general consuming public recognizes" the asserted mark). The handful of media references to its CAMEO mark Baron points to (Opp. 11-12) are like those rejected as "conclusory" in *Arcsoft*—authority Baron ignores. *See Arcsoft*, 153 F. Supp. 3d at 1061, 1067 (finding this factor insufficiently pled despite allegations that (i) "over 60 million consumers have downloaded" plaintiff's app globally, with "20 million" in the United States, (ii) plaintiff's "app counts many of the United States' and

world's most famous celebrities among its dedicated users," (iii) it "has been featured, and its virtues extolled, in such publications as The New York Times, The Washington Post, The Huffington Post, The Daily Mail, Allure magazine, TechCrunch, PCWorld, and VentureBeat"); *see also Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034 (N.D. Cal. 2015) (mark was not famous despite being featured in "prominent newspapers and media outlets, including The New York Times, The Wall Street Journal, The Los Angeles Times, and Fortune"); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 899 (9th Cir. 2002) (mark was not famous despite appearing "in The New York Times and on Wheaties boxes" and promotion by prominent celebrities).

By failing to identify allegations that would support any of the non-registration fame factors, Baron's opposition confirms dismissal of its dilution claims is appropriate.  *See Arcsoft*, 153 F. Supp. 3d at 1066: *Deus ex Machina Motorcycles*, 2020 WL 6875178, at \*9; *Parts.com*, 996 F. Supp. 2d at 941.

**B.    Baron's Cited Authorities Do Not Save Its Dilution Claims**

The decisions Baron cites to broadly argue that its allegations are "sufficient" to show dilution (Opp. 6-9) involve more comprehensive allegations than Baron's complaint.

*First*, Baron points to decisions that examined older, more mature marks, each with vastly larger sales than Baron has alleged.  *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2017 WL 10402610, at \*3 (C.D. Cal. Dec. 21, 2017) (complaint alleged In-N-Out's DOUBLE DOUBLE mark was in use for "more than 50 years" and "has sold $600 million" in the preceding ten years alone); *United Artists Corp. v. United Artist Studios LLC*, 2019 WL 3293650, at \*2 (C.D. Cal. June 3, 2019) (UNITED ARTISTS mark had been in use since 1919, was used to publish numerous movies that were so well-know and famous they "grossed more than $5.3 billion" since 2007); *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 645 (S.D.N.Y. 2014) (GEORGE NELSON common law mark was "used consecutively for more than 60 years" and "generat[ed] hundreds of millions of dollars in sales"); *ITG Brands, LLC v. Capna Intell.*, 2021 WL 2258307, at \*1 (C.D. Cal. June 3, 2021) (complaint alleged dilution of KOOL marks, which were registered as early as 1947, and alleged marks were used to sell "over a billion packs" of

cigarettes since 2015); *see also QS Wholesale, Inc. v. Rox Volleyball, Inc.*, 2015 WL 4484219, at *5 (C.D. Cal. July 19, 2015) (ROXY mark was used for "20 years" "sold at over 9,000 locations" and "made $250 million in sales"); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008) (HOTWHEELS mark in use for "37 years" and "three billion . . . units have been sold since the inception of the mark"); *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 626 F. Supp. 3d 635, 645 (S.D.N.Y. 2022) ("Bulleit" bourbon trade dress in use "for 21 years" with "150 million dollars' worth of sales . . . in Fiscal Year 2016 alone").

By contrast, Baron has used CAMEO less than ten years and has created approximately 10 million "magical moments" over those years of undisclosed value.  Compl. ¶¶ 1, 3.  Those allegations do not measure up to the decades-old brands with hundreds of millions in sales that appear in Baron's cited authorities.  In comparison to its own citations, Baron has failed to allege that CAMEO is sufficiently "mature and well-known" to support a dilution claim.  *See, e.g., Aegis Software*, 255 F. Supp. 3d at 1010 (granting motion to dismiss where facts alleged "fall short of establishing that the . . . marks are 'mature and well-known' brands"); *MGA Ent., Inc.*, 2018 WL 2448123, at *6 (alleging "more than 10 million" sales was insufficient).

*Second*, Baron cites two cases examining internet services—Yelp and Craigslist—that are both (i) older than CAMEO, and (ii) involve hundreds of millions of instances of *contributed* user content, not merely "millions" of people worldwide "following" social media accounts.  *Compare Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *8 (N.D. Cal. June 6, 2024) (YELP mark in use for 18 years, while users contributed "hundreds of millions of reviews and other content") *and Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *13 (N.D. Cal. Aug. 2, 2012) (CRAIGSLIST mark in use for 17 years, while users contributed "40 million new posts each month" to website)[2] *with* Compl. ¶¶ 1, 2.  Both the quantity and quality of these metrics are key distinctions because corporate social media accounts may be followed for any number of reasons, irrespective of

---

[2]  Baron's complaint cites to *Craigslist, Inc. v. DealerCMO, Inc.*, *see* Opp. 8-9, however, that decision expressly relied on an earlier case examining allegations of "fame" regarding the same CRAIGSLIST mark.  *See* 2017 WL 6334142, at *2 (N.D. Cal. Apr. 11, 2017) (citing *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798 (N.D. Cal. Aug. 2, 2012)).

whether consumers would actually recognize the marks at issue—as required for a dilution claim. Indeed, whether "a 'brand' or marketplace allegedly enjoys a large social-media presence with millions of followers . . . says little about consumer recognition of the trademarks in suit." *Roadget Bus. PTE. Ltd. v. PDD Holdings Inc*., 2026 WL 44864, at \*14 (D.D.C. Jan. 7, 2026) (granting motion to dismiss dilution claim, cleaned up).  Since Baron's complaint only alleges social media followers, and not consumers contributing content, its allegations fall short again.  *Id*.

*Third*, Baron cites two decisions that examined expansive allegations about advertising and sales to consumers located *within the United States*: *New York Times Co. v. Microsoft Corp*., 777 F. Supp. 3d 283, 324 (S.D.N.Y. 2025), in which the marks at issue, including THE NEW YORK TIMES, were on publications "circulated throughout all 50 states" that had a "widespread circulation across a general audience in the United States" and "each of their publications has been in circulation for more than 100 years," and *Celebrity Chefs Tour, LLC v. Macy's, Inc*, 2014 WL 12160745, \*12 (S.D. Cal. Sept. 19, 2014, in which the plaintiffs "advertised . . . on a national level via print, radio, and television media; press releases; social media, including Facebook and Twitter; the websites of Macy's, Plaintiffs, Alexander Defendants, Whirlpool, WTTW, and local PBS stations; and mass text message and email campaigns" and recognition of the mark "was so high that chefs and restaurants reached out asking to be on the show, companies reached out seeking to be included as sponsors, and members of the general public inquired as to when the [plaintiffs] would be stopping in their cities [which were the top 25 media markets in the United States] and how they could secure advance tickets."  But, as discussed above, Baron's complaint contains no allegations about where its customers are located, no allegations of any specific advertising campaigns, and no allegations demonstrating general recognition among the consuming public within the United States.

*Fourth*, Baron cites four decisions, *Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC*, 2024 WL 661199, at \*1 (C.D. Cal. Jan. 5, 2024), *Jackson Fam. Wines, Inc. v. Enovation Brands, Inc*., 2018 WL 6981813, at \*4 (C.D. Cal. Aug. 10, 2018), *Emeco Indus., Inc. v. Restoration Hardware, Inc*., 2012 WL 6087329, at \*2 (N.D. Cal. Dec. 6, 2012), and *Halloween Town, Inc. v. Pignatello, LLC*, 2011 WL 13217755, at \*4 (C.D. Cal. Mar. 3, 2011), that found fame sufficiently

pled, but do not include any discussion of the allegations in the complaints at issue.  Those decisions do not help Baron because the complaints at issue alleged (i) marks far older than Baron's, (ii) larger sales volumes, (iii) specific, national advertising campaigns, and/or (iv) markers of national recognition in the United States.  *See Sajahtera, Inc. v. Kitross Apparel Los Angeles, LLC,* Case No. 23-cv-08005 (C.D. Cal. 2023), Dkt. 1 ¶¶ 7-8 (THE BEVERLY HILLS HOTEL mark was over 100 years old and used on a building recognized as a historic landmark); *Jackson Fam. Wines, Inc. v. Enovation Brands, Inc*., Case No. 18-cv-04155 (C.D. Cal. 2018) Dkt. 1 ¶¶ 1, 10-12 (LA CREMA mark has been in use for "over 30 years," has been used to sell "over sixty million (60,000,000)" bottles of wine, and plaintiff spent "many millions of dollars . . . on marketing and advertising" in the last four years alone); *Emeco Indus., Inc. v. Restoration Hardware, Inc*., Case No. 12-cv-05072 (N.D. Cal. 2012), Dkt. 1 ¶¶ 2, 13-14 ("The Navy Chair" trade dress has been in use "since World War II," and is so famous it is part of the permanent collections at the Carnegie Museum of Art in Pittsburg and the National Museum of American History in Washington D.C.); *Halloween Town, Inc. v. Pignatello*, Case No. 10-cv-09683 (C.D. Cal. 2010) Dkt. 1 ¶¶ 12-14 (rock star specifically promoted the HALLOWEEN TOWN mark on his website, radio show, and on his rock tours, he also designed merchandise using the mark; the mark eventually became so famous that customers traveled from foreign countries to visit a location in Southern California selling marked merchandise).[3]  Nothing in Baron's complaint comes close to the allegations in those cases.[4]

### C.      Baron's Strawman Arguments

Baron makes four additional arguments against dismissing its dilution claims, each of

---

[3]   The Court may take judicial notice of the complaints filed in these cases, because the complaints are court records that are publicly available over PACER.  *See Rivera v. Corr. Corp. of Am.*, 999 F.3d 647, 649 (9th Cir. 2021) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER."); Fed. R. Evid. 201.

[4]   Baron also cites to *Coast Law Group v. Panagiotou*, 2013 WL 12114633, (S.D. Cal. Mar. 28, 2013), but the defendant in that case appears to have challenged the allegations relating to similarity, not the allegations related to fame.  *Id*. at *4 ("Contrary to Defendant's assertion, Plaintiff does not need to prove similarity to survive a motion to dismiss its dilution claims."). Since the defendant did not challenge the allegations relating to fame, that case does not help Baron either.

which mischaracterizes OpenAI's arguments, authority, or both.

*First*, throughout its opposition, Baron argues it "need not prove fame" at the pleading stage. *E.g.* Opp. 7. But OpenAI never argued otherwise. Instead—and as demonstrated by Baron's opposition—OpenAI argues that the allegations in Baron's complaint, accepted as true, do not meet the legal standard for "fame." *See, e.g. Arcsoft*, 153 F. Supp. 3d at 1066 (dismissing dilution claim at the pleading stage where plaintiff failed to allege sufficient facts demonstrating its mark was famous): *Deus ex Machina Motorcycles*, 2020 WL 6875178, at *9 (same); *Aegis Software,* 255 F. Supp. 3d at 1009-10 (same); *Parts.com*, 996 F. Supp. 2d at 941 (same).

*Second*, Baron attempts to dismiss all of OpenAI's authorities granting motions to dismiss dilution claims by arguing "they involve threadbare complaints alleging fame for obscure marks." Opp. 12-13. Not so. OpenAI's authorities examine allegations *more extensive* than those alleged by Baron, and yet still found wanting. *E.g. Arcsoft*, 153 F. Supp. 3d at 1061, 1065-67 (dismissing dilution claim despite allegations that (i) "over 60 million consumers have downloaded the [the plaintiff's a]pp," (ii) the app "count[ed] many of the United States' and world's most famous celebrities among its dedicated users," and (iii) the "app has been featured, and its virtues extolled, in such publications as *The New York Times, The Washington Post, The Huffington Post, The Daily Mail, Allure* magazine, TechCrunch, *PCWorld*, and VentureBeat."); *MGA Ent., Inc.*, 2018 WL 2448123, at *6 (dismissing dilution claim despite allegations that mark had been used for thirty nine years, plaintiff made over ten million sales, and the plaintiff "spent millions of dollars to develop, build, and promote" its product); *Parts.com*, 996 F. Supp. 2d at 940 (dismissing dilution claim despite allegations that plaintiff's mark had been in use for over a decade, plaintiff offers "over 20 million automotive replacement parts, accessories, and related automotive materials and equipment for over 40 automobile manufacturers worldwide" and plaintiff "expended a significant amount of resources in developing goodwill and brand recognition"). Baron also fails to address the statements of law found in these authorities, without offering any contrary reasoning or authority of its own. For example, *Arcsoft* held that allegations a mark appeared in the media were not sufficient without "the particular contexts in which the . . . [m]ark appeared." 153 F. Supp. 3d at 1066. Baron fails to distinguish this precedent.

-8-    Case No. 5:25-cv-09268- EKL

*Third*, Baron argues that cases decided after the pleading stage "have no application here." Opp. 12. That is not correct. Courts ruling on motions to dismiss dilution claims routinely examine both summary judgement and post-trial decisions. *Compare, e.g. Aegis Software*, 255 F. Supp. 3d at 1009-10 (citing and discussing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999), *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002), and *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359 (9th Cir. 1993) in the context of a motion to dismiss a dilution claim) *with* Opp. 12 (arguing *Avery Dennison*, *Thane*, and *Fruit of the Loom* "have no application here").

*Fourth*, Baron erroneously argues that OpenAI "cites no cases to support" its argument that fame, for dilution purposes, requires "that 75% of the consuming public recognizes" the mark. Opp. 11. In fact, OpenAI cited multiple authorities for that proposition. *See* Mot. 11 (citing *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1035 (N.D. Cal. 2015) (citing 4 McCarthy on Trademarks and Unfair Competition § 24:106 (4th ed.) as "recommending a high standard for fame, such as at least 75% consumer recognition in a survey response"); *Campari America LLC v. Skyyguard, Corp.,* 2023 WL 5950076, *11 (T.T.A.B. 2023) ("Professor McCarthy posits, and our precedent is consistent with the proposition, that a threshold response in the range of 75% of the general consuming public is necessary to prove fame for purposes of dilution.")); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 222 (D.D.C. 2014) (granting summary judgment on dilution claim where claimant "provided no survey of nationwide consumer awareness" and noting that courts and commentators have identified a "minimum threshold survey response … in the range of 75% of the general consuming public of the United States") (internal quotation omitted).

## II.    BARON LACKS STANDING TO ASSERT A SECTION 17200 CLAIM

Baron argues it has standing to assert a claim under California Business & Professions Code Section 17200—despite failing to allege any actual loss or money or property—because "[n]umerous courts have held that under *Kwikset* [*Corp. v. Superior Ct*., 51 Cal. 4th 310 (2011)] allegations of trademark infringement and other intellectual property injuries" are sufficient to

confer standing.  Opp. 14.  Baron's argument misstates *Kwikset* and relies on inapposite authorities.

Contrary to Baron's arguments, *Kwikset* merely holds that Section 17200's statutory standing requirement (found at California Business & Professions Code Section 17204) is a separate inquiry from whether the plaintiff is entitled to restitution under California Business & Professions Code Section 17203.  *Kwikset*, 51 Cal. 4th at 337 ("To make standing under section 17204 dependent on eligibility for restitution under section 17203 would turn the remedial scheme of the UCL on its head.").  Put differently, a plaintiff may have standing to assert a Section 17200 claim even if the plaintiff would not ultimately be entitled to restitution.  *Id*. ("Accordingly, we hold ineligibility for restitution is not a basis for denying standing.").  But that does not salvage Baron's claim because it addresses an argument OpenAI did not make.  OpenAI never argued that Baron lacked standing because it was ineligible for restitution.

Baron fails to factually respond to OpenAI's actual argument:  that Baron lacks standing under Section 17200 because Baron does not allege that it "has lost money or property."  Cal. Bus. & Prof. Code § 17204.  Mot. 12.  That failure compels dismissal.  *See, e.g. Zero Motorcycles, Inc. v. Nikola Motor Co*., 2018 WL 3009126, at *9 (N.D. Cal. June 14, 2018) (dismissing § 17200 premised on trademark infringement for lack of standing, citing *Kwikset*); *ROTFL Prods., LLC v. Gzebb*, 2013 WL 12181763, at *2 (N.D. Cal. Aug. 5, 2013) (similar, citing *Kwikset*); *Bragg Live Food Prods., LLC. v. Nat'l Fruit Prod. Co*., 2022 WL 3574423, at *2 (C.D. Cal. July 22, 2022) (similar, citing *Kwikset*).

Baron's efforts to distinguish OpenAI's authority is misplaced.  Baron argues that *Zero Motorcycles* is inapposite because those claimants "agreed to 'rebrand' their product before it was actually sold."  Opp. 17.  But that is OpenAI's point: the *Zero Motorcycles* plaintiff did not allege any lost sales due to the rebrand, just as Baron's complaint does not allege any lost sales.  Separately, Baron attempts to distinguish *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015) by arguing that case "did not even involve a section 17200 claim premised on trademark infringement."  Opp. 17.  Baron's argument misses the mark.  There, Fitbit asserted a section 17200 counterclaim, alleging that Fitbug was engaged in false advertising by using

"posting online reviews and comments about Fitbit products or comparing Fitbit's products to Fitbug's without disclosing their affiliations with Fitbug." *Fitbug*, 78 F. Supp. 3d at 1196-97. However, to resolve a discovery dispute, Fitbit also stipulated that it "did not have evidence of particular instances where individuals who otherwise would have purchased Fitbit products instead purchased Fitbug products in reliance on or as a result of Fitbug's conduct." *Id.* (cleaned up). Based on that stipulation *alone*, the court granted summary judgment on Fitbit's claim, finding that without evidence of lost sales, Fitbit could not demonstrate "lost money or property" sufficient to support a section 17200 claim. *Id.* Baron's opposition does not address that point, and as noted above, courts dismiss section 17200 claims premised on trademark infringement where the plaintiff failed to allege "lost money or property."

As in *Zero Motorcycles*, *Fitbug*, *ROTFL Productions*, and *Bragg Live Food Productions*, Baron has not lost any actual money or property, and thus lacks standing to assert a Section 17200 claim. None of Baron's authority (Opp. 14-15) is to the contrary. First, *JaM Cellars, Inc. v. Vintage Wine Estates, Inc.* and *Overstock.com, Inc. v. Gradient Analytics, Inc.* both alleged actual monetary loss, in the form of either diverted sales or lost market capitalization. *JaM Cellars*, 2017 WL 2535864, at *3 (N.D. Cal. June 12, 2017) ("JaM has suffered direct injury and damage because sales have been and will be diverted"); *Overstock.com*, 151 Cal. App. 4th 688, 716 (2007) (alleging plaintiff suffered a "decline in its market capitalization"). Second, both *BizCloud, Inc. v. Computer Sciences Corp.*, 2014 WL 1724762, at *4 (N.D. Cal. Apr. 29, 2014) and *American Society of Anesthesiologists v. BevMD, LLC*, 2016 WL 4257448, at *6 (S.D. Cal. Mar. 31, 2016) alleged loss of royalties that would have been paid if the parties had entered into an agreement. By contrast, Baron's complaint does not allege lost royalties, or even that it alleges it licenses the CAMEO mark to third parties. Third, *Robinson v. U-Haul Co. of California* recognized "attorneys' fees" as a form of harm based on *prior litigation*: specifically, "[t]he alleged unfair business practice" was "the strategic use of litigation." 4 Cal. App. 5th 304, 318 (2016). Baron does not allege prior litigation by OpenAI as an "unfair business," so *Robinson* does not apply.

Lastly, Baron cites *LiveRamp, Inc. v. Kochava, Inc.*, 2020 WL 2065696 (N.D. Cal. Apr. 29, 2020), and *Rise Basketball Skill Development, LLC v. K Mart Corp.*, 2017 WL 2775030, at *5

(N.D. Cal. June 27, 2017), for the proposition that "diminution of the value of a trademark" can be a cognizable injury. But Baron's allegations about the diminution of the value of its mark are part of its dilution claim, which is subject to dismissal as discussed above. Moreover, the allegations Baron points to that supposedly allege "diminution of value" point to alleged *future harm* and not any "loss" of money or property that has actually happened. *See* Opp. 16 ("Defendant's use of 'Cameo' . . . threatens to confuse customers and tarnish Plaintiff's mark" and "OpenAI's use of 'Cameo' also threatens to overwhelm Plaintiff in the marketplace and dilute the distinctiveness of its trademarks.") (quoting Comp. ¶¶ 53, 58). But *future* "lost money or property" is insufficient to confer standing under § 17200. *See, e.g. Rogozinski v. Reddit, Inc.*, 2023 WL 4475581, at *9 (N.D. Cal. July 11, 2023) ("As to the alleged lost contract, to the extent such agreement was prospective in nature, 'lost money or property' does not include the proceeds of prospective contracts.") (quoting *Ahussain v. GNC Franchising, LLC*, 2009 WL 10672353, at *5 (C.D. Cal. Mar. 18, 2009)); *see also Voellger v. Dignity Health*, 2020 WL 13505419, at *5 (N.D. Cal. Dec. 21, 2020) ("the loss of *future* wages" does not confer § 17200 standing "as opposed to, say, withheld pay for work previously performed") (emphasis in original). In the absence of allegations showing Baron has actually lost money or property in the present—as opposed to allegations of prospective "threatened" losses—Baron has not alleged standing under Section 17200.

## III. BARON SHOULD NOT BE GRANTED LEAVE TO AMEND

The Court should dismiss Baron's dilution and Section 17200 claims without leave to amend. "[L]eave to amend may be denied when the Court determines that further amendment would be futile." *Amare v. Safeway Corp.*, 2024 WL 6840044, at *2 (N.D. Cal. Mar. 22, 2024). Leave to amend may also be denied where the plaintiff fails to identify what additional allegations it may provide to cure the defects in its claims. *See, e.g. Brown v. Option One Mortg. Corp.*, 2010 WL 1267774, at *5 (N.D. Cal. Apr. 1, 2010) (denying leave to amend where plaintiff failed to identify any additional facts it could offer, noting "[i]f plaintiffs had such facts, those facts would have been pled in the complaint or identified in their oppositions.").

Here, any attempt to amend Baron's dilution claims would be futile. Baron's complaint admits that its mark is less than a decade old, and that it has only made 10 million or so sales. Compl. ¶¶ 1, 3. Courts have held that similar allegations are not enough to demonstrate that a mark is famous enough to support a dilution claim. *E.g. MGA Ent.,* 2018 WL 2448123, at *6 ("more than 10 million" sales insufficient to demonstrate mark was famous). Baron's opposition does not claim that it can identify more sales, or any other facts that would change that analysis. Thus, any attempt at amendment would be futile. *E.g. Aegis Software*, 255 F. Supp. 3d at 1010 (denying leave to amend dilution claim where alleged facts demonstrated mark was not sufficiently famous).

Similarly, if Baron had lost actual money or property, as required to state a Section 17200 claim, then Baron would have stated as much in its opposition. But Baron makes no such representation. Accordingly, leave to amend should be denied.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Third, Fourth, and Sixth claims from Baron's Complaint with prejudice.

Dated:  February 24, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:  /s/ *Margret M. Caruso*
Margret M. Caruso

*Attorneys for Defendants OpenAI, Inc., OpenAI Global, LLC, OpenAI OpCo, LLC, and OpenAI GP, LLC*