SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
1000 LOUISIANA
SUITE 5100
HOUSTON, TEXAS 77002
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100

SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330

JONATHAN ROSS
DIRECT DIAL (713) 653-7813

E-MAIL JROSS@SUSMANGODFREY.COM

October 26, 2026

Hon. Nathaniel M. Cousins
U.S. Magistrate Judge
San Jose Courthouse
Courtroom 5, 4th Floor
280 South 1st Street
San Jose, CA 95113

Re: ***Baron App, Inc. d/b/a/ Cameo v. OpenAI, Inc., et al.*****, No. 3:25-cv-9268 (N.D. Cal.)**

Dear Judge Cousins:

Baron App, Inc. d/b/a/ Cameo ("Cameo" or "Plaintiff") and OpenAI, Inc. ("OpenAI") jointly submit this statement concerning discovery disputes. Counsel for the parties have met and conferred by videoconference on these issues and have been unable to reach agreement.

**Issue 1: Financial Discovery Concerning The Sora App.**

**Plaintiff's Position:** This is a trademark dispute concerning OpenAI's use of Plaintiff's registered mark "Cameo" as the name of the key feature on Sora, OpenAI's AI-video generation application and social network. ECF No. 1. The Court has already issued both a TRO and a preliminary injunction barring OpenAI from using "Cameo" in Sora, finding Plaintiff was likely to prevail on its trademark infringement claims. ECF Nos. 42, 74. In so doing, Judge Lee recognized the central role of "cameo" in Sora, finding that OpenAI used "cameo" as "the app-defining feature to promote the Sora application." ECF No. 74 at 27. Although OpenAI discontinued Sora in April 2026, Plaintiff is entitled to damages and disgorgement of OpenAI's profits under 15 U.S.C. § 1117 and exemplary damages and restitution under its state law claims.

OpenAI has improperly refused to provide discovery on a wide range of issues relevant to those remedies (as well as likelihood-of-confusion)—including OpenAI's Sora-related partnerships, promotions, and collaborations (RFP 29); advertising and promotional materials (RFP 38); expenditures for advertising, marketing, and promotion (RFP 39); revenues and profits (RFPs 55, 59); and revenue projections and monetization plans (RFPs 58, 61). In its RFP responses and the parties' meet and confers, OpenAI improperly attempted to limit each of these topics only to Sora's "Cameo" feature. For example, rather than produce Sora revenue figures, OpenAI sought to limit its production only to documents showing "revenues ***from the cameo feature*** within the Sora app . . . ***to the extent such revenues, profits, and/or documents exist***" (Resps. to RFPs 55, 59) (emphasis added). Conceding that its prior position was untenable, OpenAI now states for the first time in its letter portion below that it has agreed to produce discovery into revenue and profits "relating to the Sora App." However, OpenAI inaccurately suggests that financial projections for the Sora app are the parties' only remaining dispute.

Clinging to its flawed position that only Sora's "Cameo" feature is relevant, OpenAI still refuses to provide discovery into partnerships, promotions, collaborations, advertising, and marketing (and related expenditures) for Sora generally (RFPs 29, 38, 39). OpenAI's position ignores that it designed and marketed the "cameo" feature as the central driver of the entire Sora app. Indeed, Sora's interface, launch strategy, and marketing materials all highlighted "cameo" as its anchor feature. When using Sora to generate a "Cameo" video, users were presented with screens that displayed the "cameo" mark at least 10 times. OpenAI's promotional materials highlighted the "cameo" feature as "unique to Sora," and even touted Sora as "a social app built around this 'cameos' feature." ECF No. 74 at 23-24. Additionally, OpenAI's employees promoted Sora on social media by spotlighting its "cameo" feature. *Id*. at 24. As Judge Lee noted, "OpenAI's use of 'cameo' [was] designed to create a 'symbolic shorthand' or sub-brand between 'cameo' and Sora." *Id*. at 23.

Because Sora and its "cameo" feature were inextricably linked, the requested discovery into Sora's partnerships, promotions, collaborations, advertising, and marketing (and related expenditures) is highly probative. These documents bear directly on the *Sleekcraft* likelihood of confusion factors (*e.g.*, proximity of services, overlapping marketing channels), as well as damages, including the full scope of OpenAI's marketing and promotional activities that created unwanted associations with Plaintiff's CAMEO® trademark which require corrective advertising. *See Impossible Foods Inc. v. Impossible X LLC*, 2025 WL 3063819, at *5 (N.D. Cal. Nov. 3, 2025) (negative or unwanted associations linked to plaintiff's brand require corrective advertising to rebuild plaintiff's brand equity). OpenAI's assertion that RFP 29 is limited to the "Cameo" feature is wrong—not only does it ignore the RFP's plain meaning, it also contradicts OpenAI's clear understanding during meet-and-confer discussions that the request encompassed partnerships, promotions, and collaborations related more generally to the Sora app's content.

Likewise, since "cameo" was such an integral feature of Sora, OpenAI's revenue projections and monetization plans related to Sora (RFPs 58, 61) are also highly relevant. In particular, they bear directly on Plaintiff's reasonable royalty damages, specifically, the economic value and commercial benefits OpenAI anticipated deriving from Sora and its key "Cameo" feature in the hypothetical negotiation used to calculate a royalty. *See QS Wholesale, Inc. v. World Mktg.,*

*Inc.*, 2013 WL 1953719, at *5 (C.D. Cal. May 9, 2013); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) ("A reasonable royalty based on a hypothetical negotiation can be a measure of actual damages in a trademark infringement case.").

OpenAI's contention that Plaintiff is not entitled to reasonable royalty damages is premature—this issue is properly addressed, if at all, through summary judgment or *Daubert* motions after the close of discovery. OpenAI also incorrectly contends that such damages are only available "if there is a history of royalty payments concerning the mark at issue" or "payment negotiations between the parties." In fact, courts have approved of reasonable royalty damages that were consistent with royalties between the plaintiff or defendant and third parties, as well as royalties between third parties. *Payless*, 2008 WL 4279812, at *12. Courts have also approved of reasonable royalty damages where "the evidence provides a sufficiently reliable basis from which to calculate them," such as the parties' negotiations to purchase defendant's mark in *QS Wholesale*. 2013 WL 1953719, at *4-5; *see also Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 3319190, at *29 (D. Or. Aug. 3, 2017). In this case, there is ample evidence of licensing and comparable arrangements by both parties to support a reasonable royalty. This discovery is also probative of the full scope of the profits and unjust enrichment that OpenAI derived from its infringing "cameo" mark. *See Berk St. Enters., Inc. v. Bravo Pers. Care LA LLC*, 2026 WL 2100479, at *3 (N.D. Cal. July 21, 2026); 15 U.S.C. § 1117(a). The case OpenAI relies on, *Bob Barker Co. v. Ferguson Safety Prods., Inc.*, 2006 WL 648674 (N.D. Cal. Mar. 9, 2006), is distinguishable. There, the "projections and planning information" requested were deemed insufficiently related "to the actual sales or net worth data" at issue in the case to be discoverable. *Id*. at *4. Here, however, the requested discovery directly relates to OpenAI's revenue, sales models, and economic gain attributable to Sora, making it directly relevant to calculating the measure of profits and unjust enrichment under 15 U.S.C. § 1117(a).

**<u>OpenAI's Position</u>:** Baron App's request for discovery into every facet of the Sora App is overbroad, given that its complaint targets the name of a single *feature* within the long-disabled app. That feature operated under the accused name for barely three months. Nonetheless, OpenAI already agreed—*weeks* ago and not "for the first time" as Baron App suggests—to produce discovery into revenue, profits and marketing budgets relating to the Sora App, as well as information about partnerships and marketing involving the Sora App (again, contrary to Baron App's representations). As such, the genuine dispute between the parties is quite narrow: whether OpenAI must produce financial *projections* (as opposed to actual revenue) concerning an app that was disabled months ago and that would be irrelevant to a Lanham Act claim in any event.

As background, "Sora" refers to a generative AI model created by OpenAI that is capable of creating videos in response to text prompts. *See* Dkt. 30-16 (Declaration of Rohan Sahai) ¶ 3. In 2025, OpenAI launched an improved version of Sora, referred to as "Sora 2" that was trained on large-scale video data and delivered more advanced world simulation capabilities, among other benefits. *Id*. Sora and Sora 2 are AI models (*i.e.* abstract computer programs that are not consumer-facing) that are not themselves at issue in this trademark dispute. Instead, Baron App's claims are targeted at the "Sora App," a consumer-facing app powered by the Sora 2 model that was released on September 30, 2025 and which OpenAI decided to shutdown on March 24, 2026.

*Id*. ¶ 4; *see also* Dkt. 1 ¶ 5 (Baron App's complaint is directed to "a mobile app that allows users to use generative AI"); Dkt. 90 at 2.

Baron App's lawsuit complained that OpenAI infringed Baron App's trademark rights by using the word "cameo" to refer to a feature within the Sora App that allowed users to insert their own likeness (and other approved likenesses) into videos and to the videos created using this feature. Dkt. 1 ¶ 10. Following entry of a TRO, less than eight weeks after release of the Sora App, OpenAI changed the name of the "cameo" feature to "characters." Dkt. 47 at ¶ 12. As a result, any alleged trademark infringement and damages are limited to a few weeks in the fall of 2025.

Particularly given these circumstances, the "financial projections" and "monetization plans" Baron App seeks are irrelevant to Baron App's damages because such projections have no bearing on (i) OpenAI's actual profits, (ii) damages allegedly sustained by Baron App, or (iii) the costs of this action—which are the only three forms of recovery permitted under trademark law. *See* 15 U.S.C. § 1117(a). In contrast, "projections and planning information … is not sufficiently related to the actual sales or net worth data at issue to be discoverable" in a Lanham Act case. *Bob Barker Co. v. Ferguson Safety Prods., Inc.*, 2006 WL 648674 at *4 (N.D. Cal. Mar. 9, 2006) (denying motion to compel); *see also Berk Street Enterprises, Inc. v. Bravo Personal Care LA LLC*, 2026 WL 2100479 *3 (N.D. Cal. July 21, 2026) (plaintiff's *projections* were unduly speculative, defendant's *actual sales* were not).

Plaintiff's demand for OpenAI's projections is further unnecessary because OpenAI agreed to produce its ***actual*** sales figures for the Sora App. *E.g.,* "[U]nder the Lanham Act, actual sales are the measure of 'disgorgement' damages," not "projections or plans." *CG Roxane LLC v. Fiji Water Co. LLC*, 2008 WL 2276403 at *1 (N.D. Cal. May 30, 2008) (citing 15 U.S.C. § 1117(a)). Accordingly, Baron App's motion to compel should be denied. *Id*. (denying motion to compel "all projections and forecasts of sales for" goods and services bearing the at-issue mark where defendant had produced "its actual sales information (in units and dollars)").

Baron App's reasonable royalty theory of damages does not justify a different outcome. "[U]nlike patent law, [the Lanham Act] does not specify [a] reasonable royalty" as a statutorily permissible measure of damages. *Marketquest Grp., Inc. v. BIC Corp*., 316 F. Supp. 3d 1234, 1300 (S.D. Cal. 2018). The Ninth Circuit does not permit trademark plaintiffs to recover royalt[ies] "[i]n the absence of a legitimate proposed basis on which to calculate [the] royalty." *M2 Software Inc. v. Viacom Inc*., 223 F. App'x 653, 655 (9th Cir. 2007). The *Georgia-Pacific* factors are *not* sufficiently reliable to support a royalty award in "'the absence of a prior licensing agreement, evidence of licensing negotiations between the parties, or evidence otherwise showing either side's intent to license.'" *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc*., 2021 WL 4813257, at *6 (C.D. Cal. Oct. 6, 2021) (quoting *Marketquest Grp., Inc*., 316 F. Supp. 3d at 1300); *see also Lodestar Anstalt v. Bacardi & Co. Ltd.*, 2019 WL 8105378, at *14 (C.D. Cal. July 3, 2019) ("In the absence of any evidence of a prior license ... experts speculate as to the royalty rate the parties might have agreed to in a hypothetical negotiation."). Thus, courts require trademark plaintiffs to provide such a legitimat basis for royalty damages before pursuing royalty discovery.

*CG Roxanne* is instructive on this point. *See* 2008 WL 2276403 at *1. Like Baron App, the plaintiff in *CG Roxanne* also sought discovery of "projections and forecasts of sales" of products that allegedly infringed the at-issue trademark. *Id*. And, like Baron App, the plaintiff in *CG Roxanne* attempted to justify the discovery with a conclusory reference to "reasonable royalty" damages. *Id*. But, without more, the court denied the requested discovery, explaining "plaintiff has not satisfactorily explained or shown the relevance of the requested information" despite the reference to a "reasonable royalty." *Id*.

Baron App claims "there is ample evidence of licensing and comparable arrangements by both parties to support a reasonable royalty" but Baron App conspicuously does not say what that "evidence" is. It identifies no actual, specific licenses, licensing negotiations, or similar facts. To OpenAI's knowledge, there are no such facts. As in *CG Roxanne*, Baron App provides no more than conclusory assertions and does not provide a basis for it to justify discovery under a reasonable royalty theory.

Baron App's cited authority does not support its position that it could possibly be entitled to reasonable royalties without either party having negotiated to acquire rights to the at-issue trademark. *QS Wholesale, Inc. v. World Mktg., Inc.*, permitted a royalty award only because the defendant had attempted to buy the at-issue trademark. *See* 2013 WL 1953719, at *5 (C.D. Cal. May 9, 2013). That did not happen here. As for *adidas Am., Inc. v. Payless Shoesource, Inc.*, an out-of-district decision from Oregon, it relied on patent infringement case law to calculate a royalty and ignored the differences between patent and trademark damages. *See* 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008) (citing, *inter alia*, *Golight, Inc. v. Wal–Mart Stores, Inc*., 355 F.3d 1327, 1338 (Fed. Cir.2004)). Baron App's other authority, *Adidas America, Inc. v. Skechers USA, Inc.*, 2017 WL 3319190 (D. Or. Aug. 3, 2017), another case out of Oregon, relies exclusively on *Payless* for its reasoning. *Id*.

Lastly, as to RFP 29, Baron App asks the Court to order more than the request itself seeks. That RFP requests "All DOCUMENTS and COMMUNICATIONS that REFER or RELATE to partnerships, promotions, or collaborations ***related to the Sora app's '"Cameo'" feature or content***." (emphasis added). The request is thus facially limited to documents concerning partnerships, promotions, or collaborations that relate to the cameo "feature or content," which OpenAI agreed to produce. And, to the extent that *other* requests seek information about partnerships or marketing related to the Sora App, OpenAI has agreed to produce discovery in response to those requests. There is nothing further to compel under Request No. 29.

**Issue 2: Discovery Concerning Snoop Dogg Sora Videos Featuring Cameo's App Interface and Logo**

<u>**Plaintiff's Position**</u>**:** One of the most high-profile celebrities OpenAI relied on to promote Sora was Snoop Dogg, who created a "cameo" of his likeness, posted dozens of AI-generated videos featuring his "cameo," and offered to open his "cameo" to fans (giving them the ability to make their own videos featuring his likeness). Several of Snoop's videos to promote Sora's "cameo" feature showed him opening an app that closely resembles Cameo's marketplace, including one video that even featured ***Cameo's own logo***.

Despite the clear relevance of the requested discovery, Plaintiff previously improperly refused to produce documents and communications concerning the Snoop Dogg Sora videos (RFPs 23, 24). It now says it will produce the requested documents and communications, but only subject to an agreement on search terms and custodians. No such agreement is needed given the limited scope of the requests, and OpenAI should be able to easily determine the relevant custodians and search terms. Accordingly, OpenAI should be required to comply with the requests with no such agreement.

**OpenAI's Position:** OpenAI has agreed to produce non-privileged documents and communications related to the specific Snoop Dogg videos identified in Baron App's filings, subject to an agreement on reasonable ESI limitations (*i.e.* an agreement on search terms and custodians). For example, these could reasonably include "Snoop" as a search term. But if, theoretically, an email existed that referred to the video as "that video" with no other identifying information, it is unreasonable to expect OpenAI to search all documents to try and identify this one. That is why search terms and custodians are commonly negotiated. There is no ripe dispute here.

Respectfully submitted,

SUSMAN GODFREY LLP

By: */s/ Jonathan J. Ross*
Jonathan J. Ross

Attorneys for Plaintiff

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Margret M. Caruso*
Margret M. Caruso

Attorneys for Defendants